UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

**MARY SEGUIN,**
*Pro se*

*Plaintiff,*

VS.                                                                                                  Civil Action No. 1:23-cv-00126

**RHODE ISLAND DEPARTMENT OF HUMAN SERVICES** in its official capacity; **MICHAEL D. COLEMAN, DEBORAH A. BARCLAY** in their individual and official capacities; **RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES** in its official capacity; **LISA PINSONNEAULT, CARL BEAUREGARD,** in their individual and official capacities; **GERO MEYERSIEK**

*Defendants*

### MARY SEGUIN'S DECLARATION IN SUPPORT OF PLAINTIFF'S RULE 65 MOTION FOR PRELIMINARY INJUNCTION
### And
### PLAINTIFF'S RULE 65 MOTION FOR TEMPORARY RESTRAINING ORDER

I, MARY SEGUIN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. sec. 1746(2) that the following statements are true and correct:

1. That I am the Plaintiff, Pro Se, in the above captioned matter, and invoke the protections enumerated in the U.S. Supreme Court case

2. That I exercised, am exercising and continue to exercise my statutory right to appear pro se party in the above captioned civil matter in federal court by statute 28 U.S.C. sec. 1654.

3. That in state proceedings in Rhode Island, I am required to comply with Rhode Island Article X. Rules Governing Electronic Filing, Rule 2. Official Court Record, (a) Official Court Record. "Upon the implementation of the Electronic Filing System ("EFS") in each court, all documents shall be filed electronically and shall be the official court record."

4. That the state proceedings in which I am a party are public and are not about child custody nor involve a minor.

5. That the **Rhode Island Family Court**, through its adoption and promulgation of **Administrative Order 2021-01 A2)** mandated that all child support interest matters shall be heard remotely via WebEx.  Further, **Administrative Order 2021-01 B1)** mandated that all non-emergency filings shall be filed using the electronic filing system in accordance with the Family Court Rules of Domestic Relations Procedure, which is the **Odyssey system**.

6. That the **"RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION, Rule 5. Access to Case Information, (c) Remote Access to Case Information. (1) Policy. To allow _limited_ Remote Access to the Database through the Public Portal.  Non-public case types shall not be remotely accessible except for certain case types to attorneys who have entered an appearance in a case.  (2) Content. (a) The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall _not_ have Remote Access to other Electronic Case Information"** *bar, deny, violate, abridge, infringe and interfere with Pro Se Litigants' and the Public's fundamental rights to access public court records and Pro Se Litigants' fundamental right to meaningful access to the courts*.  See **Exhibit A**, "**RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION**"  **Rule 5(c)(2)(a)** "**The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall not have Remote Access to other Electronic Case Information.**"  *See* "**RHODE ISLAND JUDICIARY, Access to Case Information,  2. Remote Access to Case Information A. The Public, Self-represented Litigants, and Parties to a Case, The public, self-represented litigants, and parties in a case shall have remote access to the register of actions or docket but shall not have remote access to other electronic case information.**"

7. That State Defendant's in-house lawyer, Lisa Pinsonneault, Esq., filed several pleadings in June 2023 in the Family Court proceeding, **Meyersiek v. Seguin, K20010521M**, confirming the State Defendants re-opened the ten-year dormant case through filing their **Motion to Set Arrears** in Family Court on **January 31, 2023, one day <u>after</u> the State Defendants were served this federal Summons and Complaint**. See attached State Defendants' Family Court pleadings stating they filed the Motion to Set Arrears on January 31, 2023.

8. That I, the Plaintiff, learned and verified on July 10, 2023 directly from the Rhode Island Judiciary itself through numerous (14) correspondences with the Rhode Island Judiciary from June 10, 2023 to July 10, 2023, pursuant to my RI Access to Public Records Act ("APRA") request for public records from the Rhode Island Judiciary, that as a matter of State policy, State Court Rule, and Judiciary Rule, the State Court and state court proceedings deny remote access of court and judicial records, including court decisions and court transcripts ordered by pro-se litigants, to the Public, pro-se litigants, and parties to the litigation (who are represented by counsel). The Rhode Island State Court only grants remote access to court and judicial records to Rhode Island attorneys and state and federal agencies. *See attachment to Motion* Rhode Island Court Rule, fourteen (14) APRA correspondence emails with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023.

