UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

**MARY SEGUIN,**
*Pro se*

*Plaintiff,*

VS.                                                            Civil Action No. 1:23-cv-00126


**RHODE ISLAND DEPARTMENT OF HUMAN SERVICES** in its official capacity; **MICHAEL D. COLEMAN, DEBORAH A. BARCLAY** in their individual and official capacities; **RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES** in its official capacity; **LISA PINSONNEAULT, CARL BEAUREGARD**, in their individual and official capacities; **GERO MEYERSIEK**

*Defendants*

## MARY SEGUIN'S SECOND DECLARATION IN SUPPORT OF PLAINTIFF'S RULE 65 MOTION FOR PRELIMINARY INJUNCTION
## And
## PLAINTIFF'S RULE 65 MOTION FOR TEMPORARY RESTRAINING ORDER

I, MARY SEGUIN, hereby declare under penalty of perjury, pursuant to 28 U.S.C. sec. 1746(2) that the following statements are true and correct:

1.) The state court proceeding, ***State of Rhode Island ex rel. Gero Meyersiek v. Seguin,*** **K20010521M** that the State Defendants opted for instead of the RI EOHHS agency appeal from which that the State Defendants voluntarily withdrew in 2022, achieves the very objective of the State Defendants from the get-go, namely First Amendment denial of access to my own records created and maintained under the Title IV-D Program, and due process rights.  The State Family Court proceeding's electronic management system is designed, by State policy, to integrate State Defendants' LEGACY unnamed electronic filing system that makes court records they filed into invisible remotely, except to the filers themselves

and to the judges of the proceedings, making proceedings one-sided no-contests in favor of the State – making the State actors' coordinated attempts aimed at altering the outcomes manipulated by the State. The outcomes are predetermined, especially against pro se litigants, like me, when the adversarial contest is thus manipulated to be thoroughly unevenly matched. Even State Judiciary Virtual Clerks cannot see the contents of the State Defendants' pleadings. The legacy system does not notice the opposing party electronically. The legacy system generated State filings are sometimes mailed by U.S. Mail because they are curtesy and discretionary, that violates notice requirements of due process. Mail notice across the country over 2,500 miles away to Texas would be untimely in time-sensitive matters, and is unequal access to justice, an irreparable injury that I was made to suffer, suffer and will suffer. Without remote access to the contents of court records in mandated remote hearing defending against State Defendants' invisible prosecutions, renders the pro se litigant, like me, going into hearings, blind, blind-sided, and gagged. This is diametrically opposite to the mandate in the seminal U.S. Supreme Court case, **Turner v. Rogers (2011)**, to which the State Judiciary shows not just indifference but defiant revolt, by adopting their First Amendment court access denial targeting pro se litigants, as **explicitly articulated policy**: ***The articulated "restricted" access policy only discriminates pro se litigants, not lawyers, not government actors.***

2.) In November 2021, my Texas Counsel made repeated attempts contacting the Rhode Island Office of Child Support Services seeking the statement and balance owing on my child support account. I expected the record to be accurate. The agency is required to ***assure the maintenance of accurate records regarding the payment of support***,1988 Act § 123(a)(C), 102 Stat. 2352; 42 U.S.C. 654(24)).

**However, the Rhode Island Office of Child Support repeatedly refused to talk to my lawyer and said I had to personally talk to them directly without counsel.  Therefore, I had no choice but to talk to call them directly, without counsel.  On December 6, 2021, I in good faith called the Rhode Island Office of Department of Child Support Services from Texas.  I do not have any caller ID block on my phone and my phone number displays on all phone system that have in-coming caller ID features.  Therefore, I expected Rhode Island Office of Child Support Services to be able to identify me calling from Texas.  I spoke with an agent called Karla Caballeros, who informed me that she was my case manager and that they do not speak with attorneys, only the parents directly.  Only later did I learn that this was a lie because staff attorneys of the Rhode Island Office of Child Support Services routinely contacted GERO MEYERSIEK's lawyer(s) and claim they did not directly speak with GERO MEYERSIEK.  Therefore, the Rhode Island Office of Child Support Services (State Defendants) deliberately sought to disadvantage me by forcing me to be self-represented in 2021 by refusing to speak to my Texas lawyer and conditioning my access to child support arrearage owed on whether I was pro se or not.**

3.) In December 2021, employees of the State Defendants, acting on behalf of GERO MEYERSIEK, brokered an agreement with me, unrepresented, over the phone and via email, in which the State Defendants represented to me that GERO MEYERSIEK waived interest in consideration of my paying off child support in a lump sum of $104,185.98.  I accepted and immediately executed on the agreement on the same day.  Unbeknownst to me in Texas, after I communicated to the State Defendants I made the agreed upon payment on December 7, 2021, the State Defendants claim they received a phone call from GERO MEYERSIEK's attorney, Barbara Grady, that GERO MEYERSIEK changed his mind, and to "put the interest

back on the system." The "system" is the **automated data processing and information retrieval system[s]**" under federal Title IV-D for the explicit purpose of improving "the monitoring of support payments, the *maintenance of accurate records regarding the payment of support*,1988 Act § 123(a)(C), 102 Stat. 2352; 42 U.S.C. 654(24).** Among other things, the system must include a state case registry that includes every child-support case in the State, including the amount of monthly support owed and collected in all cases administered by the state agency. **42 U.S.C. 654a(e)(1) and (4)**; see **42 U.S.C. 654a(e)(5)** (States must "promptly * * * update" case records when circumstances change). The States are required to use their centralized databases "to the maximum extent feasible, to assist and facilitate the collection and disbursement of support payments," including by establishing wage-withholding orders and sending wage-withholding notices to employers. **42 U.S.C. 654a(g)(1);** see **42 U.S.C. 666(c)**.

