UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

**MARY SEGUIN**
*pro se*

*Plaintiff,*

VS.                                                              Civil Action No. 1:23-cv-00126

**RHODE ISLAND DEPARTMENT OF HUMAN SERVICES** in its official capacity; **MICHAEL D. COLEMAN, DEBORAH A. BARCLAY** in their individual and official capacities;
**RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES** in its official capacity; **LISA PINSONNEAULT, CARL BEAUREGARD**, in their individual and official capacities; **GERO MEYERSIEK**

*Defendants*

### PRO SE DIVERSITY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
### And
### PLAINTOFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

The Plaintiff, MARY SEGUIN, pro se, and citizen of the State of Texas, respectfully move this Court for a preliminary injunction and a temporary restraining order as set out below and for the reasons set out in the accompanying Memorandum in Support of Pro Se Diversity Plaintiffs' Motion for Preliminary Injunction. Fed. R. Civ. P. 65(a) and 65(b). The Pro Se Texas Plaintiff's self-represented status is a material fact in this case. In support of Plaintiff's Motion, the Plaintiff attaches in **Exhibit I**. her **Affidavit** in Support of her Rule 65 Motions. Plaintiff has also attached an affidavit and emailed the Court's Clerk an audio recording attached to her Affidavit that the Plaintiff respectfully submits in evidence. The recording records the State Defendant Office of Child Support Services in-house counsel stating the following, "what happened in this case is when Mary's representative, her attorney, called us in late November 2021 and said she wants her passport released, what does she have to do to release her passport, they put her in touch with Karla, who gave her the $104k number. Where that number came from was the department attorney contacted the custodial parent, Mr. MEYERSIEK. So, we contacted his attorney, it wasn't me, it was somebody else in my office, and

said, if she was willing to make a $104k payment to pay off the principle, would you be willing to waive the $75k or $73k in arrears. At that time, he said yes. So Karla notified Mary that if she paid the $104k, it would be paid in full because he was willing to waive the interest, that was just the principle. What happened was the day after Karla told Mary to wire the $104k the attorney for Mr. Meyersiek contacted us again and said he changed his mind. Please put the interest back on the system. So we did." This evidence was also submitted into the record by the pro se Plaintiff in the related **_Seguin v. Rhode Island Office of Child Support Services et al,_ Civil Action No. 1:23-cv-0034-WES-PAS**.

The Plaintiff does **NOT** waive her right to jury trial.

The Plaintiff already has, in prior pleadings, namely [ECF 12-2], stated she exercises and invokes her statutory right to appear pro se party in the above captioned civil matter in federal court by statute **28 U.S.C. sec. 1654**. The *pro se* Texas Plaintiff was hauled by the State Defendants, acting on behalf of their client, the Defendant, Gero Meyersiek, and acting as Meyersiek's agent, to the state court proceeding, **_State of Rhode Island Ex Rel. Gero Meyersiek v Seguin, K20010521M_** knowing there is no merit to their seeking <u>re-establishment</u> of child support interest arrearage, when the State Defendants themselves acting as agent for the Defendant Gero Meyersiek brokered an agreement with the pro se Plaintiff in Texas of interest waiver in consideration of a very large lump sum pay-off payment by the Plaintiff, which the Plaintiff in good faith accepted and executed. As shown in the attached Affidavit and attached documentary evidence, the state court proceedings by policy, practice and rule regulations deprive Plaintiff's First Amendment rights.

Fundamental to this case is Pro Se Texas Plaintiff's <u>self-represented status, that is a material fact in this case</u>. This case in part concerns the coordinated attempts within associated enterprises of named Defendants (and additional defendants that the Plaintiff intends to add, and accordingly has filed a timely motion for extension of time to amend complaint, [ECF 12]), with the aim to defraud and unlawfully change the determinative outcome, coordinated attempts to deny, obstruct (access to), impede, infringe, restrict, abrogate, the pro se Texas Plaintiff's fundamental First Amendment, Fifth Amendment, and Fourteenth Amendment equal

and meaningful access (1) to her Title IV-D records, (2) to tribunals, both administrative and judicial, and (3) to justice, via wire and via Mail, on an interstate basis.