9. That the State Defendants in this matter electronically file all notices using another electronic filing system that is even separate and different from the EFS (Odyssey).

10. That the State Defendants' court electronic filings are not noticed to me.

11. That the State Defendants' court electronic filings are not visible to me on the Rhode Island courts' EFS.

12. That the State Defendants' court electronic filing court records cannot be accessed remotely by me, solely because I am a self-represented litigant.

13. That the State Defendants' court electronic filing court records cannot be accessed remotely by the public, by self-represented litigants, nor by parties to the case, but

can be accessed remotely and instantly through the internet by attorneys in Rhode Island and state and federal agencies.

14. That the Rhode Island Court Clerks state to me over the phone that they are prohibited from reading the contents of the court records over the phone to me.

15. That the Rhode Island Court virtual clerks state to me over the phone that even they are unable to see or access the court record information of filings by the State Defendants from the virtual clerks' access portals.

16. That the Rhode Island Electronic Filing System, case management system, rules and practices outright and unconstitutionally restrict and deny access to the court to three classes: (1) the public; (2) pro-se litigants; (3) parties to the case (who are represented by counsel), and is obviously outright reserved for only the government and Rhode Island attorneys.

17. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS.

18. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and withdrew from my-initiated RI EOHHS agency appeal in 2022 in a coordinated attempt and scheme to procure a favorable judgment in a state proceeding that deny my federal constitutional and due process rights in Texas. Those deprived rights include First Amendment right to meaningful access to the courts, First Amendment right to access public court records, First Amendment right to access justice, First Amendment safeguard against government restrictions on content-based speech, First Amendment right to a fair tribunal, among others.

19. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices, and initiated the family court state proceeding on January 31, 2023 before the Covid Emergency Declaration was lifted.

20. That the State Defendants have full knowledge of the egregious due process violations of the Rhode Island state court EFS system/architecture/rules/practices

designed by policy to restrict court access of pro se litigants, that appear to **only allow remote, instant and full court access to a restricted club of R.I. lawyers and the government**, pose unconstitutional and undue burden on me, a citizen of Texas over 2,500 miles away.

21. That the State Defendants have full knowledge of the egregiously unfair due process violations of the Rhode Island state court EFS system/architecture/rules/practices that deny me access to the *required* **electronic court transcripts** prepared by the court reporter and electronically filed in the state EFS that **I ordered and paid for** for appeal, but the State Defendants have instant remote access by state court design.

22. That the State Defendants have full knowledge of the above unconstitutional restriction on access to court records and information to the public and non-lawyers is deliberate, by design and calculated to be unfair, violating constitutional guarantees of full and fair opportunity to raise claims in state proceedings.

23. That the above-raised unconstitutional restrictions are not exhaustive.

24. That I suffer First Amendment irreparable injury as a result of the State Defendants' actions.

25. That I had respectfully requested the Honorable Court the time extension to fully present and fully plead my federal claims on the unconstitutionality of the Rhode Island state court rules, practices and proceedings that violate pro-se litigants', such as my-self, federal constitutional rights: (1) federal constitutional right of equal access to the courts, (2) federal constitutional right to equal access to court records to receive information on the contents of all electronically filed notices, pleadings, court decisions, and transcripts that I myself ordered <u>and</u> paid for for appeal that are required to be electronically filed by state court rules and practices, (3) federal constitutional due process right and equal right to be given equal and timely notice of electronic filings and entries by the courts (including court decisions, court orders, court judgments, full docket entries, etc.) that the Rhode Island Judiciary deliberately deny by category all pro-se litigants access to court information, namely the contents of judicial/court records of cases to which I am the self-represented

party, (4) federal constitutional due process right to be heard (Rhode Island Superior Court threatens me, the Texas pro-se plaintiff, with denial of my request to conduct WebEx hearings for the purpose of denying the Texas pro-se litigant access to the court and to be heard), (5) federal constitutional due process right to decision by a neutral decision-maker (the court that denies pro-se litigant access to the court and the corollary opportunity to be heard fails the neutral decision-maker test). This list is not exhaustive.

26. That I seek to sue in federal court the State Defendants and add additional defendants.

27. I am an out-of-state diversity and a pro-se litigant in two state proceedings in Rhode Island, and have been unconstitutionally singled out by the State Judiciary, by category "self-represented litigant," to be barred from accessing electronic case information in which state court cases I am the pro-se party, and therefore have standing to raise claims against this unconstitutional state practice and unconstitutional state court practice and rules.