4.) The State Defendants, as agents of Gero Meyersiek, complied with GERO MEYERSIEK's directive without any question, and immediately set in motion actions to seize my property in Texas under the guise of "collecting interest."

5.) Meanwhile, with this glaringly tortious **42 U.S.C. 654a(e)(5)** "change in circumstances," the State Defendants failed to promptly update my case records. On the contrary, post-my payment, in response to my inquiry as to when my $104,185.98 payment would post and be reflected on my child support online account (the accounting amounts paid and amounts owed that is shown in my online account is fed by the **automated data processing and information retrieval system[s]** under federal Title IV-D for the explicit purpose of improving "the monitoring of support payments, the *maintenance of accurate records regarding the payment of support*,1988 Act § 123(a)(C), 102 Stat. 2352; 42 U.S.C. 654(24))**, State

Defendants lied to me and mislead me that because it was the Christmas and New Years holiday season (December 2021), the records would not be updated for a while after my lump sum payment, in order to put me off of monitoring her account.  Similarly, the State Defendants never disclosed to me from December 2021 to October 2022 the material fact that the State put the interest back on the system ***within hours*** of my paying the agreed upon lump sum payment to pay off child support.

6.) Further, the State Defendants fail to comply with Title IV-D's requirement to ***maintain accurate records regarding the payment of support***,**1988 Act § 123(a)(C), 102 Stat. 2352; 42 U.S.C. 654(24))**.  On December 6, 2021, I took a screen shot of my State Defendants-maintained online account that stated $93,214.56 under "Arrears" and $0.00 under "Interest."  Obviously, $93,214.56 is discrepant to the State Defendants' assertions that payoff arrears is $104,185.98, showing the significant inaccuracy of record keeping by approximately a whopping $11,000 in excess of the amount demanded/collected, or more than 15% margin of error, that violates the terms of Title IV-D program.

7.) When I requested an accounting or statement of the total due, the State Defendants failed to provide a proper statement of accounts, and instead sent me an email that stated, "Accounting says… $104,185.98."

8.) At the time, I, forced into pro se in Texas by the State Defendants, in good faith justifiably relied on the State Defendants' misrepresentations, lies and deceit, but to my detriment, because I was not aware of bad-faith criminal coordinated attempts in Rhode Island that conspired to make me pro se from November to December 2021, namely, that while they refused to take my Texas lawyer's calls to the State Defendant agency, behind the scenes, State Defendant agency in-house staff attorneys were directly calling GERO MEYERSIEK's lawyer, Barbara Grady, Esq.  Therefore, State Defendants schemed to deprive me of my right to

my own counsel of choice in Texas for the purpose of disadvantaging me from the get-go.

9.) Unbeknownst to me, from December 2021, after (within hours of) my payment of the agreed upon pay-off $104,185.98, to March 2021, the State Defendants actively set in motion seizing and levying her properties in Texas, without notifying me the very material "change of circumstances" relating to the contract the State Defendants brokered. Not alerting me in Texas and putting me off monitoring my account by lying the December holiday season delays online updates achieves the State Defendants' objective to enable unfettered seizure and deprivation of my property without due process and without access to accurate records or accounting information. Only in March 2022, did I in Texas receive a notice of lien via U.S. Mail sent from Rhode Island by the State Defendants, notifying placing a lien on my Texas property for a very large sum of $75,638.00 that provided no explanation, no accounting and no justification, executed under the federal **Title IV-D** program. How $75,638.00 was computed is anybody's guess, because the figure does not appear on any **automated data processing and information retrieval system[s]** under federal Title IV-D for the explicit purpose of improving "the monitoring of support payments, the ***maintenance of accurate records regarding the payment of support***,**1988 Act § 123(a)(C), 102 Stat. 2352; 42 U.S.C. 654(24))**, and the State Defendants deny to this day my right to access my Title IV-D case file records that show how this very large $75,638.00 amount that appears in interstate liens and levies executed in the name of the federal Title IV-D Program by the State Defendants on Plaintiff's Texas property is computed or justified, or what it represents, principle or interest, or both. However, the State Defendants maintain this lien is "system-generated," showing this is also "legacy system(s)" generated that are inaccurate. Denying me access is