Through the adoption nine years ago in 2014 of Rhode Island State Judiciary policies, practice, rules and administrative orders mandating electronic filing of all court filings through the State's electronic filing and case management system, Odyssey, while at the same time denying pro se litigants electronic access via the internet to the contents of court records, self-represented litigants (like the Texas pro se Plaintiff) have been targeted because of their exercise of the First Amendment and the Rhode Island Article I's constitutional right to all natural persons to access the courts, self-represented or with counsel.  This explicitly articulated policy to limit access denying by category pro se litigants only, that effectively denies equal access to the state courts and denies equal access to justice discriminating self-represented litigants, is further exacerbated by the state Family Court mandating time-sensitive child support matters to be heard remotely, which by extension requires remote access to the court, including remote access to court records, but which are not granted access to pro se litigants.  Meanwhile, an exclusive club of attorneys, state agencies and federal agencies are accorded by policy and practice by the State Judiciary, _instant_ remote access, _instant_ notice, and enjoy remote court record access to court records, instant notices, and instant access. Throughout the COVID-19 closures of State Judicial Buildings in which physical portals are installed with the advertised provision for pro se litigants and the public, this exclusive club of attorneys and government actors enjoyed remote access, instant notices and instant access from the safety of their homes.  But pro se litigants were continuously denied this basic health and safety safeguard, as well as denied access to their case records.   Pro se litigants are thus shut out of meaningful participation in fully developing the record, and shut out of access to justice, through articulated State Judiciary policy.  Within this illegal judicial procedural framework that was implemented in 2014 and made permanent in 2018 and shockingly maintained throughout the COVID-19 Pandemic and continuing to this day, even more shockingly, the State Defendants have engaged and continues to engage in a policy and routine practice of wholesale electronically filing in state court proceedings in state Family Courts in **Title IV-D** program proceedings that are related to time-sensitive child support matters using an

unnamed, **separate and different legacy Odyssey** electronic filing system, that results in pro se litigants not being noticed, as well as neither pro se litigants nor even the Rhode Island Virtual Court Clerk being able to view the contents of their pleadings, but only the electronic docket of the court case remotely, concretely showing prohibited government court record content infringement discriminating against pro se litigants.  So, while activity on a docket sheet can be discerned, Virtual Clerks cannot see what kind of activity it is, what kind of pleading it is, nor the content of that pleading.  Further, not even the content of court orders proposed and routinely electronically filed by State Defendants using this legacy electronic filing system can be seen by the Virtual Clerk.  However, the judge of the proceeding can see it, meaning the State Judiciary assured to integrate the structures of the legacy filing system with the current Odyssey electronic case management system architecture in such a way so that the judges can see the court filings of the State Defendants routine filings, implying the State Judiciary is fully cognizant of the legacy e-filing system the State Defendants use.   As if the above is not bad enough, the Family Court Judiciary adopted the Family Court Administrative Order in 2021 during the COVID-19 Pandemic mandating Title IV-D child support related matters to be heard remotely, thereby institutionalizing the remote nature of judicial tribunals in Title IV-D Program proceedings.  Yet, while institutionalizing the remote nature of such Title IV-D federally funded judicial tribunal proceedings, the State Judiciary continues to maintain the articulated policy of restrictive remote access to court records.  This coordinated targeting of self-represented litigants in the State's judicial tribunals discriminates against and infringes upon the pro se Texas Plaintiff's Federal Constitutional rights as a citizen of Texas, and wholesale denies her federal constitutional rights of speech, and equal access and meaningful access to the courts, equal access to justice, and due process rights. Compounding the First Amendment obstruction of this coordinated attempt targeting pro se litigants to alter the determinative outcomes, in the State Judiciary employees electronically and mail transmitted verbal and written misrepresentations, whether via email, over the phone, or published online on the Judiciary's official website explicitly labeled, "Self-Help Center" "Representing Yourself," nowhere is this material fact of access denial to pro litigants of court records disclosed to the pro se Texas Plaintiff – instead, for example, emails from employees of the State Judiciary affirmatively