28. Additionally, my fundamental First and Fourteenth Amendment constitutional right and common law right to equal, meaningful, and timely access to judicial records and public court records in litigation, given timely notice, adequate opportunity to be heard and to decision by a neutral decision-maker are fundamental First and Fourth Amendment and Fourteenth Amendment rights. Critically, the unconstitutional abridgement, infringement, and denial of judicial and court records to out-of-state pro-se litigants by the Rhode Island State Courts, Rhode Island State Judiciary and the Rhode Island Superior Court Bench Bar Committee directly relate to Younger Abstention Exception, a vital and complex issue that I, the Texas pro-se Plaintiff, respectfully request this Federal Court the extension of time to fully present and fully plead, and raise my federal claims.

29. Moreover, I, the Texas Plaintiff, obtained new evidence that the State Defendants deliberately abuse the State Court's abridgement, infringement, and denial of equal access to court and judicial records to pro-se litigants to maliciously deprive me, the

Texas Plaintiff, of my Constitutional right to meaningfully petition for redress in the state court proceedings.

30. Specifically, the State Defendants deliberately file all the State's pleadings outside of the State's electronic filing system, "Odyssey," and deliberately use a wholly different un-named electronic filing system, different and separate from that ("Odyssey") provided for pro-se litigants, so that pro-se litigants do not receive any requisite automated electronic notices of court motions or pleadings the State Defendants file electronically, nor are pro se litigants able to electronically access the content information of the State Defendants' electronically-filed pleadings. The only way the pro se litigant, such as me, the Texas Plaintiff, can access the court record is to personally go over 2,500 miles away to the courthouse in Rhode Island to access the court pleading information, or get a "courtesy notice" via email or get a "courtesy notice" through U.S. Mail sent by the State Defendants at whim. The State Defendants deliberately fail to send the notices electronically or by U.S. Mail, and the state courts deliberately promulgated court rules disallowing the public, pro-se litigants and even the parties who are represented by lawyers, remote access to court records, and critically, deny access to crucial court decisions, judgments and orders of public cases, as well as deny remote access to the transcripts ordered by pro-se litigants for appeal. Critically, the State court's abridgment and denial of access to court documents to the pro se litigant and the general public result in the unconstitutional abridgment and denial of equal, timely and meaningful access to court complaints, decisions, judgments and orders. What is truly shocking is that the Rhode Island Judiciary even denies and/or bars pro-se litigants remote access of court transcripts that were ordered by pro-se litigants for appeal. The pro-se Texas Plaintiff respectfully requests the extension of time to prepare and present the newly verified facts and evidence, and to amend the complaint.

31. Thirdly, the Texas Pro-Se Plaintiff newly discovered and verified the fact, on or about July 7, 2023, that the Rhode Island Judiciary, using the aforesaid state court rule barring, by category, pro-se litigants from accessing court case information

remotely, bars the Plaintiff by category ("self-represented litigant") from accessing state court proceeding transcripts that the Texas Plaintiff ordered and paid for, for appeal. In other words, the RI Supreme Court Clerk stated to the Texas Plaintiff that the Plaintiff, in Texas, is unconstitutionally barred from remotely accessing the transcripts of court proceedings that she ordered and paid for in her appeal to the RI Supreme Court in the Plaintiff-initiated APRA action ***Seguin v. RI Office of Child Support Services*, PC-22-07215**, and yet the State Defendants are inequitably granted instant and free remote access to those very transcripts that the Texas Plaintiff ordered and paid for, for appeal. The federal Texas Plaintiff respectfully requests this Court the extension of time to present the new evidence and plead the verified facts.