part of their coordinated attempts and scheme to cover up their abject noncompliance with Title IV-D accurate record keeping mandate as a condition of State eligibility to participate in the lucrative Title IV-D program that is lining the State Defendant actors' pockets. State agency lawyers are incentivized by policy to prosecute as many cases as possible for promotions, with the number of cases prosecuted a defined metric of performance for promotions. Additionally, because I exercised my First Amendment right to sue the Rhode Island Office of Child Support Services ten years ago between 2012 and 2013, the State Defendants seek to retaliate against me in a grudge, to chill my exercise of First Amendment guaranteed liberties. The Rhode Island Office of Child Support Service's official policy is not to pursue child support interest in interstate child support cases. Because I sued Pricilla Glucksman in 2012, staff-attorney of the Rhode Island Office of Child Support Services, who is a friend of Gero Meyersiek, she coordinated attempts with Gero Meyersiek for Rhode Island Office of Child Support Services to seek child support interest in the family court when I am an out-of-state Texas party. In 2013, I was medically ill and unable to travel and attend in-person proceedings after giving birth to my daughter in Texas, I submitted my doctor's requests for medical excuses to the family court. In my unrepresented absence, Priscilla Glucksman in conspiracy with Gero Meyersiek made an oral motion in family court, by Priscilla Glucksman on behalf of both the State and Meyersiek, to ask for interest in my interstate child support case, which is diametrically contrary to the official and published policy of the Rhode Island Office of Child Support Services that the agency as a matter of policy does not seek child support interest in interstate cases.

10.)    Because I was unrepresented and ill, I was not aware of this, and because the State Judiciary by policy denies remote public access to court

records to pro se parties, there was no way to view any court record. This was especially true during the COVID-19 Pandemic. The State Defendants actively engaged in coordinated attempts to deprive and abrogate my due process Constitutional rights as a citizen of Texas, and take advantage of my unrepresented or self-represented status or absence due to excusable medical reasons, and the vast distance between Texas and Rhode Island, similar to the state tribunals taking advantage of pro se litigants in ***Turner v. Rogers***, **(2011)**. My disadvantaged unrepresented and self-represented status is material to this case.

11.)    On April 1, 2022, I timely appealed the lien, which docketed at the Title IV-D Program Appeals Office of the Rhode Island Executive Office of Health and Human Services ("RI EOHHS"). **RI EOHHS Appeal Docket# 2022-2116.** It is amply clear that Title IV-D requires due process compliance as a condition for State participation in federal funding under the program, as afore-discussed.

12.)    However, throughout the entire seven-month duration of the Title IV-D appeal (April 2022 to November 2022), the State Defendants denied everyone of the more than ten (10) First Amendment and due process requests I made in Texas, violating my First Amendment and due process rights to access her own child support records in a State administered Title IV-D adjudicative proceedings that are guaranteed by Congress and the Secretary; *See*, e.g., **42 U.S.C. 666(a)(3)(A)**; **42 U.S.C. 666(a)(7)(B)(i)**; **42 U.S.C. 666(a)(8)(B)(iv)** (income withholding "must be carried out in full compliance with all procedural due process requirements of the State"); **42 U.S.C. 666(c)(1)(H)** (expedited State agency procedures "**shall be subject to due process safeguards, including (as appropriate) requirements for notice, opportunity to contest the action, and opportunity for an appeal on the record to an**

**independent administrative or _judicial_ tribunal"**); *see* also **45 C.F.R. 302.70(a)(5)(iii), 303.5(g)(2)(iii), 303.100(a)(6) & (f)(4), 303.101(c)(2), 303.102(c)(1), 303.104(b).** Therefore, I, pro se in Texas, respectfully emphasize to this Court that the facts show it is as plain as day, including to any self-represented layman with or without a college education that Congress intended and the United States Supreme Court in _**Turner**_ held that ALL administrative and/or judicial tribunals have a DUE PROCESS DUTY concerning child-support related matters under Title IV-D that are before them. I **respectfully place on the record and aver that this due process duty of judicial tribunals where a pro se litigant is a party similarly applies to actions and torts arising out of state actions relating to child-support related matters under Title IV-D that are properly before this federal Court, as here.**

13.)     To address the State Defendants' noncompliance with requisite access by me to my own case records throughout my-initiated RI EOHHS Appeal, on October 5, 2022, the hearing officer held a telephonic conference in which the hearing officer and staff counsel for State Defendant RI Office of Child Support Services in Rhode Island participated, and in which I pro se participated in Texas. I recorded the entire telephone call in Texas that was over one and a half hour long and submitted/offered into evidence in the related case _**Seguin v. RI Office of Child Support Services et al,**_ **C.A. WES-PAS-23-36** the part of the telephone recording in which the staff counsel of the State Defendant RI Office of Child Support Services, John Langlois, Esq., stated, "what happened in this case is when Mary's representative, her attorney, called us in late November 2021 and said she wants her passport released, what does she have to do to release her passport, they put her in touch with Karla, who gave her the $104k number. Where that number came from was the department attorney contacted the custodial parent, Mr.

MEYERSIEK.  So, we contacted his attorney, it wasn't me, it was somebody else in my office, and said, if she was willing to make a $104k payment to pay off the principle, would you be willing to waive the $75k or $73k in arrears.  At that time, he said yes.  So Karla notified Mary that if she paid the $104k, it would be paid in full because he was willing to waive the interest, that was just the principle.  What happened was the day after Karla told Mary to wire the $104k the attorney for Mr. Meyersiek contacted us again and said he changed his mind.  Please put the interest back on the system.  So we did."

14.)     The State Defendants' denial of my First Amendment and Due Process right and request to access my own child support case records in a State Title IV-D administrative appeals tribunal is motivated by the State Defendants' desire to criminally obstruct my access to my case records that obviously document the above activities, that show <u>coordinated attempts</u> of tortious and obstruction to justice activities by the Defendants, through wire and the U.S. Mail.