misrepresent to the Plaintiff that a copy of the transcript is available to the parties online through the portal when the Plaintiff filed an Order for Transcripts, for example.  Only after taking the Plaintiff's payment and after Plaintiff's repeated subsequent inquiries as to how to access the transcript through the portal did the State Judiciary employees state they did not know how it works and to call the Help Desk.  Nobody answers the phone at the Help Desk when the Plaintiff calls, therefore the State Judiciary Self-Help Center Webpage misleads the public and pro se litigants that the Judiciary provides pro se litigants court administrative "accommodation" when in fact the State Judiciary's policy targets pro se litigants with wholesale First Amendment restrictions in proceedings that relate to time-sensitive matters.  The campaign of disinformation, misinformation, lack of information and that false claims that information is not in their possession and even if it is, is attorney-client privileged, is consistent with a State Judiciary that has explicitly articulated a policy that illegally contravenes requisite judicial <u>duty</u> to <u>assure</u> reasonable accommodation to pro se litigants, as mandated by the U.S. Supreme Court **_Turner v. Rogers, et al._**, **564 U.S. 431 (2011).**  In other words, the Plaintiff avers this is deliberate and by design, as Turner mandated ***additional pro se*** procedural accommodation, but the State Judiciary instead knowingly stripped away pro se litigants' fundamental procedural safeguards.  Therefore, to continue the charade of providing a "Self-Help Center" the State Judiciary necessarily misrepresents to the pro se Plaintiff that she has remote access, in order to conceal their constitutional deprivations and the sham nature of the proceedings.  For example,  when the Plaintiff submitted an Access to Public Records Act ("APRA") record request to the Rhode Island Judiciary requesting all documents relating to the Judiciary's Remote Access Policy relative to pro se litigants vis-à-vis the attorney and government agencies, as well as the reasons behind the adopted policy, the Plaintiff received a belated, untimely curt official written response that took 30 days to revert  via email that the State Judiciary does not possess any records and that even if it did, they are "attorney-client privileged." Just who is representing whom in what matter per that State Judiciary APRA response?  That's not stated either.  Therefore, the APRA record request response by the State Judiciary shows a coordinated attempt to conceal this unconstitutionally access obstructive tribunal structure.  The Texas pro se Plaintiff to this day continues and will continue to discover

and verify concealed facts about the above-described architecture, by exercising the federal and state access to public records statutory rights. This State Defendants and State Judiciary coordinated concealment necessarily results in delaying the Plaintiff's access to and investigation into verified facts to comply by the letter with the Federal Rules of Civil Procedures here, with each verified record obtained shocks the Plaintiff further. The pro se Texas Plaintiff is further over 2,500 miles away from Rhode Island. Therefore, based on these exceptional and specific circumstances of hardship up against coordinated attempts to close the ranks by powerful and resourceful State actors, the pro se Texas Plaintiff respectfully requests the Court to consider the above circumstances of this case, and specifically invokes the due process judicial duty in ***Turner v. Rogers, et al.***, **564 U.S. 431 (2011)** that above all emphasizes the Court's duty to arrive at the merits of the controversy before it. The pro se Plaintiff further invokes and relies on applicable safeguards enumerated in the First Amendment, the Fifth Amendment and the Fourteenth Amendment, and seeks protective safeguards from this Court to protect the pro se diversity Texas Plaintiff against the State actors in this Court.

Into the afore-described wholesale (e.g., denial of access to court records, denial of full participation in developing the court record, denial of access to court orders, denial of access to court transcripts that the Plaintiff ordered and paid for, denial by the RI Superior Court State Judiciary to transfer file to the Supreme Court for appeal, denial of equal and timely notice in time-sensitive matters, etc.) First Amendment deprivation State tribunal, the State Defendants hauled the pro se Texas Plaintiff for remote proceedings, ***State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin, K2001M0521M***, with the remote nature mandated by administrative order, in which she is, by policy and in practice, blinded, not noticed, for alleged "child support proceedings" for interest arrearage, when the State Defendants themselves acting as agent for the Defendant Gero Meyersiek brokered an agreement with the pro se Plaintiff in Texas of interest waiver in consideration of a very large lump sum pay-off payment by the Plaintiff, which the Plaintiff in good faith accepted and executed. Similarly to State Defendants' deprivation of Plaintiff's First Amendment access to her own child support records in the Title IV-D RI EOHHS administrative tribunal in 2022, the State Defendants denied her First