32. Fourthly, the Texas Plaintiff discovered and verified the fact, on or about July 11, 2023, that, despite the Texas Plaintiff's several phone inquiries to the RI Superior Court in the past several weeks regarding the status of the appeal, the RI Superior Court, for undisclosed reasons, failed and continue to fail to relinquish jurisdiction and transfer the court case file of ***Seguin v. RI Office of Child Support Services*, PC-22-07215** to the RI Supreme Court within the requisite 60 days after Plaintiff's filing of Notice of Appeal on April 3, 2023, as required by the RI Supreme Court rules and procedures. At the same time, the Texas Plaintiff verified the fact that the Plaintiff-ordered transcripts of the state proceedings in the Federal Plaintiff-initiated state APRA action ***Seguin v. RI Office of Child Support Services*, PC-22-07215** show the RI Superior Court further unconstitutionally sought to deny the Texas Plaintiff access to the state court and opportunity to be heard by outright threatening the Plaintiff in open court that the Judge, David Cruise, during the hearing of March 24, 2023 in that matter, shall use the state court's discretionary power in the future to deny all of the Texas pro-se Plaintiff's petitions for remote WebEx hearings to effectively deny her access to the state superior court. The state court that denies court access and the opportunity to be heard fails the neutral-decision-maker test required under the Fourteenth Amendment. I now specifically request further the Court to judicially

notice that this court access denial and denial to be heard occurred on March 24, 2023, PRIOR to President Biden's lifting of the COVID-19 National Health Emergency Declaration.  I, the Texas Plaintiff, aver this is a direct contributory reason for the RI Superior Court's failure to transfer the case file to the Supreme Court within 60 days (by June 3, 2023) of the Plaintiff's filing of Notice of Appeal on April 3, 2023 in ***Seguin v. RI Office of Child Support Services***, PC-22-07215.   The federal Texas Plaintiff respectfully requests this Court the extension of time to present the new evidence and plead the newly verified facts.

33. Fifthly, the Plaintiff presents to this Court and respectfully requests the Court to take judicial notice of the undisputed fact of the court rule-making process in Rhode Island.  The 1966 Rules were promulgated by the justices of the superior court pursuant to section 8-6-2 of the General Laws of Rhode Island.  This enabling act departed from the Federal Rules Enabling Act and most state enabling legislation conferring rule-making power on the supreme courts of the respective governments.  The Rhode Island Enabling Act was adopted in 1940, 1940 R.I. Pub. Laws ch. 943, sec. 1.  It conferred the power on the justices of the superior court and the 1966 reform was the product of that court.  In 1969 an amendment to section 8-6-2 made the Rules thereafter adopted by the trial courts subject to the approval of the Supreme Court. 1969 R.I. Pub. Laws ch. 239, sec 2.  Therefore, all public records relating to the adoption and promulgation of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION" are "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to Public Records Act ("APRA").  Even though the Rhode Island Enabling Act conferred the power on the judiciary public body to promulgate and adopt court rules, a.k.a. rule-making process, the Rhode Island Judiciary, pursuant to the Plaintiff's APRA request for public records, denied the Plaintiff's APRA request within the 10 business day

period, as well as denies it possesses public records, as defined by APRA, relating to the rule-making process by the judiciary of the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," including denying possession of public records that show the intent of the rule-makers to promulgate and adopt court rules denying fundamental right of public access to electronic case information remotely to the public, to self-represented litigants, and to parties to a case.  **See** **Exhibit attached to Motion of** fourteen (14) APRA correspondence emails between the Plaintiff and/with Mr. Justin Correa, Esq. and Ms. Alexandra Kriss of the Rhode Island Judiciary from June 10, 2023 to July 10, 2023.  The Texas pro-se Plaintiff also respectfully requests the extension of time to present the new evidence and plead the newly verified facts and claims, and amend the complaint, which is further in the interest of judicial economy.  The Plaintiff further seeks to appeal and file her claim against the implausible denial by the RI Judiciary, which is conferred by the Rhode Island Enabling Act to make rules of the court, that it possesses public records relating to the "RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION," that the judiciary, conferred power by the Rhode Island Enabling Act, "made in the course of, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency, ""agency" or "public body" means any executive, legislative, judicial, regulatory, or administrative body of the state, or any political subdivision thereof" as per R.I. Gen. Laws § 38-2-2, a.k.a. RI Access to Public Records Act ("APRA").  Because the RI Superior Court clearly ruled in **Seguin v. RI Office of Child Support Services**, **PC-22-07215** that it lacked subject matter jurisdiction to hear my/the Texas Plaintiff's APRA-related claims, I, the Texas Plaintiff, now exercise my statutory and constitutional rights to petition this Federal Court, invoking 28 U.S.C. § 1343(a)(3) (civil rights) and 28 U.S.C. § 1367 that provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts, invoking  28 U.S.C. § 1331 (federal

question), and invoking 42 U.S.C. § 1983 for violations of civil rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