15.)     I, pro se, at this juncture respectfully request the Court to take Judicial Notice of the fact that I filed a Motion for Extension of Time to Amend Complaint [ECF 12] on August 8, 2023, attaching documentary evidence of email and court order exhibits attached to this herein motion, for the expressed purpose of requesting an extension of time to prepare and present discovery-obtained evidence and newly verified facts obtained through First Amendment federal and state access to public records statutes, that goes to show facts relating to **Younger Abstention Exceptions**.  Younger Abstention Exceptions include (1) **improper state motives**, (2) **harassment**, and (3) **due process-defective state proceedings**.  Facts relating to these exceptions are of public interest import and material to the issues raised in this case, that readily meet the low threshold good cause standards.  The ***Turner*** Court held

what that due process requirement in proceedings where the party proceeds pro se ought to be, and proves and shows that not only are **unconstitutional judicial tribunals systemic** in this country, they are capable of "repetition but evading review." The ***Turner*** Court recognized that unconstitutional judicial tribunals are totally plausible and are capable of repetition but evading review. This view is similarly shared by the United States Department of Justice in its amicus brief submitted to the ***Turner*** Court. Of concern, the unconstitutional state judicial tribunals in Rhode Island that deny pro se litigants' First Amendment, due process and equal rights to access the courts and court records, that explicitly wholesale deny requisite constitutional rights across the state in all state judicial tribunals, plainly repeat systemically on a daily basis, yet succeeded in evading review for the past **nine years** since **2014**, (in part through the apparent success rate of the coordinated campaign by the State Judiciary of disinformation, misrepresentation and omission of material facts of the Judiciary's restrictive policy targeting pro se litigants) and the denial is on-going, and discriminatorily targets pro se litigants such as the diversity Texas Plaintiff, who is self-represented. I intended for this Court to review the evidence of Younger Abstention Exceptions, in the context of the ***Turner*** Court's mandate of the judicial due process duty and obligations to pro se litigants in state proceedings and similar duty to the pro se litigant in this Federal Court. I intend that now. State Defendants irreparably harm me as well as the American people, for which the courts in our judicial system are created, and not for lawyers, or government actors or the affluent. Although the court system is created by lawyers and judges, but I respectfully raise here and place on the record here, that courts are created for the people, and that is especially truer for the self-represented. Government actors who coordinate attempts to disadvantage the self-represented or the

unrepresented violate both the Constitution and damage the integrity of courts, and undermine public confidence in the courts, which damages public confidence in two branches of the government, the judiciary and the executive.   Government actors I describe here undermine the basis of the democratic system and act against public interest.  I, in good faith, respectfully present this constitutional crisis to this Court, for redress, and seek to advance case law, as a necessary post-***Turner*** Court review of compliance by the lower courts with the Supreme Court's mandate.

16.)      State Defendants' coordinated attempts to undermine the Constitution weaponizing the court system adversely affect a significant portion of the entire populace, is pervasive and extensive, and that coordinated attempt by the State actors targeting pro se litigants adversely impact the most disadvantaged members of the public, who are self-represented litigants.  Over 30 million people across the country every year appear self-represented before judicial tribunals, comprising between a staggering 60% to 100% of all court litigants, according to the American Bar Association ("ABA").  Report found here:

https://www.srln.org/system/files/attachments/AppendixA.ABA%20remote.117-annual-2020.pdf

17.)      The State judicial tribunals that misuse and abuse the transfer of court case management systems from the analog to the digital electronic 21st century through costly implementation of electronic filing and case management systems paid by public funds to outright articulate their official policy to restrict and deny pro se litigants their First Amendment rights of equal and meaningful access, and equal access to the court record and deny equal protections and due process to the pro se litigants (and to the public and the press) constitute illegal coordinated attempts to weaponize the justice system against 60% to 100% of court litigants, that alter the outcome of the adversarial contest aimed to the detriment

of 60% to 100% of the court litigants and to the detriment of the American public. Knowingly integrating the State Defendants' Title IV-D agency LEGACY e-filing system with the Judiciary's Odessey system so that only the judges can see the filings but neither the pro se litigants nor the Rhode Island Judiciary Virtual Court Clerk is a State Judiciary and Title-IV D State Defendants scheme to conduct one-sided pre-determined proceedings. Because I had raised on the record and attached the undisputed Rhode Island Judiciary court orders and rules and practices denying First Amendment, equal protection and due process constitutional rights of self-represented litigants concretely showing systemic unconstitutional proceedings in the state judicial tribunals targeting self-represented litigants [ECF 12] on August 8, 2023, I respectfully placed on the record for review <u>the due process duty of this federal Court in its review of undisputable First Amendment irreparable harm before this judicial tribunal</u>. I am astounded that post-***Turner***, the State Judiciary is emboldened enough to adopt an articulated state judiciary policy that restrict court access to pro se litigants (**and the public and the press**) since 2014, yet has evaded review in the First Circuit, and further preserve on the record for review this Court's necessary review of the record here in the Texas pro se Plaintiff's Memorandum documenting the aforesaid facts of systemic unconstitutional proceedings in the Rhode Island state judicial tribunals targeting pro se litigants like me within the context of the ABA Report, that documents the fact that **60%** to **100%** of the 30 million litigants who appear before judicial tribunals every year in this country, are self-represented. *See* American Bar Association Report at

https://www.srln.org/system/files/attachments/AppendixA.ABA%20remote.117-annual-2020.pdf

18.)      I, in Texas, self-represented, in good faith, respectfully seek to advance case law.