Amendment statutory access to her case file under APRA in 2022, then RI State Superior Court denied her First Amendment remote access to the state court in 2023 all the while disseminating false information about remote access to court records, then the RI State Judiciary denied her First Amendment remote access to the court records, then State Defendants hauled her into the RI Family Court on a meritless claim that can only be obtained through coordinated attempts to alter the determinative outcome through coordinated deprivation of First Amendment right to access court records which they file into a separate filing system that nobody can see but themselves, RI lawyers and the Family Court Judge, then the RI State Superior Court Clerks denied her First Amendment access to the RI Supreme Court by not transferring the case, then the State Judiciary denies her First Amendment APRA access to State Judiciary public records on their pro se remote access policy, and this list is not exhaustive.

It is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury." **Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)** (plurality)); *see also* ***Elrod*, 427 U.S. at 373.; *N.Y. Times v. United States*, 403 U.S. 713, 715 (1971).** Accordingly, Plaintiff has a strong likelihood of success on the merits, will suffer irreparable injury without an injunction, and an injunction will not substantially injure others while furthering the public interest, especially similarly situated and deprived pro se litigants, that the **<u>Turner v. Rogers, et al.</u>, 564 U.S. 431 (2011)** Court mandates all courts across the country a due process affirmative duty to protect. Plaintiff seeks preliminary injunction enjoining and temporary restraining order restraining the Defendants from hauling her these illegal proceedings with the coordinated attempts and aim of depriving her property without due process in unlawful coordinated attempts that include e-filing using a legacy electronic filing system that fails to give notice in the unconstitutional state courts purposely designed to target self-represented litigants from any access to the contents of court records remotely, except the docket sheet, in Title IV-D proceedings on child support matters that are mandated by state Family Court to be heard remotely. This Court should, therefore, grant Plaintiff's request for a temporary restraining order and a preliminary injunction**.**

A note on the extraordinary set of circumstances and Plaintiff's undue hardship is also due here: In accordance with the Federal Rules of Civil Procedure 15, the Plaintiff additionally could not amend her Complaint until after the Defendants were served, which this matter's record shows similarly took extraordinary delay beyond the Plaintiff's control.

Much of the aforesaid verified facts could not be obtained until recently after Plaintiff's labored investigation that constitutes severe hardship on the Plaintiff – such as verified material fact just a week ago on August 7, 2023, of the institutionalization of remote hearings in child support matters by the State Judiciary's Administrative Order in 2021 that should have been produced under Plaintiff's June APRA request to the State Judiciary, but was fraudulently withheld - as a direct result of the State Defendants and the State Judiciary's coordinated attempts to conceal the true nature of restrictions by State policy on pro se Plaintiff's First Amendment access to court records developed in remote hearings by administrative court order for child support matters under Title IV-D.

Plaintiff timely filed a Rule 15 and Rule 6 Motion for Extension of Time to Amend Complaint, [ECF 12] in which the Plaintiff raised on the record verified facts to show good cause to respectfully request the time extension.

State Defendants have repeatedly raised **_State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin, K2001M0521M_** here and in the related case, **_Seguin v. Rhode Island Office of Child Support Services et al,_** **Civil Action No. 1:23-cv-0034-WES-PAS**, as basis for their requests for substantial extensions of time and to dismiss the Plaintiff's federal claims. The Court has therefore repeatedly considered **_State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin, K2001M0521M_**, and granted the State Defendants show cause extension of time relief. The Plaintiff attached herein her **Affidavit** in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunctive Relief.

Rhode Island State Defendants and their counsel, the Rhode Island State Attorney General, asserted and characterized **_State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin, K2001M0521M_** as a "child support matter." *See* [**ECF 10**]. Child support matters must comport with Title IV-D due process requirements. The Plaintiff hereby invokes **_Turner v._**

***Rogers, et al.*, 564 U.S. 431 (2011), its syllabus and the amicus brief the United States Department of Justice and the U.S. Department of Health and Human Services filed.  As the State Defendants' Counsel at the time of the Turner Court in 2011 was Assistant U.S. Attorney General Nehroha, who is now State Defendants' counsel,** State Defendants' counsel knows and should have known the implications of __Turner__.  __Turner__ applies to all state proceedings, not just those relating to child support and Title IV-D Programs.