34. That I received in the mail a Notice of Lien for the amount of $75,638.00 dated March 3, 2022 issued by the Rhode Island Office of Child Support Services on and around mid-March 2022. In April 2022, I filed a written appeal of the lien. My written appeal was docketed on April 4, 2022 at the Office of Appeals of the Rhode Island Executive Office of Health and Human Services, Docket#22-2116. The Administrative Hearing was continued to the maximum allowable three times by the Appeals Office due to the failure of the Office of Child Support Services to grant me, the Appellant, access to my case file. On October 5, 2022 a telephonic conference took place prior to the Administrative Hearing. The participants of the telephone call were John Langlois, Esq., of the Rhode Island Office of Child Support Services in Rhode Island, Debra DeStefano, Esq., the Hearing Officer of the Rhode Island Executive Office of Health and Human Services Office of Appeals in Rhode Island, and myself in Texas. I, in Texas, recorded the phone call starting at 12:30PM Central Time, or 1:30PM Eastern Time. The recording of the telephone call is 1 hour 35 minutes and 38 seconds long. I am admitting into evidence the recording.

35. Because the entire recording is over one and half hour long, I admit into evidence the attached true and accurate part of the recording where John Langlois, Esq., of the Rhode Island Office of Child Support Services in Rhode Island stated to me and Debra DeStefano "what happened in this case is when Mary's representative, her attorney, called us in late November 2021 and said she wants her passport released, what does she have to do to release her passport, they put her in touch with Karla, who gave her the $104k number. Where that number came from was the department attorney contacted the custodial parent, Mr. MEYERSIEK. So, we contacted his attorney, it wasn't me, it was somebody else in my office, and said, if she was willing to make a $104k payment to pay off the principle, would you be willing to waive the $75k or $73k in arrears. At that time, he said yes. So Karla notified Mary that if she paid the $104k, it would be paid in full because he was

willing to waive the interest, that was just the principle. What happened was the day after Karla told Mary to wire the $104k the attorney for Mr. Meyersiek contacted us again and said he changed his mind. Please put the interest back on the system. So we did."

36. That the above-referenced audio evidence was submitted to the Court by me.

37. That I submitted this audio evidence to the Court in the related case ***Seguin v. Rhode Island Office of Child Support Services, et al,*** **Civil Action No. 1:23-cv-0034-WES-PAS**

38. That the above-reference audio recording evidence proves that the Defendants knowingly initiated the unconstitutional state proceeding to further a scheme to fraudulently re-establish interest when Defendant Meyersiek waived interest in an agreement with me in consideration of my paying a pay-off lump sum of $104,185.98, brokered by the State Defendants themselves acting as his agent, in a scheme involving coordinated attempts to alter the outcome of the proceeding, to harass me, and has no merit.

39. That I, the Plaintiff, respectfully request this Court to issue Preliminary Injunction and Temporary Restraining Order that I seek in filing my Rule 65 motions.

40. That I, the Plaintiff, respectfully request this Court any and all relief under the circumstances. The Plaintiff's requested relief includes the Court's referral of the matters reported and placed on the record as they relate to the State's unconstitutional noncompliance with **Title IV-D**, including the coordinated attempts to thwart the Plaintiff's enumerated constitutional rights, to the appropriate Federal law enforcement authorities, such as the U.S. Departments of Justice agencies that filed briefs in support of holding judicial tribunals to its due process duty in the ***Turner*** Court.

41. That I am NOT waiving my right to and my demanded jury trial in my complaint on the merits of my claims.

42. That my <u>self-represented status is a material fact in the above captioned case</u>. This case in part concerns the coordinated attempts within associated enterprises of

named Defendants (and additional defendants that I intend to add, and accordingly filed a timely motion for extension of time to amend complaint, [ECF 12]), with the aim to defraud and unlawfully change the determinative outcome, coordinated attempts to deny, obstruct (access to), impede, infringe, restrict, abrogate, the pro se Texas Plaintiff's fundamental First Amendment, Fifth Amendment, and Fourteenth Amendment equal and meaningful access (1) to her Title IV-D records, (2) to tribunals, both administrative and judicial, and (3) to justice, via wire and via Mail, on an interstate basis.