19.)      At the October 5, 2022 RI EOHHS Pre-Hearing Conference, the Hearing Officer asked the State Defendant RI OCSS in-house lawyer why is the agency refusing to produce my Title IV-D Program child support case records in the Title-IV Program appeal.  In response, the State Defendant RI OCSS in-house lawyer said I sued the agency and one of their lawyers.  The in-house lawyer sounded upset.  His name is John Langlois, Esq. To this, the Hearing Officer, Debra DeStefano, responded that that was a long time ago and told him to put it aside.  As declared above, I, in Texas, and a party to the call, recorded the telephonic call.

20.)      In October 2022, after being told by the RI EOHHS Appeal Officer to produce the my child support case file and to testify at the upcoming appeals hearing what the State Defendant RI OCSS revealed at the October 5, 2022 pre-hearing Conference, the State Defendant RI OCSS voluntarily withdrew from my-initiated appeals hearing, for the purpose of avoiding testifying to the facts on the record in the appeals hearing, and to avoid agreed-upon production of the Plaintiff's child support case file under Title IV-D.  State Defendants' coordinated withdrawal to avoid placing on the hearing record evidence of their brokering the interest waiver agreement with me subvert Title IV-D mandated due process and to obstruct justice is a criminal act, and the State's deliberate coordinated noncompliance with due process mandates of Title IV-D renders the State Program ineligible for Federal funding, per the statutory language of Title IV-D eligibility requirements.

21.)      The fact that Rhode Island Judiciary and the State Defendants have coordinated attempts described above through the articulated State judiciary policies, administrative orders and practices and rules and email communication to unsuspecting pro se litigants, like myself in Texas, a

citizen of Texas, that are attached herein to this Motion and Memorandum, with the aim to subvert the constitutional rights of self-represented litigants, who comprise a disproportionate majority of litigants in cases before the Title IV-D judicial tribunals, such as the Family Court and the Superior Court, since 2014, for the past nine years, and is on-going, shows that per the letter of the law and intent of Congress, the Federal Funding Rhode Island state agencies, by and through their employees, received since 2014 as it relates to Title IV-D programs where due process is a requisite condition of state participation, was knowingly and is knowingly defrauded, and should rightfully be clawed back, as a matter of public interest. I am self-represented in Texas and a citizen of Texas hauled against my will before the State judicial tribunal by the State Defendants who lack sufficient legal basis to re-establish child support interest after their own brokering of waiver of interest agreement, and contradicting their own written official policy of **not** pursuing interest in interstate cases, who articulated retaliatory motives holding grudge against me for my First Amendment right to access to the Court suing them 11 years ago from 2012 to 2013 in a scheme to chill my exercise of First Amendment rights, have standing and an affirmative special interest in that the afore-described coordinated criminal activities were funded through Title IV-D to defraud me, targeting me in Texas, and coordinated to deprive my Constitutional rights in Texas on an interstate basis. For example, the "system-generated" lien is a system or outsourced service funded by Title IV-D Program for the purpose of legitimate interstate collection of child support, not collection activities that are violative of the mandated procedural due process statutory provisions of Title IV-D. For example, throughout the duration of my-initiated RI EOHHS Appeals Process, the State Defendants impermissibly continued lien and levy property seizure activities on the Plaintiff's Texas

property under the Title IV-D program.  The RI EOHHS Hearing Officer at the PreHearing telephonic Conference on October 5, 2022 had to spend approximately 45 minutes to make the State Defendants agree to rescind/cease and desist State Defendants from further property seizure/collection activity until adjudication of the appeal on the merits, showing State Defendants' actions are routine, systemic, capable to repetition and evading review, just like the circumstances in ***Turner***, and disturbingly occurring 12 years post-***Turner***.  Fighting the Hearing Officer of a Title IV-D Appeal to insist on maintaining lien and collection activities during the pendency of an appeal without any regard to the ineligibility implication of the State Defendants' unlawful collection actions to the State's participate Title IV-D Program is shocking and shows that State Defendants' violation is systemic.  They think they can get away with it.  It is capable of repetition, yet evading review.  This exchange over the telephone is audio recorded by me in Texas, a participant in the telephone conference.  State actors were in Rhode Island.

22.)     Immediately after the State Defendant RI OCSS's voluntary withdrawal from my-initialed RI EOHHS Appeal, I submitted on December 1, 2022 an Access to Public Record Act ("APRA") record request to the Secretary of RI EOHHS for my child support case records.  **APRA**, which is modeled after the Freedom of Information Act ("FOIA"), is a statutory right of access under the **First Amendment**, and exists under the common law right of access, including judicial records and documents. There is a common law right of access, since "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." ***Nixon v. Warner Commc'ns***, **435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed.2d 570 (1978)**. That right derives from the interest of the public "to keep a watchful eye" on the workings of government. *See* id. at 598-99, 602, 98 S. Ct. 1306.