    I.    **Constitutional Requirements of State Participation in Title IV-D Programs**

The Plaintiff respectfully requests judicial notice that this case concerns the First Amendment, Fifth Amendment and Fourteenth Amendment Equal Protection and due process protections that apply in not solely child support state enforcement programs and "child support" related proceedings – but indeed <u>in all state proceedings</u>.  Failure, however, in the State's adherence to the constitutional requirements explicitly spelled out in "child support related" matters is distinguishable in that the State further loses eligibility to participate in related federal funding and federally funded programs.   The state child-support enforcement program at issue in the case, like that in every other State, is part of one of the largest cooperative federal-state programs, established under the Social Services Amendments of 1974 (1975 Act), Pub. L. No. 93-647, § 101(a), 88 Stat. 2351 (42 U.S.C. 651 et seq.) (adding Title IV-D to the Social Security Act). The program, which is administered by the Secretary of Health and Human Services (Secretary), provides that States with approved plans for child and spousal support that meet federal requirements are reimbursed by the federal government for a significant ___66%___ **of the costs of operating their child-support enforcement programs**. **42 U.S.C. (1) 2 655(a)(2)(C).**  In 1975, Congress adopted Title IV-D, 42 U.S.C. 651 et seq., and established the general statutory framework that exists today. *See* 1975 Act § 101(a), 88 Stat. 2351; **__Blessing v. Freestone,__ 520 U.S. 329, 333-335 (1997)** (describing program).  Congress ultimately set the federal share of reimbursable expenditures at ___66%___, 42 U.S.C. 655(a)(2), but expanded the availability of matching funds at the whopping ___90%___ level for (optional) State expenditures for ***automating data processing systems*** to improve "___the monitoring of support payments, the maintenance of accurate records regarding the payment of support___, and the prompt provision of notice to appropriate officials with respect to any arrearages in support payments which may

occur." 1984 Amendments § 6, 98 Stat. 1314; 42 U.S.C. 654(16); 655(a)(3)(A). Congress amended Title IV-D again in 1988 to improve the rate of child-support collection. Family Support Act of 1988 (1988 Act), Pub. L. No. 100-485, 5 102 Stat. 2343. Because effective child-support enforcement "had long been thwarted by localized enforcement systems that were unable to quickly and effectively track delinquent parents who crossed county and state lines," *Hodges v. Shalala,* **121 F. Supp. 2d 854, 874 (D.S.C. 2000), aff'd, 311 F.3d 316 (4th Cir. 2002)**, cert. denied, 540 U.S. 811 (2003), Congress in the 1988 Act emphasized centralized, automated record-keeping and information retrieval in order to improve collection rates. In particular, Congress **mandated "automated data processing and information retrieval system[s]"** that had previously been optional. 1988 Act § 123(a)(C), 102 Stat. 2352; 42 U.S.C. 654(24). The Title IV-D regulations were amended after adoption of the 1988 Act. As amended, the regulations omitted specific references to contempt proceedings as required means for enforcing child-support obligations. *See* 45 C.F.R. 303.6, 303.20(c)(7) (1989);2 cf. pp. 3-4, supra. Finally, Congress made further changes to the child-support enforcement system in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (1996 Act), Pub. L. No. 104-193, 110 Stat. 2105, which, among other things, again emphasized a centralized, automated approach to child-support. The amended statute established detailed requirements for the "statewide automated data processing and information retrieval systems" made mandatory in 1988. Id. § 344(a)(2), 110 Stat. 2235, 42 U.S.C. 654a(a). Among other things, the system must include a state case registry that includes every child-support case in the State, including the amount of monthly support owed and collected in all cases administered by the state agency. 42 U.S.C. 654a(e)(1) and (4); see 42 U.S.C. 654a(e)(5) (States must "promptly * * * update" case records when circumstances change). The States are required to use their centralized databases "to the maximum extent feasible, to assist and facilitate the collection and disbursement of support payments," including by establishing wage-withholding orders and sending wage-withholding notices to employers. 42 U.S.C. 654a(g)(1); see 42 U.S.C. 666(c).