43. Through the adoption nine years ago in 2014 of Rhode Island State Judiciary policies, practice, rules and administrative orders mandating electronic filing of all court filings through the State's electronic filing and case management system, Odyssey, while at the same time denying pro se litigants electronic access via the internet to the contents of court records, self-represented litigants (like me) have been targeted because of their exercise of the First Amendment and the Rhode Island Article I's constitutional right to all natural persons to access the courts, self-represented or with counsel.  This explicitly articulated policy to limit access denying by category pro se litigants only, that effectively denies equal access to the state courts and denies equal access to justice discriminating self-represented litigants, is further exacerbated by the state Family Court mandating time-sensitive child support matters to be heard remotely, which by extension requires remote access to the court, including remote access to court records, but which are not granted access to pro se litigants.  Meanwhile attorneys, state agencies and federal agencies are accorded by policy and practice by the State Judiciary, <u>instant</u> remote access, <u>instant</u> notice, and enjoy remote court record access to court records, instant notices, and instant access.  Throughout the COVID-19 closures of State Judicial Buildings in which physical portals are installed with the advertised provision for pro se litigants and the public, this exclusive club of attorneys and government actors enjoyed remote access, instant notices and instant access from the safety of their homes. But pro se litigants were continuously denied this basic health and safety safeguard,

as well as denied access to their case records.   Pro se litigants are thus shut out of meaningful participation in fully developing the record, and shut out of access to justice, through articulated State Judiciary policy.

44. Within this illegal judicial procedural framework that was implemented in 2014 and made permanent in 2018 and shockingly maintained throughout the COVID-19 Pandemic and continuing to this day, even more shockingly, the State Defendants have engaged and continues to engage in a policy and routine practice of wholesale electronically filing in state court proceedings in state Family Courts in **Title IV-D** program proceedings that are related to time-sensitive child support matters using an unnamed, **separate and different legacy Odyssey** electronic filing system, that results in pro se litigants not being noticed, as well as neither pro se litigants nor even the Rhode Island Virtual Court Clerk being able to view the contents of their pleadings, but only the electronic docket of the court case remotely, concretely showing prohibited government court record content infringement discriminating against pro se litigants.  So, while activity on a docket sheet can be discerned, Virtual Clerks cannot see what kind of activity it is, what kind of pleading it is, nor the content of that pleading.  Further, not even the content of court orders proposed and routinely electronically filed by State Defendants using this legacy electronic filing system can be seen by the Virtual Clerk.  However, the judge of the proceeding can see it, meaning the State Judiciary assured to integrate the structures of the legacy filing system with the current Odyssey electronic case management system architecture in such a way so that the judges can see the court filings of the State Defendants routine filings, implying the State Judiciary is fully cognizant of the legacy e-filing system the State Defendants use.   As if the above is not bad enough, the Family Court Judiciary adopted the Family Court Administrative Order in 2021 during the COVID-19 Pandemic mandating Title IV-D child support related matters to be heard remotely, thereby institutionalizing the remote nature of judicial tribunals in Title IV-D Program proceedings.  Yet, while institutionalizing the remote nature of such Title IV-D federally funded judicial tribunal proceedings, the State Judiciary

continues to maintain the articulated policy of restrictive remote access to court records.  This coordinated targeting of self-represented litigants in the State's judicial tribunals discriminates against and infringes upon my Federal Constitutional rights as a citizen of Texas, and wholesale denies her federal constitutional rights of speech, and equal access and meaningful access to the courts, equal access to justice, and due process rights.  Compounding the complexity of this coordinated attempt targeting pro se litigants to alter the determinative outcomes, the State Judiciary employees' verbal and written misrepresentations, whether via email, over the phone, or published online on the Judiciary's official website explicitly labeled, "Self-Help Center" "Representing Yourself," nowhere is this material fact of access denial to pro litigants of court records disclosed to me – instead, for example, emails from employees of the State Judiciary misrepresent to the Plaintiff that a copy of the transcript is available to the parties online through the portal when the Plaintiff filed an Order for Transcripts, for example.  Only after taking the Plaintiff's payment and after Plaintiff's repeated subsequent inquiries as to how to access the transcript through the portal did the State Judiciary employees state they did not know how it works and to call the Help Desk.  Nobody answers the phone at the Help Desk when the Plaintiff calls, therefore the State Judiciary Self-Help Center Webpage is misleading the Judiciary provides pro se litigants court administrative "accommodation" when there are proceedings that relate to time-sensitive matters.  The campaign of disinformation, misinformation and lack of information is consistent with a State Judiciary that has explicitly articulated a policy that illegally contravenes requisite judicial <u>duty</u> to <u>assure</u> reasonable accommodation to pro se litigants, as mandated by the U.S. Supreme Court ***Turner v. Rogers, et al.*, 564 U.S. 431 (2011).**  In other words, this is deliberate and by design, as Turner mandated ***additional pro se*** procedural accommodation, but the State Judiciary instead knowingly stripped away pro se litigants' fundamental procedural safeguards.  Therefore, to continue the charade of providing a "Self-Help Center" the State Judiciary necessarily misrepresents to me the falsehood that I have remote access,