APRA and the FOIA are statutory rights of access under the First Amendment that embody the same sort of concerns as the common law right of access. "FOIA is often explained as a means for citizens to know what their Government is up to," reflecting "a structural necessity in a real democracy." ***Nat'l Archives & Records Admin. V. Favish,*** **541 U.S. 157, 171-72, 124 S. Ct. 1570, 158 L.Ed.2d 319 (2004)**.  The R.I. Supreme Court on numerous occasions pronounced that the Rhode Island Access to Public Records Act ("APRA") is directly modeled after the federal Freedom Of Information Act ("FOIA").  See, e.g., ***Providence Journal Co. v. Convention Ctr. Auth.,*** **774 A. 2d 40, 46 (RI 2001)**("Because APRA mirrors the Freedom of Information Act (citation omitted), it is appropriate to look to Federal case law interpreting FOIA to assist in our interpretation of the statute.")

23.)    The State Defendant RI OCSS denied my APRA request on December 13, 2022, citing as the basis of denial, "unsegregable."  On December 16, 2022, the RI EOHHS emailed me an official letter response through its Chief Counsel, Ms. Martinelli, Esq., claiming that the records sought by me are not maintained within the RI EOHHS agency that overlooks Defendant RI Department of Human Services that overlooks Defendant RI OCSS.  The letter further stated that appeal of the agency's record denial should be made to the then acting director of the State Defendant RI Department of Human Services, and that I can also appeal the agency denial to the Rhode Island Attorney General, counsel for State Defendants.  This letter stated cc: Debra Barclay, Esq., a State Defendant here.  Ms. Martinelli did not explain who Debra Barclay was, nor her role or function.  It is clear now that State Defendant Barclay is the Chief Counsel of State Defendant Department of Human Services that oversees RI OCSS, approved the RI OCSS's denial of Plaintiff's APRA request, and is therefore cc'ed in the Martinelli letter.

24.)        I reasonably relied on Ms. Martinelli's APRA response letter from RI EOHHS and filed an appeal to the Office of Open Government of the Office of the RI Attorney General in January 2023.  At the same, reviewing the statutory language of APRA which states that nothing in the statute precludes the requester from filing an action in the RI Superior Court, I filed the same, in December 2022.  Prior to and after filing the APRA action in RI Superior Court, I consulted the RI Judiciary's website's "Self-help Center" targeting pro se litigants.  Nothing on the webpage stated nor does it now state that self-represented litigants are denied remote access to their own case's court records.  In December 2022, RI State courts were operating under COVID-19 Pandemic implemented rules, practices and procedures, many of which continue to be in effect today, that emphasized and continue to emphasize remote court access, which required litigants' e-filing of documents.  The clerk's office stated over the phone to me (I identified herself as self-represented) that out-of-state filers would be emailed the court documents such as the summons, court forms shall be downloaded from the website, filled out, and submitted through email back to the court clerk.  Scheduling of hearings would be conducted with the court's clerks via emails in the same manner.  Hearings would be conducted via WebEx.  Nobody, including the RI Judiciary Self-help Center website (aimed at pro se litigant audiences) disclosed the very material fact that out-of-state pro se litigants are effectively denied access to court records (e.g., contents of all pleadings filed by opposing party, transcripts of WebEx hearings, contents of all court orders, and contents of transcripts of court hearings/record for appeal.), but that attorneys, state and federal agencies have access.  Essentially, this results in an adversarial court contest in which the pro se litigant is purposely blinded by the state judiciary, denied access to court records of pro se litigants' own public

cases and public hearings, and can only file into the electronic filing system that immediately notices the opposing party, in this case, the state government actors and lawyers who coordinated attempts to deny the Plaintiff's First Amendment right of access to her own child support case records, whether under statutory APRA or Title IV-D program appeal proceedings and tribunals.

25.)      Institutionalized First Amendment deprivations by the state judiciary of the disadvantaged pro se litigants' constitutional rights is especially egregious, as in fact and in practice, the state judicial tribunals are designed by the judiciary to be sham contests in all cases in which a pro se litigant is a party or both parties. Every person's, especially lay person's understanding and grasp of fairness is the reasonable expectation that what is filed remotely should also be available to be seen remotely on an equal basis, irrespective of the party's representation status. Therefore, with the disinformation disseminated by the Rhode Island Judiciary described above, I was misled that it was a user-technology issue, like the one identified by the Federal Court clerk in this action, filing a complaint through PACER, and not a structural court case record denial designed into the architecture of the system by official judicial policy.  Nobody at the state judiciary disclosed this material policy, rule, regulatory, and electric filing system architectural/structural denial of access to me, pro se, that is obviously designed to exclude 60% to 100% of all litigants who proceed pro se in state courts. Pro se litigants stand no chance against government agencies' lawyers' and the judiciary's coordinated attempts to subvert and obstruct access to child support case files under the Title IV-D program, obstructing justice?  This is directly violative the _**Turner**_ Court's mandate to provide accommodation to pro se litigants to assure due process guarantees and to fully develop the record.  Without question, this is categorically

violative of the due process requirements Congress embodied in Title IV-D, intended and emphasized by Congress and the Secretary alike. In essence, this corruptive coordination between the State Defendants and the State Judiciary is a constitutional crisis that implicates hundreds of billions of dollars of federal funding under Title IV-D, to which, given the facts, Rhode Island is not eligible to participate in, at the very least since nine year ago in 2014 when it started and adopted unconstitutional proceedings denying access to court records targeting pro se litigants during the State courts transfer of court filing and case record management from the analog to the digital in 2014. This is especially disturbing that these are actions and adopted policies by the State Judiciary actors, in the branch of government whose duty is to adjudicate petitions FAIRLY. Therefore, I respectfully place this constitutional crisis squarely before this Federal Court in the District of Rhode Island, how will this Court redress this egregious wrong? short of an issuance of temporary restraining order and preliminary injunction?