      Therefore, it is abundantly clear that the Plaintiff has a First Amendment right of access to the Program-mandated automated information with the specific requirement to be accurate, that the State Defendants had installed, **90%** reimbursed by federal funding. The verified facts

in this case where State Defendants maintained at least 7 books of accounts for Plaintiff's child support arrearage, clear show State Defendants failed to achieve this Program mandate, and coordinated attempts with the aim to deny Plaintiff's First Amendment right and statutory right of access to all her case records that show failure to comply with a legally accepted and accurate accounting.

Critically relevant to this case is that Congress and the Secretary have demonstrated their concern that child-support-related proceedings be conducted fairly by repeatedly making *compliance with procedural due process* rules <u>a requirement</u> of State participation in the program.  *See*, e.g., **42 U.S.C. 666(a)(3)(A)** (reduction of non-custodial parents' state income tax refunds to pay overdue support permitted only "after full compliance with all procedural due process requirements of the State"); **42 U.S.C. 666(a)(7)(B)(i)** (States must report child-support delinquency to credit bureaus "only after [the] parent has been afforded all due process required under State law, including notice and a reasonable opportunity to contest the accuracy of such information."); **42 U.S.C. 666(a)(8)(B)(iv)** (income withholding "must be carried out in full compliance with all procedural due process requirements of the State"); **42 U.S.C. 666(c)(1)(H)** (expedited State agency procedures "shall be subject to due process safeguards, including (as appropriate) requirements for notice, opportunity to contest the action, and opportunity for an appeal on the record to an independent administrative or judicial tribunal"); *see* also **45 C.F.R. 302.70(a)(5)(iii), 303.5(g)(2)(iii), 303.100(a)(6) & (f)(4), 303.101(c)(2), 303.102(c)(1), 303.104(b).**

> II.   <u>Wholesale Constitutional Violations of Constitutional Protections Guaranteed by the First Amendment, Fifth Amendment and Fourteenth Amendment By the State Defendants, Including in Rhode Island State Court Proceedings Governed By State Judiciary's Adoption of Rules and Regulations Violative of the First Amendment, Fifth Amendment and the Fourteenth Amendment that specifically target, by category all nonlawyers, e.g., Pro-Se Litigants, the Public, Parties to Litigation who Are Represented by Counsel</u>

<u>A. Violative Through Unconstitutional State Court Proceedings</u>

Plainly and simply, the State Defendants did and continue to deny the pro se Plaintiff's First Amendment right to access her own child support case file in her appeal against the State's liens on her Texas property for child support interest that were waived by Defendant GERO MEYERSIEK under the Title IV-D Program, that is maintained by the State Defendants. State Defendants did and continue to deny the pro se Plaintiff's First Amendment Right of access to her own case file, as well as Fifth Amendment right of due process under the Title IV-D Program, and Fourteenth Amendment right to Equal Protection and to due process under the Title IV-D Program throughout the Plaintiff-initiated Rhode Island Executive Office of Health and Human Services ("RI EOHHS") agency appeal proceeding throughout the year 2022. Upon being told by the agency appeals officer that the State Defendants will need to produce the Title IV-D mandated case files to the Texas pro se Plaintiff, the State Defendants voluntarily withdrew from the RI EOHHS proceeding. The State Defendants have neither governmental right nor governmental interest, and lack sufficient legal basis to bring the state action (lien) against the Texas pro se Plaintiff in the first place, after brokering the waiver of child support interest themselves, in consideration of the Plaintiff paying off the principle in one lump sump, which the Plaintiff executed on agreement. After being served with the Texas pro-se Plaintiff-initiated federal case ***Seguin v. RI Office of Child Support Services et al***, CA. No. 1:23-cv-00034-WES-PAS, the State Defendants immediately, the day after federal action service, initiated the family court proceeding ***State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin***, K20010521M. State Defendants opted to initiate the state court proceeding over continuing through the Plaintiff-initiated RI EOHHS agency appeal for the same illegal purpose and scheme of concealment and deceit shown throughout the RI EOHHS appeal that are violative of Texas Plaintiff's First Amendment, Fourth Amendment, Fifth Amendment and Fourteenth Amendment protections: Rhode Island state court proceeding rules, regulations, practices and procedures explicitly violate, as employed and continue to be employed by the state superior court and the family court (as well as the State Supreme Court), the pro se Texas petitioner's First Amendment, Fifth Amendment and Fourteenth Amendment fundamental Equal Protection and due process rights. The Rhode Island Judiciary Rules, procedures, practices, policy, operations and objectives are designed to deny pro se litigants their First Amendment right to