in order to conceal their constitutional deprivations and the sham nature of the proceedings. For example, when I submitted an Access to Public Records Act ("APRA") record request to the Rhode Island Judiciary requesting all documents relating to the Judiciary's Remote Access Policy relative to pro se litigants vis-à-vis the attorney and government agencies, as well as the reasons behind the adopted policy, I received a belated, untimely curt official written response that took 30 days to revert via email that the State Judiciary does not possess any records and that even if it did, they are "attorney-client privileged." Just who is representing whom in what matter in that State Judiciary APRA response? That's not stated either. Therefore, the APRA record request response by the State Judiciary shows a coordinated attempt to conceal this unconstitutionally access obstructive tribunal structure. I to this day am continuing to discover and verify concealed facts about the above-described architecture, exercising the federal and state access to public records statutory rights. This State Defendant and State Judiciary coordinated concealment necessarily results in delaying my access to and investigation into verified facts to comply by the letter with the Federal Rules of Civil Procedures here, with each verified record obtained shocks the Plaintiff further. I am further over 2,500 miles away in Texas far from Rhode Island. Therefore, based on these exceptional and specific circumstances of hardship up against coordinated attempts to close the ranks by powerful and resourceful State actors, I respectfully request the Court to consider the above circumstances of this case, and specifically invoke the due process judicial duty in *Turner v. Rogers* **(2011)** that above all emphasizes the Court's duty to arrive at the merits of the controversy before it. I further invokes and relies on applicable safeguards enumerated in the First Amendment, the Fifth Amendment and the Fourteenth Amendment, and seeks protective safeguards from this Court to protect the pro se diversity Texas Plaintiff against the State actors in this Court.

45. Into the afore-described wholesale (e.g., denial of access to court records, denial of full participation in developing the court record, denial of access to court orders,

denial of access to court transcripts that I ordered and paid for, denial by the RI Superior Court State Judiciary to transfer file to the Supreme Court for appeal, denial of equal and timely notice in time-sensitive matters, etc.)  First Amendment deprivation State tribunal, the State Defendants hauled me for remote proceedings, ***State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin*, K2001M0521M**,  with the remote nature mandated by administrative order, in which I am, by State policy and in practice, blinded, not noticed, for alleged "child support proceedings" for alleged interest arrearage, when the State Defendants themselves acting as agent for the Defendant Gero Meyersiek brokered an agreement with me in Texas of interest waiver in consideration of a very large lump sum pay-off payment by me, which I in good faith accepted and executed.

46. Similarly to State Defendants' deprivation of my First Amendment access to my own child support records in the Title IV-D RI EOHHS administrative tribunal in 2022, the State Defendants denied my First Amendment statutory access to my case file under APRA in 2022, then RI State Superior Court denied my First Amendment remote access to the state court in 2023 all the while disseminating false information about remote access to court records, then the RI State Judiciary denied my First Amendment remote access to the court records, then State Defendants hauled me into the RI Family Court on a meritless claim that can only be obtained through coordinated attempts to alter the determinative outcome through coordinated deprivation of First Amendment right to access court records which they file into a separate filing system that nobody can see but themselves, lawyers and the Family Court Judge.

47. Then the RI State Superior Court Clerks denied my First Amendment access to the RI Supreme Court by not transferring the case, then the State Judiciary denies my First Amendment APRA access to State Judiciary public records on their pro se remote access policy, and this list is not exhaustive.

48. It is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury."  I have and continue to suffer

significant loss of First Amendment rights caused by the State Defendants, and I am suffering considerable irreparable injury.

Respectfully submitted,
Date: August 17, 2023

                MARY SEGUIN

*Mary Seguin*
Mary Seguin

P.O. Box 22022
Houston, TX 77019
maryseguin22022@gmail.com