26.)      On January 19, 2023, the Office of the Attorney General (AG) emailed me abstaining from reviewing the Plaintiff's APRA appeal because upon research of the court records in the RI Superior Court, the Office found the pending APRA action ***Seguin. Vs. RI Office of Child Support Services, PC-2022-02715***. Minimum due diligence would require the State Attorney General's Office to identify my representation status in the APRA state court action is pro se, and that I am filing from the State of Texas over two thousand miles away, remotely. While spending over two paragraphs in the email citing legal precedents supporting the Attorney General's decision to defer to the Superior Court APRA action I filed, the Office of Attorney General glaringly OMITS disclosing the material fact, which the Office of the Attorney General knew, that my Superior Court proceeding pro se remotely necessarily involves a sham

proceeding when the AG Office obviously knows and/or should have known, that the state judiciary adopted rules, practices and regulations denying remote access of court records to pro se litigants, who in this case, is out of state in Texas over two thousand miles away.  The Attorney General ("AG") of Rhode Island served for decades as a former Assistant U.S. Attorney General who resigned during the Trump Administration, and therefore as a former practitioner of federal law, specializes in federal and diversity issues over more specialized state practitioners, and knew and should have known the diversity, U.S. Constitutional issues and federal Title IV-D implications outlined in the APRA Complaint that impacts the State's eligibility for Title IV-D Federal funding.  Afterall, Plaintiff's APRA complaint is not an appeal of the localized request genre for arrest records of the son of former Governor Lincoln Chafee, or local townhall meeting minutes, that are regularly publicized by the AG's Office or the Press, for example.  Plaintiff's APRA Complaint contains elements of interstate deprivation of Constitutional rights of a Texas citizen in Texas and elements of coordinated obstruction of justice by RI state government actors relating to activities associated with the interstate enforcement of child support under Title IV-D, violating codified Federal criminal statutes, such as Title 18 U.S.C., Section 241 – Conspiracy Against Rights.  However, the AG's Office not only fails to act on the complaint filed with his Office concerning these serious crimes, but further coordinates with the State Defendants to abstain from participating in any means, such as filing an amicus brief, or disclose to me, proceeding pro se, that the APRA action I brought is futile as it is a remote proceeding in which the pro se plaintiff/litigant is denied remote access to court records and notice by the state judiciary rules, practice and regulation by articulated policy – in other words, it is a sham proceeding by its very architecture and court structure.  This Court, is

confronted with the show cause documentary-evidence-supported facts filed in Plaintiff's Motion for Extension of Time to Amend Complaint [ECF 12] filed on August 8, 2023, and the documentations evidence and Affidavit in support of the Rule 65 Motions filed herein.  The ***Turner*** Court, held that the judiciary has an affirmative due process duty to protect constitutional safeguards of pro se litigants to ensure justice can be equally accessed by pro se litigants.  In other words, in cases concerning deprivation of First Amendment, equal protection and due process rights, the judiciary, when confronted with the facts, has an affirmative due process duty to the pro se litigant.  Since the judiciary has an affirmative duty to the pro se litigant, the RI AG Office of Open Government similarly has an affirmative due process duty to the pro se APRA record denial appellant, namely me.  Further, constitutionally, the RI AG is directly elected to enforce all applicable laws in the State of Rhode Island, including U.S. Supreme Court decisions and mandates.  The RI AG is not elected to further illegal schemes by and the interests of state government actors who coordinate attempts to thwart constitutional rights of pro se litigants wholesale, whether in judicial tribunals or administrative tribunals.  The fact that the RI AG shirks his constitutional duty to enforce all applicable laws in Rhode Island for which he was elected, and shirks his special duty to the pro se Plaintiff, me, in Texas, and instead opts to involve in the State Defendants' subornation of perjury and their collective coordinated attempts with state judiciary actors to thwart the pro se litigants' constitutional rights, are documentary-supported facts and issues raised and preserved throughout the record in this action and in ***Seguin v. RI Office of Child Support Services***, Civil Action No. 1:23-cv-0034-WES-PAS

27.)        On January 17, 2023, I filed the Complaint in ***Seguin v. RI Office of Child Support Services***, **Civil Action No. 1:23-cv-0034-WES-PAS** and

completed service of the summons on January 30, 2023. The very next day, on January 31, 2023 the State Defendants initiated the Family Court action *State of Rhode Island Ex rel. Gero Meyersiek vs. Seguin*, **K20010521M**, a "child-support related" proceeding that is mandated by Family Court to be remote, against me in Texas, purposely filing, by state policy and practice, court papers using an unnamed legacy Odyssey electronic filing system that fails to notice pro se litigants, such as me, pro se in Texas, in state court proceedings designed by RI Judiciary actors that discriminate against pro se litigants like me and deny my remote access to the contents of all court records, except for the docket sheet, showing among other unlawful discriminatory motives, First Amendment deprivation that is content-based, discriminatingly targeting pro se litigants.