meaningful access to the court and right to justice, deny pro se litigants due process rights to a full and fair hearing, and deny pro se litigants equal access to the courts and equal access to justice.  To help conceal and cover up this very heinous fact targeting and disadvantaging already-disadvantaged pro se litigants, the Rhode Island Courts further deny the public and the press remote access to public court records.  Because pro-se litigants constitute 60% to 100% of litigants in court cases across the country, and because the courts are created for the people, Rhode Island Judiciary's policies essentially weaponize the court and justice system against the people or the public in a democracy, through obstruction of official democratic proceedings in the judiciary branch of government.  Additionally, the Rhode Island Judiciary, by and through e-mail representations by its employees and its website, as a matter of state policy, systemically mislead pro se litigants to misinform pro se litigants, like the Texas pro se litigant, about their fundamental right of access to the courts, e.g., lying to Plaintiff that she can access the court transcripts from the portal in Texas, in a scheme to deny pro se litigants' First Amendment rights of access to the courts.  This constitutes a wholesale scheme of wire fraud over the internet and via email, with the intended purpose of obstructing Title IV program-mandated state proceedings requiring compliance with the Constitution and due process.

**B. Eight Rhode Island Judiciary Rules, Practices, Regulations and Policies that deny pro se litigants (the majority of litigants in state courts) equal access to the courts and due process**

1. Rhode Island Court Order of 2014 mandating implementation of e-filing (See Exhibit A)

2. Rhode Island Court Order of 2014 mandating e-filing (See Exhibit A)

3. Rhode Island Rules denying access of court records to pro se litigants and the public (See Exhibit B)

4. Family Court Court Order of 2021 mandating Title IV-D program proceedings to be conducted remotely online via WebEx, including all Child Support matters. (See Exhibit C)

5. Rhode Island Judiciary Self-Help Center website publishes disinformation that misrepresents litigants do not have a constitutional right to appear pro se (See Exhibit D). Article I of the Rhode Island constitution provides every person has right of access, and does not say the status of representation as a criteria to access.

6. Emails by Rhode Island Judiciary employees communicating misinformation to pro se litigants about right of access to state courts. (All gmails, including APRA gmails – Exhibit E) "Judge Cruise says there won't be any more WebEx hearings." "Judge Cruise says the case is dismissed so will not hear Rule 11 motions." "You can access the transcripts from the portal." "We are not in possession of documents and even if we did, they are attorney-client privileged."

7. Policy, Practice and Operation by Title IV Programs initiating state proceedings in Family Court in time-sensitive child support matters and other Title IV-D matters e-filing through a separate legacy electronic filings system that is **separate and different** from the electronic filing system implemented by the State, Odyssey, which results in neither pro se litigants nor Rhode Island Virtual Clerks being able to see the contents of the court filing: upon information, only the state agency is able to see the content of their own e-filings electronically and remotely. (See Exhibit F - affidavit)

8. Counsel for Defendant Gero Meyersiek, an Officer of the Court of the State of Rhode Island, filed Rule 11 pleadings in the State Family Court with the certification notice that deceives the pro-se litigant in Texas (and the public) creating a false court record that a copy thereof is available through downloading from the state e-filing system to the pro se Texas litigant, with the full knowledge that it is not. (See Exhibit G - Joanna Achille's Entry of Appearance). This knowingly false notice concerning First Amendment court access and Fourteenth Amendment due process was additionally sent via U.S. Mail from Rhode Island to Texas, constituting mail fraud. In the family court proceeding, Defendant GERO MEYERSIEK is represented by (1) Joanna Achilles, Esq., his counsel of record here, (2) Barbara E. Grady, Esq., family court lawyer who negotiated the interest waiver agreement on behalf of Gero Meyersiek, and the named State Defendants here and the named State Defendants that amass

considerable government power and resources in the related ***Seguin v. RI Office of Child Support Services et al, CA. No. 1:23-cv-00034-WES-PAS,*** whereas pro se Texas Plaintiff is alone appearing pro se, constituting the type of mismatch (of greater proportions) that the ***Turner*** Court specifically held warrants enhanced safeguards, yet the pro se Plaintiff is actually inversely stripped of all her court access First Amendment rights, by articulated State Judiciary policy and by design.