28.)     At the time, I was misled by the Rhode Island Judiciary employees via email, by phone and on the State Judiciary website targeting self-represented litigants labeled, "Self-Help Center," and did not know that the State Defendants use a legacy Odyssey filing system in Family Court by policy and by design. Only when I protested that I cannot see any of the filings by the State Defendants and that even the Rhode Island Judiciary Virtual Clerk cannot see the contents of their filings at the June 8, 2023 Family Court hearing, did the State Defendant RI OCSS state on the record the reason being the agency uses a legacy electronic filing system, to which the Family Court showed disinterest.

29.)     Following this hearing, on June 10, 2023, I submitted an APRA request to the Rhode Island Judiciary for all records relating to the court rules, practices and regulations denying pro se litigants remote access to court records, including the reasons why. The State Judiciary responded on July 10, 2023 that the RI Judiciary does not possess any records other than a copy of the Rule itself, and that even if it did, those records are

attorney-client privileged.  The Rhode Island Judiciary APRA response shows the coordinated concealment by the Judiciary of a policy they know is illegal.  I ask, who is the client and who is the attorney in which lawsuit?  They anticipate being sued, by the Public, by the Press, by irreparably injured pro se litigants, like me.

30.)    I, exercising my First Amendment right of access, proceeding pro se in state court, have suffered, am suffering, and will suffer First Amendment irreparable injury.  First Amendment access to the courts does not predicate access on representation status, nor gender status, nor racial status, nor by religious affiliation, First Amendment court access rights do not condition representation status for access.   Nor does the First Amendment delineate distinctions between criminal or civil actions.  Coupled with the Judiciary Act of 1789 that provide statutory right of access to self-represented litigants, the intent of the Framers and Founding Fathers is clear, First Amendment rights apply to all, and if there is any doubt, Congress at the same time enacted statutory right of pro se access to show Congress's clear intent, obviously constitutional, under the First Amendment.  Equal Protection clauses do not condition protection based on legal presentation status.  I, proceeding pro se, have a constitutional right of equal access, irrespective of my representation status, in both courts of the United States, and pursuant to Article 1 of the Rhode Island State Constitution.  I, in good faith, seek to advance case law in this Court.  The State Judiciary's language that self-representation is not a constitutional right in civil cases, only in criminal, and that proceeding pro se is a choice on the Self-Help Center website, is designed to message the self-represented to mislead the self-represented that their rights proceeding pro se are not guaranteed by the constitution, as part of its overall scheme to disenfranchise the pro se

litigants from full participation in the judiciary tribunals at its first interface with the pro se public.

31.)      Like the RI Superior Court proceedings described in the Complaint in this matter, where I appear alone pro se, and over a dozen State Defendant lawyers appear to "observe" before the bar line, likewise in the remote state family court proceeding, State Defendants raised here repeatedly, ***State of Rhode Island ex rel. Gero Meyersiek v. Seguin, K20010521M*** I appear alone, pro se, without access to court records, without notice of filings of the State Defendants.  Meanwhile the opposing side, State Defendants, now use two lawyers, and Defendant GERO MEYERSIEK is represented by two of his own lawyers, Joana Achilles, Esq, his counsel here, and Barbara E. Grady, Esq., who is Meyersiek's lawyer whom State Defendants communicated directly, and never directly with Defendant GERO MEYERSIEK, for the duration of the interest waiver agreement the State Defendants brokered and negotiated as agent on behalf of Defendant GERO MEYERSIEK in 2011.  This line of State and private legal team for Defendant Meyersiek that includes the lawyers of the State, vs. a pro se litigant on the other side, is further addressed by the Turner Court, as requiring affirmative judicial due process safeguards to protect fairness, yet that cannot be achieved when the state's own judiciary-designed proceeding structure, by policy, disadvantages the pro se party.  Importantly, the Supreme Court Administrative Order of 2021 and the Family Court Administrative Order of 2021 do not grant any family judge the jurisdiction nor discretion to overhaul the electronic case management system, including the State Defendants' legacy e-filing and case management system, that would adequately meet the remote pro litigants in Texas's needs.  When I protested at the Family Court hearing of June 8, 2023, my protests were met with silence, by the family court and by the State Defendants.  I am

unable to appeal because I am denied access to the appeal transcripts and denied access to all the case records, including the court orders. I seek this federal court's issuance of restraining order and preliminary injunction - even minimal deprivation of First Amendment rights constitute irreparable injury. Here, this is wholesale obstruction by the State judiciary's policy to exclude pro se litigants out of the architecture of the electronic filing system that manages case records in 2014 during the state judiciary's transfer from the analog to electronic management, therefore of the entirety of my First Amendment rights to access the court.

Respectfully submitted,
Date: August 17, 2023

MARY SEGUIN

_Mary Seguin_

Mary Seguin

P.O. Box 22022
Houston, TX 77019
maryseguin22022@gmail.com