It is abundantly clear to the pro se Plaintiff, as it should be to the Court, that the afore-described coordinated attempts to alter the determinative outcome in that unconstitutional gladiatorial state proceeding spills over to this United States Court: repeatedly, State Defendants and counsels raise ***State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin, K20010521M*** here, and in the related ***Seguin v. RI Office of Child Support Services et al, CA. No. 1:23-cv-00034-WES-PAS*** as good cause showing to extend State Defendants' time to respond to the Complaints; ***State of Rhode Island Ex Rel. Gero Meyersiek v. Seguin, K20010521M*** is a state proceeding prohibited by the Court in ***Turner v. Rogers, et al.*, 564 U.S. 431 (2011)** that Defendants coordinate to alter the determinative outcome in a wholesale procedurally unconstitutional "noncontest" that fails to notice, blinds the pro se litigant by policy and denies the pro se litigant full and equal participation to fully develop the record required under ***Turner v. Rogers, et al.*, 564 U.S. 431 (2011)** so that the State Defendants can bring these "unsigned orders" generated by State Defendants' legacy Odyssey filing system (that the system does not notice the Plaintiff in time-sensitive matters, and then never get to see the content of court orders) and waive the "Res Judicata flag."  Plaintiff asks the Court, can this by allowed to happen in the United States of America?  It is outright scandalous.  **It damages public confidence in the courts and damages the integrity of the courts.**

**FIRST AMENDMENT IRREPARABLE INJURY**

"It is well-settled that even minimal loss of First Amendment freedoms, "unquestionably constitutes irreparable injury." ***Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)** (plurality)); *see also **Elrod*, 427 U.S. at 373; **N.Y. Times v. United States*, 403 U.S. 713, 715 (1971)** (Black, J., concurring). Accordingly, Plaintiff has a strong likelihood of success

on the merits, will suffer irreparable injury without an injunction, and an injunction will not substantially injure others while furthering the public interest. This Court should, therefore, grant Plaintiff's request for a preliminary injunction and grant Plaintiff's request for a temporary restraining order.

**FIFTH AND FOURTEENTH AMENDMENTS**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." ***Mathews v. Eldridge***, **424 U.S. 319, 332 (1976).**

**WHEREFORE**, the Texas pro-se Plaintiff respectfully requests the Court grant her Motion and issue a preliminary injunction and temporary restraining order.  The Plaintiff requests issuance of a preliminary injunction and temporary restraining order that enjoins and restrains the Defendants from continuing prosecution of the family court proceeding against the Plaintiff, from hauling the Texas pro se Plaintiff to unconstitutional proceedings in the state courts relating to child support matters pursuant to Title IV-D programs that deprive her of her property in violation of the First Amendment, the Fifth Amendment due process and the Fourteenth Amendment equal protection and due process guarantees, which is specifically violative of the constitutional mandates in ***Turner v. Rogers, et al.***, **564 U.S. 431 (2011)**. The pro se Texas Plaintiff further requests any and all relief that is just in the circumstances.  The Plaintiff's requested relief includes referral of the matters reported and placed on the record as they relate to the State's unconstitutional noncompliance with **Title IV-D**, including the coordinated attempts to thwart the Plaintiff's enumerated constitutional rights, to the appropriate Federal law enforcement authorities, such as the U.S. Departments of Justice agencies that filed briefs in support of holding judicial tribunals to its due process duty in the ***Turner*** Court.

Respectfully submitted,
August 17, 2023

                                  FOR PLAINTIFF
                                  MARY SEGUIN, Pro Se.

By: _____*Mary Seguin*_____
Mary Seguin
P.O. Box 22022
Houston, TX 77019
maryseguin22022@gmail.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 17, 2023, I filed the within Motion via the ECF filing system and that a copy is available for viewing and downloading to the public and to the parties, represented and pro-se alike.

_____*Mary Seguin*_____