UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.                                          Civil Action No. 1:23-cv-126-WES-PAS


RHODE ISLAND DEPARTMENT OF HUMAN SERVICES in its official capacity; MICHAEL D. COLEMAN, DEBORAH A. BARCLAY in their individual and official capacities; RHODE ISLAND OFFICE OF CHILD SUPPORT SERVICES in its official capacity; KEVIN TIGHE, MONIQUE BONIN, FRANK DIBIASE, WENDY FOBERT, KARLA CABALLEROS, TIMOTHY FLYNN, LISA PINSONNEAULT, CARL BEAUREGARD, PRISCILLA GLUCKSMAN, JOHN LANGLOIS, PAUL GOULD, in their individual and official capacities; RHODE ISLAND STATE COURT SYSTEM in its official capacity; PAUL A. SUTTELL in his individual and official capacity as EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM; RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS in its official capacity; RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT in its official capacity; RHODE ISLAND JUDICIAL COUNCIL in its official capacity; RHODE ISLAND SUPERIOR COURT in its official capacity; RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL in its official capacity; THE JUDICIAL TECHNOLOGY CENTER in its official capacity; JULIE HAMIL, MARISA BROWN, JOHN JOSEPH BAXTER, JR., JUSTIN CORREA in their individual and official capacities; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL in its official capacity; RHODE ISLAND OFFICE OF THE ATTORNEY GENERAL OPEN GOVERNMENT UNIT in its official capacity; ADAM D. ROACH, PETER NERONHA in their official and individual capacities; TYLER TECHNOLOGIES, INC.; GERO MEYERSIEK

*Defendants*


**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

### I.    Introduction and Summary

In tortious and predatory violation of 42 U.S.C. § 654,  42 U.S.C. § 654 (21)(A) and 42 U.S.C. § 666 under the Social Security Act Title IV-D Program, (and accordingly in violation of the official policy of Rhode Island State Office of Child Support Services <u>not</u> to pursue 12% compounded interest in interstate child support cases, a policy adopted in order to hide the State's 12% compounded interest prohibited by the Title IV-D Program, and to make it look like

the State is in compliance with 42 U.S.C. § 654, 42 U.S.C. § 654 (21)(A) and 42 U.S.C. § 666 when it is not), the Defendants under color of state law sought and established interest on overdue child support in the amount of 12% compounding interest against the pro se, out-of-state Texas Plaintiff in 2013, that they knew is <u>unenforceable</u> in the State of Texas under, *inter alia*, 42 U.S.C. § 654 and 42 U.S.C. § 666, and Texas State regulations, in retaliation for Plaintiff having sued Defendant Pricilla Glucksman in federal court ten years ago in 2013.  In schemes of coordinated efforts to hide the Rhode Island Defendants' illegal and fraudulent collection of 12% compounded interest that included legally insufficient interstate seizures under 42 U.S.C. § 654 and 42 U.S.C. § 666 of Texas assets against the Texas pro se Plaintiff under the Title IV-D Program that the Defendants knew is <u>unenforceable</u> in Texas, the Defendants conspired to cover up evidence of their illegal scheme, that includes, *inter alia*, Defendants' illegal, unilateral and arbitrary removal of the accrued 12% compounded interest (estimated at around $73,000 in 2018 per statement from RI OCSS Defendant, John Langlois on October 5, 2022) from the automated child support record keeping system under color of state law, removal of which is prohibited by, *inter alia*, 42 U.S.C. § 666, from the period 2018 to 2021 during RI OCSS's  attempt to send to Texas under 42 U.S.C. § 666 support enforcement against the pro se Plaintiff in Texas, and then denying under color of state law the pro se Plaintiff access to her child support records so as to hide incriminating evidence of the Defendants' coordinated attempts to illegally charge and collect in Texas the unenforceable 12% compounded interest under color of state law in violation of 42 U.S.C. § 654 and 42 U.S.C. § 666.  42 U.S.C. § 654 and 42 U.S.C. § 666 permit the States *may* (and not *shall*) charge and collect 3% to 6% simple interest on overdue support.  State's color of state law violations of 42 U.S.C. § 654 and 42 U.S.C. § 666 results in, *inter alia*, the State's ineligibility to participate in the Title IV-D Program.  However, the establishment and

collection of 12% compound interest on overdue child support is routine in the State of Rhode Island, in violation of 42 U.S.C. § 654, 42 U.S.C. § 654 (21)(A) and 42 U.S.C. § 666. Constitutional equal protection and due process safeguards prevent States from imposing 3% to 6% simple interest on one category of the public, and 12% compound interest on another, and without meaningful notice.   Defendants' establishment and collection of 12% compounded interest is more than *quadruple* of the allowable imposed interest amount under 42 U.S.C. § 654, 42 U.S.C. § 654 (21)(A) and 42 U.S.C. § 666.  To cover up the hidden interest surcharge under color of state law at more than *quadruple* the rate allowable under 42 U.S.C. § 654, 42 U.S.C. § 654 (21)(A) and 42 U.S.C. § 666, *inter alia*, and to cover up the systemic establishment and enforcement of 12% compounded interest for overdue support and to conceal its discovery from the public and press, the Defendants deliberately fail to send notices to child support defendants adequately explaining that individuals have a right to challenge this illegal 12% compound interest charge or the many reasons why they may be able to do so.  This lack of meaningful notice violates the due process and equal protection safeguards enshrined in the Constitution and in 42 U.S.C. § 654 and 42 U.S.C. § 666.

To hide the illegality of the 12% compounded interest surcharge, Defendants, *inter alia*, deliberately failed to integrate the unnamed legacy electronic filings and case management system in use by the Office of Child Support Services during its $6 million state-wide court system implementation of the Odyssey electronic case management and e-file and serve systems in 2014, and to hide the substantive documentary details evidenced and contained in the court documents, Defendants adopted an unconstitutional policy, codifying and implementing rules and practices under Rule 5 of the *Rhode Island Judiciary Rules of Practice Governing Public*

*Access to Electronic Case Information* that <mark>Restricts Remote Court Information Access</mark> under

color of state law (that in part states:

**"RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION, Rule 5. Access to Case Information, (c) Remote Access to Case Information:**

**(1) Policy. To allow _limited_ Remote Access to the Database through the Public Portal.  Non-public case types shall not be remotely accessible except for certain case types to attorneys who have entered an appearance in a case.**

**(2) Content. (a) The Public, Self-represented Litigants and Parties. The Public, self-represented litigants, and parties shall have Remote Access to the register of actions or Docket but shall _not_ have Remote Access to other Electronic Case Information" – Plaintiff will submit document in Exhibit B)**

that restricts remote access via the Internet to public court case information, except the

court docket, to both the public and to self-represented litigants of their own case information

that would (through the case management system's find and search function) contain

electronically searchable evidence of this illegal practice of charging, enforcing and collecting

12% interest using legally insufficient asset seizures under color of state law, in violation of the

First Amendment, equal protection and due process rights.  An exclusive club of RI attorney and

government actors, on the other hand, enjoy unfettered remote access over the Internet to public

court case information.   In coordinated attempts to restrict access to court case information that

would expose, *inter alia*, their predatory, usurious and unconstitutional schemes, the Defendants'

failure to integrate Defendant RI Office of Child Support Services's ("RI OCSS) legacy system

into Odyssey for child support cases is calculated to result in, *inter alia*, the opposing party (1)

not being electronically noticed, in time-sensitive matters like child support enforcement,

through Tyler Technologies' Odyssey and Efile and Service, (2) not being able to view the

contents of the State Defendants' electronic filings through the Judiciary Portals, as well as (3)

the Judiciary's Rhode Island Virtual Clerk's inability to view the contents of RI OCSS's filings –

in other words, their filings are only visible to themselves and the Judge, in abject violation of equal protection, equal access and due process.   In so doing, the Defendants schemed to develop, under the guise of an open court system, in reality a closed kangaroo court system that predetermined outcomes which favors state and government actors, and disfavor pro se litigants, that *inter alia*, enables the continued routine illegal establishment and enforcement of 12% compounded interest on overdue support under the Title IV-D Program in state judicial tribunals, for the express purpose of revenue generation, improving the State's performance metrics and getting ineligible reimbursement of 66% to 90% of federal funds under the Title IV-D Program, that disproportionately impact those pro se litigants who can least afford 12% compounded interest.

In the meantime, the Defendants misled the press and the public touting and promising that electronic court records information will be more readily accessible *remotely* to all court users *on their portable mobile devices (Plaintiff will submit document in  **EXHIBIT C** – Providence Journal Article) after the $6 million implementation of Odyssey,* when in fact the Defendants placed illegal remote access restrictions only targeting public and pro se litigants (vis-a-vis an exclusive club of Rhode Island attorneys and government actors enjoy unhampered remote access from the get-go), in order to throw off pro se litigants and the public's realization of the Judiciary's actual restrictions on access to the courts applied only to pro se litigants and the public.  In essence, the Defendants took advantage of the State's electronic court case management system implementation as they spent $6 million transitioning from the analog paper court system to the digital court system to actually restrict court access to the public and pro se litigants, which they hid through misleading press releases and public misrepresentations in 2014 falsely promising that electronic court records information will be more readily accessible

*remotely* to <u>all</u> court users *on their portable mobile devices*.   In other words, the Defendants calculated to restrict access to public court documents in paper format (that have long been equally accessible to the public under the First Amendment and equally accessible to pro se litigants under Equal Protection and Due Process), via the technological upgrade of the paper court case management system to the electronic case management/e-file and serve implementation of Odyssey.

### <u>COVID-19 PANDEMIC Remote "eCourts" Expose the Illegal Hidden eCourt Restrictions, that inter alia, Hide Illegal Violations of 42 U.S.C. § 654 and 42 U.S.C. § 666</u>

With the courthouse closures in 2020 and therefore restricted access to physical court document access portals installed in the court houses resulting from government physical shut downs during the COVID-19 Pandemic, changes in circumstances necessitated the State to continue operations through actual wide-spread court technology adoptions that were delayed yet long advertised and promised in the 2014 Odyssey implementation – namely remote court access -  whereby after a long seven years post-implementation of Odyssey and EFile and Serve, the Defendants officially adopted remote proceedings/hearings via the internet in order to continue court hearings, BUT still <u>under the guise of equal remote access,</u> by <u>continuing</u> under color of state law to <u>deny</u> pro se litigants remote access to their court case information that whole-sale violate constitutional rights of pro se litigants, such as the pro se Texas Plaintiff.  As before, an exclusive club of attorneys and government actors enjoy remote access to Court case information via the internet.  In violation of due process notice requirement, this access denial is not duly noticed to pro se litigants nor to the public and, as required by the Constitution and, *inter alia*, 42 U.S.C. § 654 and 42 U.S.C. § 666.  Additionally, the Defendants go a step further as to lie to pro se litigants, such as the Texas pro se Plaintiff, that pro se litigants have remote access to the court

documents, including transcripts for appeal, when the Defendants know that is not true.  To crown it all, the Defendants <u>deny</u> the judicial branch possesses any public records relating to why the Judicial branch, judicial council, adopted remote case information access <u>restrictions</u> only on pro se litigants and the public (especially when hearings are conducted remotely) in response to the Plaintiff's public record request under the State's Access to Public Records Act ("APRA"), when it actually posts on its own website copies of ten years-worth of Annual Reports dating from 2012 to 2022 to the State's General Assembly containing contradictory official claims that it is transparent, and that *remote access will be available to court users*.   This *prima facie* coordinated cover up, fraudulent misrepresentation, and restricted access to case information calculated to hide, *inter alia*, the Defendants' tortious charge and collection of 12% interest on overdue support under 42 U.S.C. § 654 and 42 U.S.C. § 666, on an interstate basis, are at the crux of this action for money damages, including special and punitive damages.

This case, that sounds in tort stemming from Defendants' violation of civil rights, and conspiracy to defraud and deprive civil rights, seeks monetary damages against the Defendants **in excess of $1,000,000.00** for the tortious actions, inactions, conspiracy to defraud on an interstate basis (1) the unlawful collection of illegal 12% interest on child support due under the Social Security Act Title IV-D Program, *inter alia*, 42 U.S.C. § 654 and 42 U.S.C. § 666, and (2) to deprive rights, interference and obstruction of the exercise of constitutional rights, fraud, and cover-up that target self-represented litigants, like the pro se out-of-state Texas Plaintiff, in order to deprive pro se litigants' equal protection, access to Title IV-D case information, access to the courts, access to court case information, and due process rights, in coordinated attempts to rig and/or predetermine the outcome in violation of the First Amendment, Fifth Amendment and

Fourteenth Amendment, and inter alia, 42 U.S.C. § 654 and 42 U.S.C. § 666 under color of state law.

Such damages, *inter alia*, arise out of Defendants': Misrepresentation; Negligent Misrepresentation; Tort of Deceit; Bad Faith; Reckless Indifference to the Rights of Seguin; Abuse of process; Breach of Duty; Rhode Island Government Tort Liability Act pursuant to R.I.G.L. § 9-31-1; 42 U.S. Code § 1983 federal civil rights violation; Subornation of Perjury; Civil RICO.

Once the discovery process and First Amendment statutory right of access to government documents are complete, the Plaintiff will seek leave to amend her First Amended Complaint to add new factual allegations, add new defendants and/or new claims.

## II.     Nature Of the Action

1. This is a tort liability, Rhode Island Government Tort Liability Act under R.I.G.L. § 9-31-1, Civil RICO and 42 U.S. Code § 1983 federal civil rights case under the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment of the United States Constitution as applied to the States under the United States Constitution's Fourteenth Amendment for the Defendants' individual and collective  unlawful violations under color of state law of Plaintiff's constitutional right to equal protection and due process to a fair trial against the Defendants' scheme to hide (1) the unlawful failure to integrate legacy electronic court systems relating to the operation of Title IV-D Programs under, *inter alia*, 42 U.S.C. § 654 and 42 U.S.C. § 666, to Odyssey resulting in violation of Plaintiff's equal protection and due process to a fair trial under the aforesaid Program, (2) the restriction and denial of remote access to court case information, (3) perjury, (4) subornation of perjury and (5) conspiracy to commit perjury in the state tribunals of Rhode Island, for the purpose of (6) concealing

public government records, documents and evidence as they relate to (7) breach of contract, (8) false accounting arising from the illegal charge of 12% interest on overdue support under, *inter alia*, 42 U.S.C. § 654 and 42 U.S.C. § 666,  (9) illegal arbitrary removal of the unlawful 12% interest from the automated support record keeping system under 42 U.S.C. § 654 and 42 U.S.C. § 666 when Defendants sent it for enforcement in Texas for the purpose of hiding the illegal 12% interest,  (10) fraudulent misrepresentation, (11) false notices, (12) illegal scheme to unlawfully seize Plaintiff's Texas properties under the guise of collection of illegal 12% interest on overdue support, (13) scheme to conceal illegal property seizure, (14) scheme to deny Plaintiff's First Amendment and due process rights to her child support records in Plaintiff's initiated appeal under 42 U.S.C. § 654 and 42 U.S.C. § 666, (15) failure to notice in due process violation of 42 U.S.C. § 654 and 42 U.S.C. § 666, (16) scheme to defraud and deprive rights in retaliation of having been sued in 2013, (17) cover up, (18) scheme under RICO, (19) breach of duty, (20) breach of special duty, (21) acts of tort and tort liability by the Defendants against the Texas Plaintiff.  Moreover, the aforesaid public government records relate to the Defendants' seizures of Plaintiff's Texas properties for "interest" claim that was already waived by Meyersiek, per contract terms between the Plaintiff and Defendant RI OCSS and Defendant Meyersiek.

2. This is further a case of state tort claims for breach of specific duty to the Plaintiff.  The Defendants conspired to knowingly make false material declaration under oath or affirmation in open court of the Superior Court of Rhode Island in the pending litigation, ***Mary Seguin v. Rhode Island Department of Human Service et al., PC-2022-07215,*** (brought by Plaintiff under the Rhode Island Access to Public Records Act, R.I.G.L. sec. 38-2-1, *et seq*., ("APRA") filed on December 29, 2022), for the purpose of dismissing the APRA action

through perjury, subornation of perjury and conspiracy by the Defendants, for the purpose of

concealing the Plaintiff's case file from public view that she is seeking through APRA, that

contains evidence of the Defendants' illegal and predatory scheme to enforce unlawful 12%

compound interest on overdue support interstate in Texas under 42 U.S.C. § 654 and 42

U.S.C. § 666. Defendants in open court represented to the trier state tribunal that the Rhode

Island Attorney General, who, to date, never entered appearance in that proceeding, is the

attorney of record for the defendants there, Rhode Island Department of Human Service et

al., for the coordinated purpose of arguing in open court dismissal of that action under the

false claim of insufficiency of process (citing the Rhode Island Government Tort Liability

Act, R.I.G.L. sec. 9-28-1 et al) and lack of jurisdiction, for the purpose of obstructing

Plaintiff's access to public government records created for support record keeping 42 U.S.C.

§ 654 and 42 U.S.C. § 666, that contain evidence relating to tortious and unlawful activities

by the Defendants.

3. In so doing, the Defendants implicated the Attorney General, the Office of the Attorney

General and individual staff attorneys of the Office of the Attorney General. As such, the

Plaintiff hereby reserves the right to amend this Complaint, add defendants and/or new

claims as appropriate at the appropriate time. These issues are not waived and are expressly

reserved.

4. Defendants are liable to the Plaintiff in breach of special duty, moreover implicating the

Attorney General is in breach of special duty to the Plaintiff, conspired to assist in the cover

up of Defendant Rhode Island Department of Human Health's perjury under oath in open

court of the Superior Court of Rhode Island, failed to give meaningful notice to the pro se

Texas Plaintiff that she, as a self-represented litigant in the State's Superior Court, is by

policy and rules of practice of the State Judiciary since 2014, denied remote access to court information in her own case – including transcripts of proceedings - committed unlawful violations of Plaintiff's constitutional and state rights under color of state law in bad faith and with malicious purpose in reckless and knowing disregard of Plaintiff's rights.

5.  Additionally, this action brought under the Civil Rights Act of 1981, 42 U.S.C. §§ 1983 and 1988 and Rhode Island common law, and the Rhode Island Government Tort Liability Act in order to remedy Defendants' continuing actions relating to their illegal enforcement of the unconstitutional Rule 5(c) of **RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION, Rule 5** denying the pro se Plaintiff remote access via the Internet to her public court case records. Furthermore, this action seeks to remedy the Defendants' omitting giving notice to pro se litigants, such as the Plaintiff, of their right to access their case files remotely via the Internet, and their right to contest the validity of 12% compound interest on overdue support under 42 U.S.C. § 654 and 42 U.S.C. § 666.  Moreover, this action seeks to remedy the Defendants' continuing illegal partial integration of the legacy electronic file and serve and case management system in use by Defendant RI OCSS, and to remedy the Defendant RI OCSS's continuing due process violations, including this Court requiring full integration of the unnamed legacy system into Odyssey so as to comply with due process requirements under 42 U.S.C. § 654 and 42 U.S.C. § 666 and *Turner v. Rogers, 564 U.S. 431 (2011)*.

### III.    Jurisdiction and Venue

6.  Plaintiff is a citizen of the State of Texas and the amount in controversy exceeds $75,000.00. This Court has subject-matter jurisdiction pursuant to Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332).

7.  Plaintiff invokes the statutory right to appear pro se under 28 U.S.C. § 1654.

8.  Plaintiff also brings this action pursuant 42 U.S.C. § 1983 for violations of civil rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

9.  This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a) (civil rights); 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts.

10. Plaintiff invokes 42 U.S.C. § 1988.

11. Plaintiff invokes 42 U.S.C. § 654 and 42 U.S.C. § 666.

12. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391. All or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.  Further, Defendants' primary employment is in this district, and Defendants' independent and collective malicious and unlawful violations under color of state law of Plaintiff's common law rights and constitutional rights giving rise to the claims herein accrued within this district.

13. At all material times, Defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless and knowing disregard of Plaintiffs' rights.

14. These tort liability, state tort liability, conspiracy and constitutional law violations are "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (citing

*Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 515 (1911), *Moore v. Ogilvie*, 394 U. S. 814, 816 (1969), *Carroll v. Princess Anne*, 393 U. S. 175, 178-179 (1968), *United States v. W. T. Grant Co.*, 345 U. S. 629, 632-633 (1953)), *Turner v. Rogers, 564 U.S. 431 (2011)*.

15. Plaintiff invokes her equal protection and due process rights, and the due process safeguards under 42 U.S.C. § 654 and 42 U.S.C. § 666, and *Turner v. Rogers, 564 U.S. 431 (2011)*.

16. Plaintiff, invoking her common law and statutory right to appear pro se, hereby invokes her common law, Equal Protection right, Due Process right, First Amendment right, as well as public right to remote access of the court, and established corollary remote access to her case information records. With respect to the government's duty implementing the transition of analog paper court system to the digital electronic court system that conducts operations over the Internet, Plaintiff invokes ***Nixon v. Warner Commc'ns* , 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)**, ***Richmond Newspapers, Inc. v. Virginia*, 448  U.S. 555, 573, 580 n. 17, 596, 599 (1980).** Specifically, the Plaintiff further invokes ***In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002),** (the **First Circuit** has "long recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" ***Id. at 9;*** see also ***Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) (same).** In addition, "[t]he appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." ***FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).** There is a particular "societal interest" in public access to judicial records in cases involving challenges to state law on constitutional grounds. ***Nat'l Org. for Marriage v. McKee*, 2010 U.S. Dist. LEXIS 90749, \*19 (D. Me. Aug. 24, 2010).** The

public's right of access to judicial records is "vibrant" (***Siedle*, 147 F.3d at 10**) and "strong and sturdy" (***FTC*, 830 F.2d at 410**). "The citizens' right to know is not lightly to be deflected. We agree . . . that 'only the most compelling reasons can justify non-disclosure of judicial records.'" ***FTC*, 830 F.2d at 410**. ***Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986)** When considering whether a constitutional presumption of access applies to particular proceedings or records, courts apply the "logic and experience test," also called the "Press-Enterprise test." The test considers "whether the place and process have historically been open to the press and general public," and "whether public access plays a significant positive role in the functioning of the particular process in question." ***In re Globe Newspaper*, 920 F.2d 88, 98 (1st Cir. 1990)** The roots of public access to court proceedings and records lie in "democratic values of accountability and openness." ***N.Y.C.L.U. v. N.Y. City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012)** (citing ***Westmoreland v. Columbia Broad. Sys., Inc.,* 752 F.2d 16, 22 (2d Cir.1984)**;. ***Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253–54 (4th Cir.1988); I*n re Continental Ill. Secs. Litig*., 732 F.2d 1302, 1308 (7th Cir. 1984); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir.1984); *In re Iowa Freedom of Info. Council,* 724 F.2d 658, 661 (8th Cir.1983); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir.1983)**).

## IV.    Parties

17. Plaintiff Mary Seguin ("Seguin" or "Plaintiff") is an adult female citizen of Texas.

18. Defendant Rhode Island Department of Human Services ("RI DHS") is a political subdivision of the State of Rhode Island

19. Defendant Rhode Island Department of Human Services, Office of Child Support Services ("RI OCSS") is a political subdivision of the State of Rhode Island.

20. Defendant Gero Meyersiek is and has been at all material times a resident of Rhode Island.

21. Defendant Rhode Island State Court System ("RI STC") is a political subdivision of the State of Rhode Island.

22. Defendant RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS ("RI AOSC") is a political subdivision of the State of Rhode Island. Defendant Suttell is Executive Head of RI AOSC as the Executive Head of the RI STC.

23. Defendant RHODE ISLAND JUDICIAL COUNCIL is a political subdivision of the State of Rhode Island.

24. Defendant RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL is a political subdivision of the State of Rhode Island.

25. Defendant RHODE ISLAND SUPERIOR COURT is a political subdivision of the State of Rhode Island.

26. Defendant RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT ("RI AO Superior Court") is a political subdivision of the State of Rhode Island. Defendant Suttell is Executive Head of RI AO Superior Court as the Executive Head of the RI STC.

27. Defendant Judicial Technology Center ("JTC") is a political subdivision of the State of Rhode Island. Defendant Paul Suttell is Executive Head of Defendant JTC.

28. Defendant Rhode Island Office of the Attorney General ("RI AG") is a political subdivision of the State of Rhode Island.

29. Defendant Rhode Island Office of the Attorney General Open Government Unit ("RI AG Open Government Unit") is a political subdivision of the State of Rhode Island.

30. Defendant Tyler Technologies, Inc. (hereafter "Defendant Tyler Tech") is a corporation organized under the laws of the State of Delaware, with its principle place of business located at 5101 Tennyson Parkway, Plano, Texas 75024, has had substantial and continuous contact with Rhode Island.

31. Defendant MICHAEL D. COLEMAN is and has been at all material times the Deputy Chief Counsel of Rhode Island Department of Human Services ("RI DHS"). Michael D. Coleman is a State employee.

32. Defendant DEBORAH A. BARCLAY is and has been at all material times the Chief Legal Counsel of Rhode Island Department of Human Services ("RI DHS"). Barclay is a State employee.

33. Defendant LISA PINSONNEAULT is and has been at all material times the Legal Counsel of RI OCSS. Pinsonneault is a State employee.

34. Defendant CARL BEAUREGARD is and has been at all material times the Legal Counsel of RI OCSS. Beauregard is a State employee.

35. Defendant KEVIN TIGHE is and has been at all material times the Deputy Chief Counsel of Rhode Island Office of Child Support Services ("RI OCSS"). Tighe is a State employee.

36. Defendant MONIQUE BONIN is and has been at all material times the Finance Administrator of the RI OCSS. Bonin is a State employee.

37. Defendant FRANK DIBIASE is and has been at all material times the Associate Director of RI OCSS. DiBiase is a State employee.

38. Defendant WENDY FOBERT is and has been at all material times the Accountant of RI OCSS. Fobert is a State employee.

39. Defendant KARLA CABALLEROS is and has been at all times the Child Support Administrator of RI OCSS.  Caballeros is a State employee.

40. Defendant TIMOTHY FLYNN is and has been at all times the Child Support Administrator of RI OCSS.  Flynn is a State employee.

41. Defendant PRISCILLA GLUCKSMAN is and has been at all material times the Deputy Chief Counsel of RI OCSS.  Glucksman is a State employee.

42. Defendant JOHN LANGLOIS is and has been at all material times the Deputy Chief Counsel of RI OCSS.  Langlois is a State employee.

43. Defendant PAUL GOULD is and has been at all material times the Chief Counsel of RI OCSS.  Gould is a State employee.

44. Defendant PAUL A. SUTTELL is and has been at all material times the EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM.  Suttell is a State employee.

45. Defendant JULIE HAMIL is and has been at all material times the Chief Administrator and/or Director of the RI Administrative Office of the State Courts.  Hamil is a State employee.

46. Defendant MARISA BROWN is and has been at all material times the Chief Administrator and/or Director of the RI Administrative Office of the Superior Court.  Brown is a State employee.

47. Defendant JOHN BAXTER was at all material times the former Chief Administrator and/or Director of the Administrative Office of the State Courts.  Baxter was a State employee.

48. Defendant JUSTIN CORREA is and has been at all material times the Legal Counsel of the Rhode Island State Court System and the Administrative Office of the State Courts.  Correa is a State employee.

49. Defendant ADAM D. ROACH is and has been the Special Assistant Attorney General of the Open Government Unit of the RI Office of the Attorney General.  Roach is a State employee.

50. Defendant PETER NERONHA is and has been the Attorney General of Rhode Island. Neronha is a State employee.

51. The named Defendants implicated the Attorney General, the Office of the Attorney General and individual staff attorneys of the Office of the Attorney General.  As such, the Plaintiff hereby reserves the right to amend this Complaint as appropriate at the appropriate time. These issues are not waived and are expressly reserved for pleading, motion, briefing and action with expedition consistent with orderly procedure and as appropriate.  Reasonable time for this purpose is respectfully requested.

52. This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Rhode Island.  As a result, this Court has personal jurisdiction over Defendants on the grounds that the claims asserted against Defendants arise from their transaction off business within Rhode Island and on the grounds that it has committed tortious acts within Rhode Island.  Furthermore, Defendants' contacts and actions were directed toward Rhode Island and thus warrant the exercise of personal jurisdiction over them.

### V.    Factual Allegations

**A.  <u>Background – Illegal 12% Compound Interest and Due Process Violative Courts under Color of State Law</u>**

53. All transactions, acts and communications between the Texas Plaintiff and the RI State Defendants were conducted via wire or mail: telephone, email, bank wire transfer, electronic

official WebEx Hearing of the Courts of the State of Rhode Island by wire, wire or mail.  At all material times, the Plaintiff was a Texas pro se litigant.

54. The systemic violations of fundamental Constitutional rights of litigants, particularly pro se litigants, in state tribunals by state actors, with amplified emphasis on *state judicial actors*, under color of state law are found by the U.S. Supreme Court to be capable of repetition but evading review, as amply shown and proven in ***Turner v. Rogers, 564 U.S. 431 (2011)***.  The U.S. Department of Justice submitted its Amicus Brief to the *Turner* Court that, *inter alia*, detailed and amplified the monetary root cause of routine and systemic unlawful human rights violation behavior by state actors, with amplified emphasis on *state judicial actors*, as it relates to, *inter alia*, child support related matters: Title IV-D's Program's reimbursement to the eligible participating States significant 66% to 90% of the costs of operating their child-support enforcement programs. *E.g.*, 42 U.S.C. (1) 2 655(a)(2)(C).  Undisputedly, one of the emphases of the *Turner* Court is *judicial due process duty* as well as the extent to which it applies to self-represented litigants, held in 2011 *before* the wide-spread transition from the analog paper court system to the digital electronic court system among the state courts across the country.  Undisputedly, the judicial and government due process duty overseeing, managing, and operating the digital electronic court system that by policy, by rule, by practice and in operation violate due process have long been prohibited by the *Turner* Court.

55. The state child-support enforcement program at issue in this case and in the *Turner* case, like that in every other State, is part of one of the largest cooperative federal-state programs, established under the Social Services Amendments of 1974 (1975 Act), Pub. L. No. 93-647, § 101(a), 88 Stat. 2351 (42 U.S.C. 651 et seq.) (adding Title IV-D to the Social Security Act).

The program, which is administered by the Secretary of Health and Human Services (Secretary), provides that States with approved plans for child and spousal support that meet federal requirements are reimbursed by the federal government for a significant 66% of the costs of operating their child-support enforcement programs 42 U.S.C. (1) 2 655(a)(2)(C), and expanded the availability of matching funds at the whopping 90% level for State expenditures for automating data processing systems to improve "the monitoring of support payments, the maintenance of accurate records regarding the payment of support.

56. Rhode Island State employees employed in the establishment and collection of support are financially incentivized and rewarded to increase the number of cases prosecuted, increase revenue generated, and increase federal moneys reimbursed through the Title IV-D Program, through bonus schemes and job promotions based on the number of cases prosecuted and the amount of support collected.  Their performance and results are compiled in official annual reports by the agency and by the state court system, and constitute public records, under both the Freedom of Information Act and the Rhode Island Access to Public Records Act.

57. Federal law provides that States *may* establish and enforce 3% to 6% simple interest for overdue support under 42 U.S.C. § 654 and 42 U.S.C. § 666.  The Rhode Island Defendants, however, attach exponential *quadruple* of that permitted under 42 U.S.C. § 654 and 42 U.S.C. § 666, at the exorbitant and usurious *12% compounded* interest for overdue support established under 42 U.S.C. § 654 and 42 U.S.C. § 666, under color of state law.  To continue procuring the 66% to 90% Title IV-D Program reimbursement of the costs of operating child-support enforcement programs, Defendants engage in coordinated attempts to hide the unlawful and usurious 12% compounded interest through, *inter alia*, adoption of Defendant RI OCSS's articulated official policy of *not* pursuing interest in interstate child

support cases to hide the illegal 12% compounded interest routinely collected in-state 42 U.S.C. § 654 and 42 U.S.C. § 666, and through tortious obstruction to justice activities (such as deliberate failure to send notices to child support defendants adequately explaining that individuals have a right to challenge this illegal 12% compounded interest charge on overdue support under 42 U.S.C. § 654 and 42 U.S.C. § 666, or the many reasons why they may be able to do so. This lack of meaningful notice violates the due process and equal protection safeguards enshrined in the Constitution and in 42 U.S.C. § 654 and 42 U.S.C. § 666) that effectively render the State ineligible to participate in the Title IV-D Program.

58. Court orders prepared by and entered by the Defendants establishing support interest further omit stating the explicit 12% compound interest in a coordinated effort to hide the usurious 12% compound interest amount that is disallowed under 42 U.S.C. § 654 and 42 U.S.C. § 666. Upon information and belief, court orders merely state "orders interest" without spelling out the interest rate, as in Plaintiff's support case.

59. However, despite court order establishing support omitting the interest rate on support orders, Defendants routinely enter into the 42 U.S.C. § 654 and 42 U.S.C. § 666 automated child support record keeping system 12% compound interest that is disallowed. Defendants adopt, therefore, the official policy not to establish interest in interstate cases, that are unenforceable outside of Rhode Island, as well as to avoid sending to other States' 42 U.S.C. § 654 and 42 U.S.C. § 666 support enforcement authorities, in a scheme calculated to conceal the 12% compound interest from other States' authorities. State violations of 42 U.S.C. § 654 and 42 U.S.C. § 666 render the State ineligible to participate in the Title IV-D Program.

60. When the Plaintiff (who had physical custody of her children while living in Rhode Island) remarried and sought in 2010 to move her then two minor daughters to Texas, she

unsuspectingly walked into the midst of this enterprise.  Defendant GERO MEYERSIEK befriended Defendant Priscilla Glucksman, who, in her capacity as Deputy Chief Legal Counsel of Rhode Island Office of Child Support Services impermissibly acted as Meyersiek's agent and personal lawyer.  Taking on Defendant Meyersiek's case, that has long been contentious since 2001, improves Defendant Glucksman's government performance metric that improperly rewards high number of prosecutions, but not dependent on prosecuting meritorious cases.  Defendant Glucksman accompanied Defendant Gero Meyersiek's private family law lawyer, Barbara E. Grady, to every family court hearing on Defendant Meyersiek's case, forming a team of lawyers on behalf of Defendant Meyersiek, State and private conjoined, in a set of circumstances specifically addressed by the *Turner* Court.   As detailed in Plaintiff's decade long prior federal lawsuits filed pro se between 2012 to January 2013 against those named defendants, among which was Defendant Priscilla Glucksman, the Plaintiff outlined and documented the *prima facie* coordinated illegal deprivation under color of state law by those named defendants of Plaintiff's fundamental constitutional rights, including her First Amendment right to converse uncensored with her children in her own home regarding the family's travel to Texas with her children, her fundamental parental rights, the State's demand of a $55,000 fee for supervised visitation by the Guardian ad Litem appointed by the State Family Court because the Guardian claimed the Plaintiff married a "rich oil man in Texas," which were documented in the "Guardian ad Litem" ("GAL") report authored in 2010.  To recap the factual allegations in the context of providing background for this action, the Plaintiff reported in 2010 this *prima facie* extortionary ransom demanded under color of state law to the United States Department of Justice in Texas, and raised the fact in the State's Family Court.  The then Chief Judge of the

Family Court, Bedrosian, responded by issuing in Rhode Island an interstate domestic violence Temporary Restraining Order ("TRO"), under the federal Violence Against Women Act, that was enacted by Congress intended to protect women against domestic violence, against the eight-month *pregnant* Texas Plaintiff, who was located over 2,500 miles away in Texas, who was on bed-rest, that stated on the TRO order, hand-written, "Protect GAL Report," in a clear attempt to obstruct the Texas Plaintiff from passing the Defendants-incriminating GAL Report to federal law enforcement authorities in Texas.

61. The Texas Plaintiff's pro se federal lawsuits were dismissed in 2012 and spring 2013 via, *inter alia*, judicial doctrines of judicial immunity.

### B. Retaliatory Motives

62. Emboldened by the dismissals of Plaintiff's federal suits in February 2013, and to retaliate against the pro se Texas Plaintiff for suing her in federal court, discovery evidence in 2023 show Defendant Priscilla Glucksman went to the Family Court in May and September of 2013 to establish against the unrepresented/self-represented Texas Plaintiff, who was not present in family court and pro-se, 12% compounded interest on overdue support under 42 U.S.C. § 654 and 42 U.S.C. § 666, which Defendant Glucksman knew was violative of 42 U.S.C. § 654 and 42 U.S.C. § 666 - thereby rendering the State ineligible to participate in the Title IV-D Program – and was unenforceable and uncollectable in the State of Texas under 42 U.S.C. § 654 and 42 U.S.C. § 666, and which Defendant Glucksman also knew was against the aforesaid articulated official policy of Defendant RI Office of Child Support Services ("RI OCSS") that was adopted in order to hide the prohibited 12% compound interest under 42 U.S.C. § 654 and 42 U.S.C. § 666. On over 100 pages of discovery documents produced in 2023 by the Rhode Island Office of Child Support Services is the

Defendant state agency's policy prominently plastered across documents' headers: "**Remove Interest on Interstate Cases**" and "**It is desirable for the Rhode Island Office of Child Support Services to prohibit the charging of interest on interstate cases.**"

63. The retaliatory motive was similarly voiced by Defendant John Langlois, Deputy Chief Legal Counsel of Defendant RI OCSS in a recorded telephonic conference recorded by the Plaintiff on October 5, 2022.  When asked why the Defendant RI OCSS refused to comply with the requisite production of Plaintiff's child support case records mandated under 42 U.S.C. § 654 and 42 U.S.C. § 666 throughout the Plaintiff-initiated Rhode Island agency appeal of Defendant RI OCSS's unjustified and legally insufficient lien on her Texas property, Defendant John Langlois responded the reason, "She sued one of our lawyers in the agency!" A true copy of the audio recording evidence will be submitted as **Exhibit A**.

64. The retaliatory motive was similarly voiced by Defendant Michael D. Coleman, Deputy Chief Legal Counsel of Defendant RI Department of Human Services ("RI DHS") at the January 12, 2023 hearing in RI Superior Court on the Plaintiff's Rhode Island Access to Public Records Act ("APRA") action, "Her case should be dismissed, Judge ….. she sued Judge Suttell!"  Whereupon the Superior Court Judge David Cruise nodded in acquiescence and went on to dismiss Plaintiff's APRA action for lack of subject matter jurisdiction.

65. Suing Defendant Paul Suttell and Defendant Pricilla Glucksman in federal court is a protected exercise of the First Amendment fundamental right of access to the federal courts for redress and right to justice.  State actors' acts under color of state law to abridge, deprive, retaliate against the exercise of, chill the exercise of and obstruct First Amendment rights must be reviewed under strict scrutiny, legitimate government interest and the public's interest.

66. After suffering from the trauma caused by the State actors' coordinated actions harming her family, the Plaintiff was unable to travel and submitted doctors' notes excusing her from court attendance.  She soon lost legal representation in 2012 as she could no longer afford her family court counsel.   Therefore, the 2013 support and 12% compounded interest were established by Defendant Priscilla Glucksman while Plaintiff was unrepresented/pro se, could not physically attend family court, and is illegal and due process defective under 42 U.S.C. § 654 and 42 U.S.C. § 666, and under color of state law explicitly prohibited by the Supreme Court in *Turner v. Rogers, 564 U.S. 431 (2011)*.

67. Meanwhile, post-dismissal of the Plaintiff's federal cases, the Family Court case at issue, *Gero Meyersiek v. Mary Seguin, K20010521M*, was closed by Family Court itself within three months of the issuance of the illegal 12% compound interest on overdue support, the docket sheet saying on December 31, 2013.  The justices and administrators in family court whose limited jurisdiction is restricted to domestic relations issues, routinely review cases brought under 42 U.S.C. § 654 and 42 U.S.C. § 666 are familiar with the illegality of the establishment of 12% compounded interest on overdue support under 42 U.S.C. § 654 and 42 U.S.C. § 666, and are familiar with its unenforceability interstate in Texas, and the implication of fraud on the court, closed the case that it kept open and active from 2001 to 2013.  Closing the case adds an addition layer of gatekeeping on the case file containing documentary evidence of the *prima facie* legally insufficient domestic violence temporary restraining order issued by the family court chief justice directed at the Texas Plaintiff over 2,500 miles away in Texas, with the handwritten order, "Protect GAL Report" *prima facie* not seeking to protect a person from imminent physical harm, but to attempt to restrain the Plaintiff from passing on to federal law enforcement authorities the incriminating GAL report

containing evidence of the ransom extortionary demand of $55,000 payment in order to visit her children.

68. Defendant Priscilla Glucksman, Defendant RI Office of Child Support Services and Defendant Gero Meyersiek further knew that 12% compound interest on overdue support is not enforceable in the State of Texas under 42 U.S.C. § 654 and 42 U.S.C. § 666, and which was further procured in violation of due process safeguards and violative of *Turner v. Rogers, 564 U.S. 431 (2011),* therefore RI OCSS Defendants, acting as agents of Defendant Gero Meyersiek, made no attempts to send to Texas to collect overdue support for five years from 2013 to 2018.  As a result, the family court case at issue, ***Gero Meyersiek v. Mary Seguin, K20010521M***, remained closed for ten years from 2013 to 2023.

> ### C. Defendants' Scheme to Hide State Restrictions on Pro Se and Public Access to the Courts and to Hide State Violations of 42 U.S.C. § 654 and 42 U.S.C. § 666 and Due Process, Taking Advantage of the Courts' Migration from Paper to Electronic Odyssey Court Case Management and e-Filing and Serve System

69. For centuries, Rhode Island courts have relied upon paper files that were filling the State's courthouses to the brim.  In 2012, Defendant RI JTC on behalf of the Judiciary Defendants published a request for proposals for a new case management system to replace the antiquated existing system.  The new system will include all civil and criminal cases, and it will enable the courts to engage in electronic filing, electronic content management, a finance component, public and attorney portals, and an electronic payments system.  In 2013, the Rhode Island Judiciary signed an agreement with Defendant Tyler Technologies ("Tyler Tech") for its Odyssey integrated courts and justice solution, valued at approximately $6 million and includes software licenses, related professional services, maintenance and support.  The package further includes a wide range of integrated Odyssey applications,

including case management, financial management, public access, supervision and SessionWorks Judge Edition and Clerk Edition to aid in courtroom efficiency. Along with the aforementioned, the Judiciary will use Odyssey File & Serve, replacing the courts' manual filing processes, for simplified electronic filing ("e-filing"). The Odyssey solution selected will create an end-to-end electronic process – starting at the initiation of the case, via e-filing, and ending with an electronic case file used by judges on the bench.

70. It is long established that illegal provisions of a contract are unenforceable, null and void, therefore, Defendant Tyler Tech is at all times never under legal obligation to perform on contract terms that sound in tort or in violation of constitutional and common law safeguards firmly established in the centuries' long paper court system. Defendant Tyler Tech, specializing in the business of implementing its advertised "end-to-end" electronic court system for all court users, owes the duty to all court users to implement, maintain and provide user support and notice of an electronic court system product that is in compliance with constitutional and common law rights of access, and the established body of law addressing constitutional safeguards of litigants in court, e.g., *Turner v. Rogers, 564 U.S. 431 (2011)*. Here, the Plaintiff reiterates the body of due process and court access case laws invoked in this Complaint as fully alleged herein.

71. Failure, for example, to give proper notice to self-represented litigants that the advertised "end-to-end" Odyssey solution Defendant Tyler Tech implemented restricts self-litigants' remote internet access to view court orders issued by the judge in the case, is deliberately deceptive.

72. In April 2013, Rhode Island Supreme Court's Executive Director and member of the state's courts executive committee and vendor evaluation team, Peter Panciocco, publicized, under

authorization by Defendant Suttell, "We were looking for a vendor that had proven experience with statewide court case management implementations and e-filing; after a thorough competitive evaluation it was clear Tyler was our best choice.  Odyssey's large network of successful users will provide Rhode Island a valuable resource, and we plan to leverage their best practices and apply those lessons to our new business processes." Couched under the guise of a phased technology roll-out that will eventually enable equal public access to the court access technology, the State Defendants in 2014 widely disseminated misrepresentations calculated to throw off public focus on equal court access by making false promises that the Judiciary is testing out the system on court practitioners first.

73. In March 2014, the State Defendants launched its transition to online case-file system starting with the Workers Compensation Court.  The Providence Journal widely reported that lawyers can now access their case files via the Internet as the Rhode Island Judiciary takes its first steps towards going paperless.  Workers' Compensation Court's Chief Judge George E. Healy Jr., stated to the press, "So far, it's a success story.  If you can order a book on Amazon, you can do this.  The new system allows lawyers to carry their case loads via iPads and other electronic devices. I marveled last week at the ease with which I can navigate the new system, complete with touch-screen technology and the ability to type in private e-notes on a case through a Judge's Edition of the program. *The public eventually is expected to be able to call up court documents using an app on cellphones.*"  This false promise is repeated in the subsequent Judiciary Annual Reports submitted to the Rhode Island General Assembly.  Therefore, the Defendants' lies create a constitutional crisis in the State, harm its citizenry and damage the integrity of and public confidence in the Judiciary in the State.

74. The false promise that "*The public eventually is expected to be able to call up court documents using an app on cellphones.*" is a lie, because at the same time in 2014, the State Judiciary officially adopted rules and practices for the state courts explicitly denying the public and pro se litigants online or remote access to case files via the Internet. The court rules' remote access denial, in contrast, was not publicized.

75. Rhode Island lawyers, in contrast, can view case documents online. Upon information and belief, out-of-state lawyers are also excluded from remote access to public court case information. In other words, outsider counsel whose license to practice law is not under the control of and influence by the State Judiciary, could not be trusted to keep a lid on the schemes. This restriction is akin to a federal local rule in the paper court system that denies out-of-state lawyers access to public court records.

76. Adding insult to injury, State lawmakers approved legislation mapping out a fee structure that will allow lawyers to file their cases online. Under the legislation, lawyers or people representing themselves must pay a technology surcharge of up to $25, in addition yto the filing fee, when initiating a court case. Of that, $17.50 will be paid to Defendant Tyler Tech for managing the system, with $3.25 to be dedicated to state court technology services, according to Defendants spokesman Craig N. Berke, under authorization by Defendant Suttell. In other words, under the scheme self-represented litigants like the pro se Texas Plaintiff is forced to pay the Defendants for the court case management scheme that singles out pro se litigants, like the pro se Texas Plaintiff, by category and denies remote access to view case documents online via the Internet, while being charging for access, and being lied to that she enjoys equal access like the Rhode Island lawyers. The legislation took effect in 2014, continuing to this day, while denying pro se litigants the advertised online remote

access via the Internet. The publicly touted electronic court from end-to-end accessible via the internet is a lie, that in reality became a machination disadvantaging self-represented litigants which is then hidden from the public and the press, who are also denied remote access to public case information. Remote access to public case information allows the press and the public to easily use word search tools to identify issues individuals access courts to seek for redress. The majority of pro se litigants in federal court, for example, brings civil rights violation under color of state law actions,[1] like the Plaintiff. Disabling the press and public's remote access via the Internet to public case information hinders timely press coverage of civil rights actions alleging violations under color of state law, like this instant action. Disabling the pro se litigants' remote access via the Internet to their case information is calculated to coordinate attempts to make proceedings a foregone conclusion – in essence, the pro se litigant is forced to physically go to the courthouse, just like the paper court system, search for her case records, then view and print them out physically at the court house, no different from the old paper court system.

77. The Judiciary's wide-spread representation in 2014 to the public and to the press that *the public eventually is expected to be able to call up court documents using an app on cellphones* is a calculated lie, because at the same time Judiciary spokespersons widely disseminated this false promise, the Judiciary Defendants adopted the rule and policy in 2014 to restrict public and pro se remote access to public court case information via the internet in 2014, which is integrated by and embedded, and continuing to be maintained and supported by Defendant Tyler Tech in Odyssey's "end-to-end solution" that illegally violates the fundamental premise of the American justice system: public trials, equal protection and due process. From February 2013 to September 2018, at meetings that ordinarily are meant to

---

[1] SRLN Report

consider administrative and policy issues affecting the Rhode Island court system, and to make recommendations, Defendants Rhode Island State Court System ("RI STC"), RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS ("RI AOSC"), Paul Suttell in his capacity as Executive Head of RI AOSC as the Executive Head of the RI STC, RHODE ISLAND JUDICIAL COUNCIL and RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL met to deliberate coordinated efforts to arbitrarily strip away the public's right of access to court information and pro se litigants' right of access to their court case information long enshrined in centuries of common law, case law, statutory rights and safeguarded by the Constitution, through the transition from paper court system to the electronic court system, and how to keep it hidden from view – as such Defendants decided to phase the roll out of their scheme to restrict remote access – phase one in 2014 under the guise that restrictions are temporary that may be lifted in the future, while the spotlight is on the transition to and implementation of Odyssey; then phase two in 2018, when the restriction would be made permanent under the permanent adoption of the Rule and Practice Governing Access to Court Records that is still in effect today.  Upon information and belief, the minutes of these meetings to set the Rule 5 policy and rules denying remote access to pro se litigants, that are ordinarily kept by the Judiciary are kept and hidden by the Defendants to safeguard from public record requests under APRA, such as the APRA request the Plaintiff made on June 10, 2023, whereupon Defendant Justin Correa denied the Judiciary is in possession of any public records relating to the access restriction.  To enforce restrictions, Defendants enshrined the restrictions in the state's court rules and practices that Defendants court administrators and technology support actors knowingly acquiesce in following, but who knew or should have known are illegal and unconstitutional.

**D. <u>Defendants Scheme to Partially Integrate into Odyssey the Legacy RI OCSS Electronic Case Management System in Such a Way so That Opposing Party Is Given No Notice Through Odyssey and Only RI OCSS and the Judge Are able to View RI OCSS's Filings and Court Orders, Calculated to Predetermine Proceeding Outcome In Favor of Defendant RI OCSS</u>**

78. As if the above is not egregious enough, as outrageous is Defendants' deliberate and

calculated failure, from 2014 to the present, to fully integrate into Odyssey the unnamed

legacy electronic filing and case management system in use by Defendant RI OCSS in its

routine enforcement and prosecution of overdue child support in Rhode Island Family Court

under 42 U.S.C. § 654 and 42 U.S.C. § 666, where additionally, the *Turner* Court's judicial

due process duty safeguards on proceedings emphatically apply.   The integration failure

results in the publicly advertised end-to-end justice system to be invisible to everyone else

other than the family court justices and Defendant RI OCSS.  In other words, all electronic

court filings and paper filings by Defendant RI OCSS are not noticed to the opposing party

by neither Odyssey nor the Defendants, all filings by the Defendant RI OCSS are not visible

to opposing pro se litigants, all filings by the Defendant RI OCSS are not even visible to the

Rhode Island Court's Virtual Clerk.  The only other participant of the judicial process able to

view Defendant RI OCSS's filing is the family court judge.  This deliberate partial electronic

case management and file and serve integration in which only Defendant RI OCSS and the

Judge in the judicial process can view RI OCSS's filings is calculated to predetermine the

outcome of the proceeding to the advantage of and in favor of RI OCSS in support

establishment and enforcement proceedings under 42 U.S.C. § 654 and 42 U.S.C. § 666, and

to additionally hide the illegal charge of 12% compounded interest in violation of 42 U.S.C.

§ 654 and 42 U.S.C. § 666, and *Turner v. Rogers, 564 U.S. 431 (2011)*.   No form nor other

feigned assistance has effectively defeated the routine systemic establishment and

enforcement of 12% compounded interest under 42 U.S.C. § 654 and 42 U.S.C. § 666 that all State actors, including the justices, are aware of and assist in establishing and collecting, in the same exact manner the state justices and prosecutorial actors systemically behaved, documented in *Turner v. Rogers, 564 U.S. 431 (2011)*.

79. Relative to the partial integration into Odyssey of the legacy electronic case management system in use by RI OCSS calculated to make filings and court orders submitted by RI OCSS invisible to the public and to pro se litigants in a scheme to predetermine the outcome of proceedings in state child support proceedings under 42 U.S.C. § 654 and 42 U.S.C. § 666, Defendants never intended it to see the light of day. This fact finally saw the unintended light of day in open court in family court only when Plaintiff, in a remote WebEx hearing on June 8, 2023, with wire fraud implications with this instant federal RICO action in place, persisted in her complaint on the record that the State's electronic court system caused her not to be noticed, as well as she could not see RI OCSS's filings and that even the Rhode Island Court's Virtual Clerks state that they, as a principle, could not see the filings by RI OCSS.

80. Unless designated sealed in other special cases, all relevant court records are public, generated in public proceedings that are open to the public, including Plaintiff's cases.

81. Due process and equal protection in an electronic court system are required by common law, federal and state law and regulation to replicate those protections in place in the paper court system that the electronic system replaced at the time of implementation.

82. As a result, from 2013 to the present, the Texas pro se Plaintiff has been unable to access the electronic court record information, including court orders, in her own case file remotely via

the Internet that Defendants repeatedly lied to the Plaintiff from 2013 to the present are accessible remotely via the internet.

### E. **RI OCSS - Schemes to Knowingly Enforce and Collect Legally Insufficient 12% Compound Interest in Texas Against the Plaintiff under 42 U.S.C. § 654 and 42 U.S.C. § 666 Title IV-D Program**

83. In April 2018, the Texas Plaintiff's child emancipated, as documented in the public court records of *Gero Meyersiek v. Mary Seguin, K20010521M.*

84. Defendants knew that 12% compounded interest on overdue support is unenforceable in the State of Texas, yet knowingly input the interest in Defendants' automated record child support maintenance system under 42 U.S.C. § 654 and 42 U.S.C. § 666, for the purpose, inter alia, of getting reimbursement funds from the federal Title IV-D Program through fraud, as Defendants know their unenforceable established support violates 42 U.S.C. § 654 and 42 U.S.C. § 666, and *Turner v. Rogers, 564 U.S. 431 (2011).*

85. By inputting the illegal interest into the automated record processing system under 42 U.S.C. 654(16); 655(a)(3)(A), Defendants knew the aggregate support was unenforceable and uncollectable in the State of Texas, and so Defendants never sent to Texas for collection and enforcement from 2013 and 2018, while the child was a minor.  As a result, the family court case *Gero Meyersiek v. Mary Seguin, K20010521M* that documents a long 12 year record of contention always initiated by the financially resourceful Defendant Gero Meyersiek against the at-times pro se Plaintiff while in Rhode Island, remained quietly closed for ten years from 2013 to 2023.

86. Upon the emancipation of the child in 2018, Defendants Gero Meyersiek and RI OCSS schemed to collect the due process violative support in Texas, as well as schemed to continue hiding, *inter alia*, from Texas authorities for fear of triggering the Texas Penal Codes, the

illegal 12% compounded interest they input into the automated record processing system in 2013.  To solve their dilemma, Defendant RI OCSS arbitrarily removed from the automated record system the entire interest amount that accrued in the automated record keeping system, in a coordinated attempt to hide the 12% compounding effect of interest (amounting to approximately $73,000), without legal authority and without prior court approval. Discovery documents produced under oath by Defendant LISA PINSONEAULT and PAUL GOULD show the RI OCSS redacted incriminating parts of the record that specifies the statutes they violated, in an attempt to erase their illegal scheme from public view in *prima facie* coordinated effort to continue hiding their crimes.

87. Upon information and belief, Defendants changed their minds and decided not to send to Texas in 2018, as sending to Texas authorities under  42 U.S.C. 654 and 42 U.S.C. 666 overdue support with no interest would create an incriminating record of interstate support collection under  42 U.S.C. 654 and 42 U.S.C. 666 that shows no interest, which would show a  42 U.S.C. 654 and 42 U.S.C. 666 Texas record that is discrepant to the Rhode Island support record, under Plaintiff's social security number.  Texas does not have record of the Rhode Island Defendants sending Plaintiff's case for enforcement.  The Defendants continued to leave the interest off the system for three years, from 2018 to 2021.

88. Defendant Pricilla Glucksman is a right hand-woman of Defendant Paul Gould, Chief Legal Counsel of RI OCSS.  Plaintiff's 2012 lawsuits against Defendant Glucksman created animosity against the Plaintiff among Defendants Kevin Tighe, John Langlois and Paul Gould, as they regard suit against Defendant Glucksman as a threat to what they routinely do everyday, on incentive to prosecute as many cases as possible for, *inter alia*, promotion rewards, they routinely establish and collect 12% compound interest on overdue support

disallowed under 42 U.S.C. 654 and 42 U.S.C. 666 within the four corners of the state's boundaries under color of state law, without giving meaningful notice requisite under 42 U.S.C. 654 and 42 U.S.C. 666 to litigants of the many reasons they can contest this illegal and usurious practice, and then submit the cost of illegal operations to the Title IV-D program for reimbursement of 66% to 90% under 42 U.S.C. 654 and 42 U.S.C. 666. Knowingly, the RI OCSS defendants engaged in coordinated actions to retaliate against the Plaintiff, and agreed to work together under color of state law towards "avenging" Defendant Priscilla Glucksman, so that she stays in the background and does not nominally appear engaged in any activities, so as to cover up the retaliatory harassment motives behind the aforesaid acts by Defendant RI OCSS.  However, on August 18, 2023, on Odyssey's eFile and Serve, Plaintiff discovered Defendant Priscilla had set up in Odyssey automatic notice directly to her email account of all activities in Plaintiff's case where she had in 2013 established the unenforceable 12% compound interest in Texas *Gero Meyersiek v. Mary Seguin, K20010521M*.   Along with a long list of RI OCSS notice contacts, Paul Gould, Rick Mulcahey, Lisa Pinsonneault, DHS Courtfile, Priscilla Glucksman, who never entered her appearance in the current Family Court proceeding now appears in the automatic notice list of Odyssey in *Gero Meyersiek v. Mary Seguin, K20010521M*, only after Plaintiff's federal court filings in July and August of 2023 show Plaintiff's good faith and diligent factual investigations are closing in on the facts.  There is no legitimate business reason for Defendant Glucksman to be secretly noticed on activities in Plaintiff's family court case only as of August 2023, when she is clearly not assigned to work on the case in 2023, nor has the Plaintiff been noticed by Defendant RI OCSS that Defendant Glucksman is entering her appearance in Plaintiff's case.  Defendant RI OCSS lies in open court that the State's Motion

to re-establish 12% compound interest arrears that RI OCSS knows is unenforceable in Texas, and thus removed it off the system in 2018 in an attempt to hide it from Texas authorities, is "routine."  It is *de facto* fraud on the court.  And it started in 2013 by Defendant Priscilla Glucksman's retaliatory establishment in Rhode Island of the unenforceable 12% compound interest in Texas under 42 U.S.C. 654 and 42 U.S.C. 666 in *Gero Meyersiek v. Mary Seguin, K20010521M.*

> **F.  Covid-19 Necessitated the wholesale Transfer of In-Person Paper Court to Remote Electronic Court from 2020 to the Present, But Defendants Clandestinely Continue Obstructing Pro Se Litigants' Right of Equal and Due Process Remote Court Access, as well as the Public's Right of Access**

89. With the courthouse closures in 2020 and therefore restricted access to physical court document access portals installed in the court houses resulting from government physical shut downs during the COVID-19 Pandemic, changes in circumstances necessitated the State to continue operations through actual wide-spread court technology adoptions that were delayed yet long advertised and promised in the 2014 Odyssey implementation – namely remote court access -  whereby after a long seven years post-implementation of Odyssey and EFile and Serve, the Defendants officially adopted remote proceedings/hearings via the internet in order to continue court hearings, BUT still under the guise of equal remote access, by continuing under color of state law to deny pro se litigants remote access to their court case information that whole-sale violate constitutional rights of pro se litigants, such as the pro se Texas Plaintiff.  As before, an exclusive club of attorneys and government actors enjoy remote access to Court case information via the internet.  In violation of due process notice requirement, this access denial is not duly noticed to pro se litigants nor to the public and, as required by the Constitution and, *inter alia*, 42 U.S.C. § 654 and 42 U.S.C. § 666.

Additionally, the Defendants go a step further as to lie to pro se litigants, such as the Texas pro se Plaintiff, that pro se litigants have remote access to the court documents, including transcripts for appeal, when the Defendants know that is not true. To crown it all, the Defendants <u>deny</u> the judicial branch possesses any public records relating to why the Judicial branch, judicial council, adopted remote case information access <u>restrictions</u> only on pro se litigants and the public (especially when hearings are conducted remotely) in response to the Plaintiff's public record request under the State's Access to Public Records Act ("APRA"), when it actually posts on its own website copies of ten years-worth of Annual Reports dating from 2012 to 2022 to the State's General Assembly containing contradictory official claims that it is transparent, and that *remote access will be available to court users*. This *prima facie* coordinated cover up, fraudulent misrepresentation, and restricted access to case information calculated to hide, *inter alia*, the Defendants' tortious charge and collection of 12% interest on overdue support under 42 U.S.C. § 654 and 42 U.S.C. § 666, on an interstate basis, are at the crux of this action for money damages, including special and punitive damages.

90. Plaintiff, as before, was denied by Defendants remote access to her own court case information. However, they lie to the Texas Plaintiff that the court case information, such as court orders, can be accessible from the Odyssey portal through the Internet.

91. On or about October and November of 2021, the United States Department of State notified the Plaintiff in Texas that the Defendants placed a hold on the renewal of Plaintiff's passport for back due child support. Since the participating States of 42 U.S.C. 654 and 42 U.S.C. 666 programs do not provide the U.S. Department of State any further details, the U.S. Department of State gives notice to passport applicants to directly contact the relevant State

for further information.  Because there is no disclosure of the unenforceable 12% compound interest in the State Department hold, Defendant RI OCSS placed the hold in a scheme calculated to hide the illegal 12% compound interest disallowed under 42 U.S.C. 654 and 42 U.S.C. 666 from federal authorities, while scheming to collect the unenforceable interest from the Texas Plaintiff through fraud.  Since Defendants deny the public, out-of-state counsel, and pro se litigants remote access to public court case information, including denying Plaintiff access to Plaintiff's own case information, and since the Defendants did not send to Texas collection of support, and no notice was received by the Plaintiff of back due support, Plaintiff was unaware that support was owing.

92. With no way of knowing what support was owing, Plaintiff retained counsel in Texas to contact Defendant RI OCSS.

93. Discovery documents and evidence show that upon contact by Plaintiff's Texas counsel on or about October 2021, Defendant RI OCSS declined dealing with Plaintiff's Texas counsel, insisting that RI OCSS would only speak directly to Plaintiff personally, in a scheme to 1) deprive Plaintiff of counsel representation calculated to disadvantage the unsuspecting Plaintiff; 2) continue hiding from any Texas counsel, such as Plaintiff's counsel in Texas, whom Defendants feared would then identify Rhode Island's illegally procured 12% compounded interest on back support under 42 U.S.C. 654 that disallows 12% compound interest on overdue support, that is further unenforceable in Texas, and that Defendant RI OCSS had arbitrarily removed from the system in 2018 in an attempt to hide the 12% compound interest from enforcement authorities in Texas when they sought to send to Texas for support collection.

94. When Plaintiff was thus defrauded by inducement from counsel representation and forced to directly contact pro se by phone the Defendants RI OCSS on December 6, 2021, Defendant Karla Caballeros lied to the Plaintiff that it is the agency's policy to deal directly with the noncustodial and custodial parents, and not with counsels.  This is not true, as discovery documents show that, unbeknownst to the Plaintiff, Defendant Kevin Tighe on the same day picked up the phone and directly called Barbara Grady, Defendant Gero Meyersiek's private family law lawyer, to discuss the fact that the 12% compounded interest is unenforceable in Texas and therefore removed from the system by the RI OCSS in 2018, and proposed that Meyersiek waive interest if Plaintiff paid $104K in one lump sum as principle.  Discovery documents show that Defendant Kevin Tighe explicitly discussed this contract term with Barbara Grady in terms of keeping off the system the interest that was already removed by RI OCSS in 2018.  Discovery documents and Defendants' answers to Interrogatories show Barbara Grady called back and said yes, Defendant Meyersiek agreed to waive interest if Plaintiff paid $104k.  Accordingly, Defendant Karla Caballeros represented to the Plaintiff that if Plaintiff agreed to payoff the principle, Gero Meyersiek agreed to waive interest. $104k is $11,000 more than the $93,214.56 principle shown in Defendant RI OCSS's automated record system maintained under 42 U.S.C. 666's mandate that feeds Plaintiff's OCSS online child support account, which Defendant Karla Caballeros further showed Plaintiff on December 6, 2021, stating the $0 shown under interest is because Gero Meyersiek waived interest.   Plaintiff took a screenshot of this on December 6, 2021 of Plaintiff's online OCSS accounting, fed by the automated support record keeping system mandated to be accurate by 42 U.S.C. 666, showing as of November 30, 2021  support due in the amount of $93,214.56 that Plaintiff will submit in an **Exhibit D**. Plaintiff told Defendant

Karla Caballeros she agreed to pay the lump sum payoff amount shown on the screen in consideration of Defendant Meyersiek had waived interest, not knowing RI OCSS Defendants had removed from the system in 2018 the 12% compounded interest that was unenforceable.  At the time, Plaintiff was never given the full interest amount that was waived nor the rate of interest by Defendant Karla Caballeros when Plaintiff asked for an accounting and statement of account.  Defendant Karla Caballeros lied that she did not know and needed to ask "the Accounting department," then never responded thereafter.  When Plaintiff agreed to the deal brokered by Defendant RI OCSS, Defendant Kevin Tighe told Defendant Wendy Fobert to manually adjust the account records to show $104,185.98 and instructed Defendant Karla Caballeros to email Plaintiff on December 7, 2021 that "Accounting says to wire $104,185.98." Defendant Karla Caballeros further stated to Plaintiff that Accounting advised the extra $11,000 is for medical support that was not included in the $93,214.56 shown on Plaintiff's online account maintained by Defendant RI OCSS.   Since under RI OCSS's Debt Compromise Policy, Defendant RI OCSS, in agreement with the contract terms of interest waiver and interest debt forgiveness by the State that it reports to the U.S. Department of Health and Human Services that administers Title IV-D Programs under 42 U.S.C. 654 and 42 U.S.C. 666, routinely brokers agreements between custodial and noncustodial parties and forgives interest, Plaintiff in good faith justifiably relied on the written advisement, upon receipt of the emailed written advisement from Defendant Caballeros on the morning of December 7, 2021, to Seguin in Texas that said, "….accounting says to pay $104,185.98 by bank wire transfer to RI OCSS's child support collection bank account" with bank wire instructions to RI OCSS's bank account. On December 7, 2021, Plaintiff in Texas, in good faith, accepted Defendant Karla

Caballeros' offer, as broker agent of Defendant Gero Meyersiek, to **pay off child support in full** in the amount of $104,185.98 in one lump sum, in consideration of Defendant Gero Meyersiek had waived interest.  Also, on December 7, 2021, Plaintiff wired on the same day the agreed amount of $104,185.98 through bank transfer to Defendant RI OCSS's child support collection bank account in Connecticut, as instructed on December 7, 2021 by Defendant RI OCSS and Defendant Karla Caballeros via email.  Plaintiff thus performed on the contract with Defendant Gero Meyersiek, brokered by Defendant RI OCSS acting as agent of Defendant Gero Meyersiek.  The agreement is an agreement between Plaintiff and Defendant RI OCSS to cease and desist support collection as Plaintiff performs on and satisfies full payment of support due with Plaintiff's lump sum payment of $104,185.98.

95. Unbeknownst to the Plaintiff, and per discovery documents and Defendant RI OCSS's answers to Interrogatories, Defendants Frank DiBiase, Monique Bonin and Kevin Tighe met on or about December 6, 2021 to scheme how to fraudulently induce the Plaintiff to wire the substantial amount of $104,185.98 in consideration of Defendant Gero Meyersiek's waiver of the illegal 12% compound interest that Defendants removed from the system in order to hide it from Texas authorities when Defendants sought to send to Texas to collect overdue support.  Integral to their objective is to conceal from Plaintiff the illegal 12% compound interest that is unenforceable in Texas, therefore after successfully depriving Plaintiff of Texas counsel whom Defendants feared would identify the unenforceable 12% compound interest in Texas, Defendants planned to broker the contract in which Defendants fraudulently would induce the pro se Plaintiff into entering an agreement to pay $104,185.98 without given any consideration, by lying to Plaintiff that a legitimate interest amount was waived by Gero Meyersiek, and at the same time hide from the Plaintiff RI OCSS's support

accounting in her account, in order to hide: 1) Defendant RI OCSS's and Defendant Gero Meyersiek's retaliatory-motivated establishment of unenforceable 12% compound interest in Texas; 2) Defendant RI OCSS's illegal removal from the automated record system of the unenforceable 12% compound interest in 2018 to hide it from Texas authorities when RI OCSS sought to send to Texas the support for collection; 3) Defendant RI OCSS's official policy not to establish interest in interstate cases, for the exact reason that Rhode Island's routine 12% compound interest on overdue support is not enforceable under 42 U.S.C. 654 and 42 U.S.C. 666; 4) Defendant RI OCSS and Defendant Gero Meyersiek's motive and scheme to fraudulently induce the Plaintiff into paying a huge amount of lump sum $104,185.98 without actual consideration, since the interest is unenforceable; 5) Defendant RI OCSS and Defendant Gero Meyersiek engaging in the aforesaid activities comprise an enterprise of conspiracy to defraud.

96. Plaintiff is filing a Motion to Dismiss in the Rhode Island Family Court, attaching this instant First Amended Complaint in this action, to dispel any shred of concern this Court may have relative to Rhode Island Defendants' *scandalous* raising of Younger Abstention in this Court for the purpose of continuing conducting electronic state proceedings that involve State RICO enterprises defrauding the courts that further target pro se litigants and the public in order to disadvantage them through the State Judiciary removing structural due process and equal protection safeguards established in the paper courts when the State transferred to the electronic court system under their coordinated actions and inactions, and failed duty of the Government and Commercial Defendants. The family court proceeding has again been continued to October 20, 2023, because, *inter alia*, Plaintiff filed a motion to stay proceedings outlining Defendants' illegal partial integration of the Odyssey electronic court

system, which the family court claims is an issue not properly before it despite

acknowledging Plaintiff had filed the stay motion through Odyssey's eFile and Serve and the

family court judge had reviewed it during her lunch hour.

97. Discovery documents and Answers to Interrogatories by Defendant RI OCSS show

Defendant RI OCSS never made a privilege log and never anticipated Plaintiff to take legal

action, since after RI OCSS defendants successfully deprived the Plaintiff of her Texas

counsel, Defendants counted on similarly disadvantaging the pro se Plaintiff, who being over

2,500 miles away in Texas, and denied access to incriminating evidence in her child support

case file, would be easy prey.

98. Discovery documents and Answers to Interrogatories by Defendant RI OCSS show that on

December 6, 2021 Defendant Kevin Tighe called Defendant Gero Meyersiek's private family

law lawyer, Barbara E. Grady, who represented Defendant Gero Meyersiek initiating

contentious litigation against the Plaintiff in Rhode Island since 2005, to discuss Defendant

RI OCSS's scheme to broker an agreement under the aforesaid scheme, how the scheme

would be to the Defendants' pecuniary interests, while hiding from the Plaintiff the

unenforceable 12% interest by keeping the interest off the system so that Plaintiff would not

see it in her online account and start to ask questions during the RI OCSS brokered

negotiations.  Barbara Grady relayed the scheme to Defendant Gero Meyersiek, who agreed.

99. Discovery documents and Answers to Interrogatories by Defendant RI OCSS show that

Defendant RI OCSS did not anticipate the Plaintiff to perform on the contract within hours of

forming the agreement.  Flush with Plaintiff's money in hand, and with Plaintiff proceeding

pro se, on December 7, 2021, moments <u>after</u> the Plaintiff wired the $104,185.98, Defendants

schemed to collect on the 12% compounded interest and tag on even more unenforceable

moneys under the category 12% compounded interest on "medical." Barbara Grady called Defendant Kevin Tighe and after the conversation, they decided to put the unenforceable 12% compound interest in Texas back on the system (back on the system means it is being collected under Title IV-D 42 U.S.C. 654 and 42 42 U.S.C. 666 that continues to be unenforceable) and schemed a work-around to continue hiding the unenforceable 12% compound interest by not sending it to Texas, but instead illegally and clandestinely seize Plaintiff's Texas bank account from which Plaintiff wired the $104,185.98, reasoning there must be more funds from the account where Plaintiff quickly performed on the contract and wired $104,185.98. If anybody asked, Defendants schemed to explain it away as Gero Meyersiek "changed his mind." Defendant Kevin Tighe instructed Defendant Timothy Flynn to contact the Plaintiff's bank as well as issue subpoenas on Plaintiff's bank. Plaintiff's Bank account is opened and governed under Texas banking laws, and as such, the funds constitute Texas property that is protected from Rhode Island property seizure under 42 U.S.C. 654 and 42 U.S.C. 666 for unenforceable 12% compound interest in Texas and the fraudulent RICO aforesaid fraudulent RICO scheme. Defendant Timothy Flynn lied to Plaintiff's bank, Bank of America, that Defendant RI OCSS was collecting legitimate child support, hiding from Bank of America that RI OCSS illegally put back on the system the 12% compound interest that is further unenforceable in Texas, and misrepresented it was overdue support.

100.    Discovery documents and Answers to Interrogatories by Defendant RI OCSS show that because the illegal 12% compounded interest the RI OCSS Defendants put back on the system is unenforceable in Texas, the work-around scheme through placing liens and seizure via the bank on Plaintiff's Texas property is tortious and fraudulent. Further, the Defendants manually put back on the system $75,638.00 that represents 12% compound interest that is

unenforceable in Texas, which they schemed not to send to Texas authorities to enforce in order to hide the illegal scheme from Texas authorities.  The system self-generates the overdue amount figure which feeds the software of an unnamed third-party vendor that generates liens on Plaintiff's properties by social security matches.  Upon information and statement by Defendant John Langlois in the 42 U.S.C. 654 and 42 U.S.C. 666 agency lien-appeal proceeding pre-hearing conference on October 5, 2022, the feed is generated on a three, four or six-month cycle basis, depending on the vendor, per RI OCSS contracts with the vendors, hence from December 9, 2021 to April 27, 2022, Defendant Timothy Flynn knowingly generated the illegal liens and levies manually himself for $75,638.00, that he knew was legally insufficient under 42 U.S.C. 654 and 42 U.S.C. 666, on Plaintiff's Texas bank account seizing Texas property that he knew constituted illegal and fraudulent seizure of Plaintiff's Texas property under color of state law.  Since Timothy Flynn knew that he lied to Plaintiff's bank that RI OCSS is collecting legitimate support under 42 U.S.C. 654 and 42 U.S.C. 666, he knew 42 U.S.C. 645 disallow 12% compounded interest, and he knew 42 U.S.C. 654 and 666 required notice to the Plaintiff and due process safeguards prior to the State levying Plaintiff's Texas property under  42 U.S.C. 654 and 42 U.S.C. 666, therefore, Defendant Timothy Flynn deliberately failed to send notice to Plaintiff of his manually generated liens and levies, calculated to hide his fraudulent Texas property seizure and Defendants' RICO activities seizing Plaintiff's Texas properties that are in breach of contract as well as void and fraudulent under 42 U.S.C. 654 and 42 U.S.C. 666.

101.    Upon information and statement by Defendant John Langlois in the 42 U.S.C. 654 and 42 U.S.C. 666 agency lien-appeal proceeding pre-hearing conference on October 5, 2022, RI OCSS's system on March 3, 2022 generated a lien on Plaintiff's Texas insurance assets for

the amount $75,638.00 that Defendant RI OCSS manually put back on the system.  Because this March 3, 2022 lien is system-generated, the system automatically mailed Plaintiff notice of the lien, which is the only notice sent by the Defendants of seizure of Plaintiff's Texas properties under 42 U.S.C. 654 and 42 U.S.C. 666 in violation of the Title IV-D Program.

102.    Plaintiff received the March 3, 2022 lien in the mail in mid-March, that merely stated a lien of $75,638.00 without any accounting or explanatory justification.  This type of legally insufficient notice is meaningless under 42 U.S.C. 654 and 42 U.S.C. 666, as Defendant RI OCSS knowingly intended, in order to hide their routine illegal extortion of 12% compound interest disallowed under 42 U.S.C. 654 and 42 U.S.C. 666 and unenforceable in the State of Texas.  Plaintiff timely sent a written appeal on April 1, 2022, that was forwarded to the Rhode Island Executive Office of Health and Human Services ("RI EOHHS") Appeals Office, Docket # 22-2116, pursuant to 42 U.S.C. 654 and 42 U.S.C. 666.  It is, therefore, firmly established fact that Defendants RI OCSS knowingly violate 42 U.S.C. 654 and 42 U.S.C. 666 and knowingly submit for reimbursement, to the Title IV-D Program administrator agents of the U.S. Department of Health and Human Services of the cost of operating the illegal enterprise under 42 U.S.C. 654 and 42 U.S.C. 666 in the State of Rhode Island.

103.    Within a week of Plaintiff's submission of her written appeal, Plaintiff received in the mail a notice of Perfected Lien of Plaintiff's insurance assets, against which lien Plaintiff had already initiated appeal proceedings with RI EOHHS under 42 U.S.C. 654 and 42 U.S.C. 666, showing Defendant RI OCSS's *prima facie* violation of  42 U.S.C. 654 and 42 U.S.C. 666.  Plaintiff was notified that Defendant John Langlois and Defendant Paul Gould were handling the appeal for Defendant RI OCSS.  Accordingly, Plaintiff emailed Defendant Paul

Gould, who is listed as the Chief Legal Counsel of the RI OCSS, copying Defendant John Langlois, to remove the perfected lien and cease all further collection activities pending the outcome of the agency appeal, in accordance with 42 U.S.C. 654 and 42 U.S.C. 666. On or about April 8, 2022, Defendant Paul Gould emailed Plaintiff claiming he removed the perfected lien, which is an intentional lie, because the lien remained on Plaintiff's Texas assets throughout the duration of the 42 U.S.C. 654 and 42 U.S.C. 666 appeal for six months from April to October 2022, in violation of 42 U.S.C. 654 and 42 U.S.C. 666, violative of Plaintiff's due process rights, and through fraudulent misrepresentation. Defendant John Langlois disclosed in the 42 U.S.C. 654 and 42 U.S.C. 666 RI EOHHS Pre-Hearing Conference on October 5, 2022 that Defendant RI OCSS intentionally and knowingly continued to lien Plaintiff's Texas assets during the duration of the 42 U.S.C. 654 and 42 U.S.C. 666 appeal because, "otherwise the moneys will be gone if we remove the lien!" and continued to strenuously resist the RI EOHHS Hearing Officer's instruction to RI OCSS to rescind or remove the lien pending the outcome of the appeal, as mandated by 42 U.S.C. 654 and 42 U.S.C. 666. State violation of 42 U.S.C. 654 and 42 U.S.C. 666 renders the State ineligible to participate in the Title IV-D Program, as intended by Congress and by the Secretary, therefore, Plaintiff has standing to report and is reporting this systemic intentional violation of 42 U.S.C. 654 and 42 U.S.C. 666 by Defendants RI OCSS and RI DHS to the U.S. Department of Justice and the U.S. Department of Health and Human Services. Plaintiff in Texas recorded the telephonic conference and submits into evidence Defendant John Langlois's admission of Defendants' illegal due process violative motives to intentionally violate 42 U.S.C. 654 and 42 U.S.C. 666 by continuing to illegally lien and seize Plaintiff's Texas properties throughout the pendency of the 42 U.S.C. 654 and 42

U.S.C. 666 state agency appeal to this Court, that is attached to this First Amended

Complaint, the audio recording evidence of Defendant John Langlois's 42 U.S.C. 654 and

42 U.S.C. 666 proceeding statement will be submitted under Exhibit E.

104.     As Rhode Island Defendants schemed to circumvent Texas property and Texas

constitutional safeguard laws in a scheme to harm citizens of Texas and illegally seize Texas

properties under the guise of 42 U.S.C. 654 and 42 U.S.C. 666 under color of RI state law,

that are legally insufficient and fraudulent, the RI Defendants are violative of Texas Penal

Codes and Texas Civil Codes.

105.     In violation of 42 U.S.C. 654 and 42 U.S.C. 666, Defendant RI OCSS refused to provide

Plaintiff any accounting explanation for how RI OCSS calculated the $93,214.56 or

$104,185.98 or $75,638.00 or $73,000.00 or $55,000.00 or $75,623.71, as well as denied

Plaintiff access to her child support case records, calculated to hide the Defendants' scheme

to defraud Plaintiff under color of state law through the aforesaid illegal operation of the

State's Title IV-D Program violative of 42 U.S.C. 654 and 42 U.S.C. 666, despite Plaintiff's

over twelve written requests to Defendant RI OCSS to access her child support case records

during the pendency of the RI EOHHS agency appeal under 42 U.S.C. 654 and 42 U.S.C.

666. In itself, the collection of child support by arbitrarily "taking interest off the system"

and "putting interest back on the system" without legal authority violates 42 U.S.C. 654 and

42 U.S.C. 666, which renders the State ineligible to participate in the Title IV-D Program,

under 42 U.S.C. 654 and 42 U.S.C. 666.

106.     Accordingly, the Hearing Officer of Plaintiff-initiated RI EOHHS agency appeal

scheduled a telephonic Prehearing Conference on October 5, 2022, among the Hearing

Officer and Defendant John Langlois in Rhode Island and Plaintiff in Texas, to address

Defendant RI OCSS's noncompliance of 42 U.S.C. 654 and 42 U.S.C. 666's due process requirements during the pendency of the appeal. The telephonic conference lasted over one and a half hours, which the Plaintiff, as a participant in Texas, recorded in Texas the entire phone call.

107.    When asked by the RI EOHHS Hearing Officer why RI OCSS has failed to produce Plaintiff's case file, including the court order that substantiates the alleged support due, Defendant John Langlois retorted, "She can access the court order through the portal on the Internet." This is a blatant lie.

108.    In the face of strenuous convoluted protest by Defendant John Langlois insisting that in 42 U.S.C. 654 and 42 U.S.C. 666 due process appeals, the burden of proof rests on the Plaintiff, and thereby Plaintiff should be denied access to her child support case files by Defendant RI OCSS, the Hearing Officer stood her ground that RI OCSS must grant Plaintiff access to the automated record keeping of accurate support calculations mandated under 42 U.S.C. 654 and 42 U.S.C. 666, and that additionally, the burden of proof is on RI OCSS to show that the alleged interest is owing, as well as stood her ground in pursuing lines of questioning of Defendant John Langlois to investigate the root cause of RI OCSS's refusal to produce Plaintiff's child support records to substantiate the $75,638.00 on the lien, Defendant John Langlois admitted,

"..what happened in this case is when Mary's representative, her attorney, called us in late November 2021 and said she wants her passport released, what does she have to do to release her passport, they put her in touch with Karla, who gave her the $104k number. Where that number came from was the department attorney contacted the custodial parent, Mr. MEYERSIEK. So, we contacted his attorney, it wasn't me, it was somebody else in my office, and said, if she was willing to make a $104k payment to pay off the principle, would you be willing to waive the $75k or $73k in arrears. At that time, he said yes. So Karla notified Mary that if she paid the $104k, it would be paid in full because he was willing to waive the interest, that was just the principle. What happened was the day after Karla told

Mary to wire the $104k the attorney for Mr. Meyersiek contacted us again and said he changed his mind.  Please put the interest back on the system.  So we did."

Plaintiff's recording of this audio evidence is herein submitted, attached to this First Amended Complaint, as will be submitted in **Exhibit F**, and was also submitted into the record by the pro se Plaintiff in the related federal case ***Seguin v. Rhode Island Office of Child Support Services et al,*** **Civil Action No. 1:23-cv-0034-WES-PAS**.  This Court, as a matter of federal record, has received Plaintiff's submission of this audio evidence more than five times, in both this matter and the related matter, ***Seguin v. Rhode Island Office of Child Support Services et al,*** **Civil Action No. 1:23-cv-0034-WES-PAS**.

109.    Discovery documents and Answers to Interrogatories by Defendant RI OCSS show that Defendant John Langlois intentionally misled the Hearing Officer and the Plaintiff on the full nature of "what happened in this case."  Materially, Defendant John Langlois continued to hide the material fact that the 12% compound interest on overdue support that Defendant RI OCSS input into the system under U.S.C. 654 and 42 U.S.C. 666 is unenforceable in Texas, and for this reason, the Defendant RI OCSS removed the interest from the system in 2018 when it sought to send the support collection to Texas.  Defendant John Langlois further hid the material fact that since Defendant RI OCSS knew the 12% compound interest is unenforceable and disallowed under U.S.C. 654 and 42 U.S.C. 666, the lien of $75,638.00 based on a 12% compound interest on Plaintiff's Texas assets in the interstate support case is void and uncollectible, as well as sound in tort – indeed Defendant RI OCSS deliberately decided not to send support collection to Texas authorities in 2018 in order to avoid being found out by the Texas and Federal authorities Defendants' illegal 12% compound interest through interstate enforcement of support under U.S.C. 654 and 42 U.S.C. 666.  Moreover, Defendant John Langlois hid the material fact that because Plaintiff's child support case

information contains evidence of this incriminating scheme of interstate fraud under U.S.C. 654 and 42 U.S.C. 666, Defendant RI OCSS has denied Plaintiff access to her child support case file for the duration of the agency appeal under U.S.C. 654 and 42 U.S.C. 666, calculated to cover up their criminal scheme.  The State's multiple infractions of U.S.C. 654 and 42 U.S.C. 666 against the Plaintiff defrauding her and the United States are extensive and egregious.

110.    Under authority of U.S.C. 654 and 42 U.S.C. 666, the Hearing Officer instructed the reluctant Defendant RI OCSS to rescind or remove the lien that is still on Plaintiff's Texas property as of October 5, 2022 (six months after Plaintiff initiated the appeal), and instructed Defendant John Langlois to produce Plaintiff's child support case information by October 26, 2022, and to testify to his aforesaid admission at the upcoming appeal hearing tentatively scheduled for November 2022, to which Defendant John Langlois agreed.

111.    Discovery documents and Answers to Interrogatories by Defendant RI OCSS show that after the October 5, 2022 Prehearing Conference, Defendant John Langlois sent several emails to Defendant Gero Meyersiek's lawyer, Barbara Grady, asking whether Defendant Meyersiek would "waive interest to resolve the case," to which Barbara Grady responded that Defendant Gero Meyersiek is willing to waive interest but demands $55,000.00.  At this juncture, Defendant John Langlois emailed, "We both know that there is no way Mary Seguin will agree to pay any interest."  Obviously, because Defendant RI OCSS was instructed to produce Plaintiff's child support records by October 26, 2022, at which point Defendants feared Plaintiff would discover the illegal interest contained in her case records, and create a 42 U.S.C. 654 and 42 U.S.C. 666 record at the upcoming hearing, that might be subject to audit by the U.S. Department of Health and Human Services, Defendants never

intended to turn over Plaintiff's records nor attend the hearing, because in Plaintiff's record is embedded evidence of Defendants' knowing violation of 42 U.S.C. 654 and 42 U.S.C. 666 inputting 12% compound interest in 2013, then removal of the 12% compound interest from the system in 2018 to avoid detection by Texas authorities of illegality by Rhode Island under 42 U.S.C. 654 and 42 U.S.C. 666, following Plaintiff's 2010 reporting to the U.S. Department of Justice in Texas of Rhode Island's extortionary ransom of $55,000 for visitation documented in the G.A.L. Report and Rhode Island's issuance of TRO against the Plaintiff in Texas under the Violence Against Women Act that explicitly ordered "protection of the G.A.L" in an attempt to deter Plaintiff from passing the incriminating report to federal law enforcement authorities in Texas.

112.    Accordingly, on or about October 13, 2022, Defendants Paul Gould, John Langlois and Kevin Tighe met to discuss ways that would allow them to continue hiding their scheme, deny Plaintiff access to her child support records, and legitimize their input of 12% compound interest under color of state law into the automated child support record keeping system, the cost of which was reimbursed 90% under 42 U.S.C. 654 and 42 U.S.C. 666, in the face of RI EOHHS's Hearing Officer attempting to remain compliant with 42 U.S.C. 654 and 42 U.S.C. 666.  Defendants schemed to withdraw the lien under the guise that it was issued in error, calculated to cause the RI EOHHS to lose jurisdiction of the appeal absent the lien.  Since Defendant RI OCSS knew that the Defendants had deliberately only partially integrated RI OCSS's legacy case management system with Odyssey which was calculated to predetermine the outcome of proceedings in Family Court in favor of Defendant RI OCSS in a system that only Defendant RI OCSS and the judge get noticed of and can see their court filings, they schemed to obtain an order re-establishing illegal 12% compound interest under

color of state law in Family Court.  On October 14, 2022, Defendant RI OCSS withdrew the lien.  On November 29, 2022, RI EOHHS dismissed the case stating the agency lost jurisdiction upon the withdrawal of the enforcement instrument, the lien.

113.    However, before Defendant RI OCSS could act on their scheme, Plaintiff initiated an APRA (Access to Public Records Act) request for her child support case records on December 1, 2022, and sent the record request to the Secretary of RI EOHHS, the 42 U.S.C. 654 and 42 U.S.C. 666 agency that oversees both Defendant RI DHS and RI OCSS.

114.    Unbeknownst to Plaintiff at the time, Plaintiff's December 1, 2022 APRA record request stopped Defendants RI OCSS from acting on their scheme in Family Court.  The Secretary of RI EOHHS forwarded Plaintiff's APRA request to the Chief Legal Counsel of RI EOHHS, Lisa Martinelli, Esq., to respond, who further forwarded Plaintiff's APRA request to Defendant Debra Barclay and then Defendant Lisa Pinsoneault to process, in the process notifying Defendant RI DHS, that oversees Defendant RI OCSS, of Defendant RI OCSS's activities.  With focus on Plaintiff's child support case records by RI EOHHS executives, Defendant RI OCSS and Defendant Paul Gould reported to the supervisory actors that RI OCSS would comply with Plaintiff's APRA request.

115.    Upon information and belief, Defendant RI OCSS discussed with Defendant RI DHS and Defendant Debra Barclay their scheme to hide the agency's routine input of impermissible 12% compound interest in 42 U.S.C. 654 and 42 U.S.C. 666 child support cases, that they also did in Plaintiff's interstate case, as part of their routine practice in Rhode Island, a practice that Defendant RI DHS knew and/or should have known.  On its face, State participation in Title IV-D under 42 U.S.C. 654 and 42 U.S.C. 666 necessitates uniform application of interest rates at the rates allowable under 42 U.S.C. 654 and 42 U.S.C. 666 on

overdue support, thereby invalidating any legacy practice of State's imposing 12% compound interest that would result in the unconstitutional unequal imposition of simple interest of 3% to 6% on support under 42 U.S.C. 654 and 42 U.S.C. 666, and others, 12% compound interest. Further, Congress incentivized States to comply with due process by allowing States to seek reimbursement of 66% to 90% of the cost of enforcement under 42 U.S.C. 654 and 42 U.S.C. 666, under the condition of compliance. Therefore, State participation in Title IV-D Programs necessitates uniform interest rates allowable under 42 U.S.C. 654 and 42 U.S.C. 666, as well as compliance with due process. Undisputedly, Defendant RI DHS knew this, as did the State judicial Defendants, and therefore, to hide their noncompliance and the resulting State's systemic fraud involving hundreds of millions of dollars, Defendants, *inter alia*, set in place the deprivation of the public's and pro se litigants's access to court case information records and the partial integration of Defendant RI OCSS's legacy system into Odyssey, calculated to make invisible to/hide from the public and pro se litigants RI OCSS's filings and court rulings that violate 42 U.S.C. 654 and 42 U.S.C. 666, taking advantage of the State's migration from paper court system to electronic court system in 2014.

116.    To continue cover up of their fraud, Defendant RI DHS and Defendant RI OCSS schemed to deny Plaintiff's APRA request, and relayed the denial on December 13, 2022, citing the records are "unsegregable," but also stated that the agency would provide Plaintiff with her records. In the meantime Defendants RI DHS and RI OCSS reported to Lisa Martinelli that Defendant Paul Gould promised to produce the requested documents, a message that Lisa Martinelli relayed to the Plaintiff in her letter correspondence to the Plaintiff on December 16, 2022. Lisa Martinelli also provided in the letter the APRA

requisite notice to the Plaintiff of her right to appeal Defendant RI OCSS's APRA denial, which APRA provides appeal to the Office of the Attorney General and/or private APRA action in the State's Superior Court, and copied Defendants Debra Barclay and Paul Gould this letter.

117. On December 22, 2022, Defendant RI OCSS produced all of the documents of Plaintiff's RI EOHHS appeal and certain case history record entries on the automated system that were input by Defendants Kevin Tighe, Wendy Fobert, and Timothy Flynn, with redactions of the details relating to their removal of the interest from the system in 2018 because they were sending collection to Texas. Defendants failed to produce any accounting records of their support calculations, nor the court orders underlying the basis of either $104,185.98 or $75,638.00 or $93,214.56 that are required to be accurate under 42 U.S.C. 654 and 42 U.S.C. 666. Defendants further ignored Plaintiff's request to provide unredacted records. In other words, even pursuant to Plaintiff's APRA request, Defendants continue their scheme to hide from the Plaintiff her case file records that would show the basis of support calculation, which would reveal the under color of state law impermissible 12% compound interest under 42 U.S.C. 654 and 42 U.S.C. 666, its unenforceability in Texas, the fraudulent seizure of Plaintiff's Texas properties, and the RICO schemes.

118. Accordingly, Plaintiff, proceeding pro se and after consulting RI APRA, and e-filed, per Superior Court Rules and Procedures, via Odyssey's eFile and Serve internet application in Superior Court an APRA action, *Seguin v. RI DHS et al, PC-2022-07215* on December 29, 2022, and thereafter submitted via email an APRA appeal to the Open Government Division of the RI Office of Attorney General.

119.    In December 2022, the U.S. President's Federal Emergency Health Declaration and

Restrictions aimed at safeguarding the public was in full force and effect, as a result of

Covid-19.  In response to government shut downs in Rhode Island during the Covid-19

Pandemic in 2020, the Defendants promulgated and adopted official e-Court or electronic

Court judicial proceedings, conducting hearings virtually, remotely via the Internet, using the

capability of the end-to-end electronic court features of the Odyssey Solution widely

advertised in 2014 by the Defendants.  However, unbeknownst to the Plaintiff, the

Defendants, while conducting Remote Hearings since 2020, continued to restrict pro se

litigants' remote access to their court information, except the docket sheet, while opposing

lawyers and government actors enjoyed full unrestricted access, in violation of constitutional

due process and equal protections.  In Family Court, it is even scarier, as with courthouse

shut-downs, and no access to the physical portals, and partial integration of RI OCSS's

legacy electronic case management system into Odyssey calculated to result in pro se

litigants are not being noticed, unable to see the filings, nor the court orders, and essentially

become mere nominal participants in effectively kangaroo courts where outcomes are pre-

determined when pro se litigants are denied meaningful participation. Nowhere on the

Odyssey eFile and Serve is the notice that pro se litigants and the public are denied access via

the Internet.  In fact, when Plaintiff called the Clerks Office of the Superior Court and told

the clerks she is proceeding pro se, the clerks led the pro se Plaintiff to believe that once

Plaintiff created an account in Odyssey, she would be able to access and see the court filings.

This is not true.  Unlike federal court's PACER, Odyssey allows the e-filer to choose

whether to and whom to notice, and the unchecking of e-noticing whenever pro se litigants

are opposing parties results in no notice given to pro se litigants.  This choice is a deliberate

architectural feature designed to allow e-filers to violate requisite notice of due process. Once that notice is unchecked, pro se litigants are unable to access the court case information of filings by the opposing party in their own public case.  In this manner, the Plaintiff was not given notice of filings, nor received a mail notice, and is unable to view the court files, including her own filings, after 45 days.  Additionally, Plaintiff, proceeding pro se, is denied access to view court orders signed by the judge and entered by the court in her own case. Without access to the record, pro se litigants such as the Plaintiff are unable to exercise the right to a meaningful appeal of the record.  Effectively, as the Defendants adopted permanent end-to-end electronic court judicial proceedings during the Pandemic, they deliberately shut out and denied pro se litigants' equal participation in the judicial process, and hid it from the public and unsuspecting disadvantaged pro se litigants, who proceed without counsel's access to court case information, notice and due process.

120.    Plaintiff further consulted the Self-Help website of the Rhode Island Judiciary targeting self-represented litigants - nowhere is the requisite notice that pro se litigants are denied access to their case information and equal and full participation in the judicial process.

121.    Upon Plaintiff's service of the APRA action on Defendant RI OCSS, Defendant RI DHS, Defendant Debra Barclay and Defendant Michael Coleman schemed to suppress Plaintiff's access to her case file records that show the incriminating routine Department violations of 42 U.S.C. 654 and 42 U.S.C. 666 that would render the State ineligible to participate in Title IV-D, and through subornation of perjury and perjury, to prevent the creation of an appealable record of the systemic fraud.  On January 10, 2023, Defendant Michael Coleman entered his limited Special appearance in the Superior Court APRA action that states his appearance is limited to argue jurisdictional matters.

122.    The service of APRA actions on political subdivisions of the State of Rhode Island does not equate service of an action under the Rhode Island Government Tort Act, therefore service is not completed by serving summons on the Rhode Island Attorney General in APRA actions.

123.    Plaintiff scheduled an APRA hearing on January 12, 2023, via WebEx.

124.    At this hearing, against the lone pro se Plaintiff, approximately half a dozen Defendant DHS and OCSS lawyers appeared, along with Defendant Wendy Fobert.  Plaintiff identified Defendants Debra Barclay, Carl Beauregard, Lisa Pinsoneault.

125.    At the January 12, 2023 WebEx hearing proceeding in the Rhode Island Superior Court presided by Judge David Cruise, Defendant Coleman, an Officer of the Court, emphatically represented in open court to the trial tribunal that he does not represent the Defendants. Defendant Coleman went on to emphasize that the Attorney General is the attorney of record for the Defendants in ***Mary Seguin v. Rhode Island Department of Human Service et al., PC-2022-07215***.  Predicated on his representation in open court to the Court that the Attorney General is the attorney of record for the Defendants, Defendant Coleman went on to attack that court's jurisdiction over the defendants for insufficiency of process, alleging that pursuant to the Rhode Island Government Tort Liability Act, R.I.G.L. § 9-31-1, *et seq*., the Plaintiff failed to serve the Summons and Complaint in that matter to the Attorney General, and it is insufficient process to serve the Defendants directly in that matter.

126.    Moreover, more than half a dozen staff attorneys of the Rhode Island Department of Human Services also appeared at the WebEx hearing in that matter on January 12, 2023. These defendant staff attorneys appeared via the court link provided by the Rhode Island Court system for WebEx Hearings to parties and counsels of record before the bar line, not

through the link provided for Public Access to WebEx court hearings.  These attorneys were not identified by the Court, did not identify themselves, and Plaintiff recalls identifying only a few of them through their WebEx sign-in user names: (1) Deborah A. Barclay, Esq.; (2) Lisa Pinsonneault, Esq.; and (3) Carl Beauregard, Esq.  The Plaintiff does not recall the other names.  Defendant Wendy Fobert appeared.  Upon information and belief, none of the named defendants in that matter who are staff attorneys (e.g., Kevin Tighe, Esq., Frank DiBiaise, Esq., John Langlois, Esq., Paul Gould, Esq.) were present at the January 12, 2023 WebEx hearing.  None of the named defendants entered appearance in that matter.  No entry of appearance was entered on behalf of the defendant agency in that matter.

127.    Subsequent to Coleman's representation in open court to the Court that he is not the Defendants' lawyer and that the attorney of record for the Defendants in that matter is the Rhode Island Attorney General, and subsequent to Coleman's attack on the Court's jurisdiction over the defendants for insufficiency of process based on his allegation that the Summons and Complaint in that matter was not served upon the Attorney General citing the Rhode Island Government Tort Liability Act, R.I.G.L. § 9-31-1, *et seq*., Judge Cruise called on the aforesaid Carl Beauregard, Esq., staff attorney of the Defendant agency, RI Office of Child Support Services, who is not a named defendant in that matter and who never entered appearance in that matter, to argue the case.  Defendant Beauregard never refuted Coleman's representation to the Court in open court that Coleman is not the Defendants' attorney and that the Attorney General is attorney of record for the Defendants.  In fact, none of the RI DHS attorneys who appeared at the January 12, 2023 hearing refuted Coleman's representation to the Court that he is not the Defendant's attorney and that the Attorney General is the attorney of record for the Defendants.

128.    Defendant Coleman and Defendant Barclay are senior staff lawyers at the Defendant

agency RI DHS.  Deborah Barclay's name appears on the APRA denial letter to the Plaintiff

from Ms. Lisa Martinelli, Esq., dated December 16, 2023, that advises the Plaintiff of the

right to appeal agency APRA denials to the Office of the Attorney general pursuant to

R.I.G.L. § 38-2-8.  Lisa Pinsonneault is the staff lawyer of the Defendant agency, RI OCSS,

who denied the Plaintiff's agency APRA request via email on December 13, 2023.

Therefore, on the record, based on the electronic sign-in history of the Rhode Island Court's

WebEx hearing on January 12, 2023, the Defendant agency staff lawyers who appeared at the

WebEx hearing, all had direct knowledge or are direct State actors materially relating to the

Plaintiff's APRA Complaint in that matter, ***Mary Seguin v. Rhode Island Department of

Human Service et al., PC-2022-07215***.  Upon information and belief, Coleman committed

perjury under RIGL sec. 11-33-1, as he knows fully well that the third party neutral status of

the Attorney General under RIGL sec. 38-2-8 requires the Attorney General by special duty

under the law, to make disclosure to the Plaintiff, as the Plaintiff filed the same APRA

Complaint to the Attorney General under RIGL sec. 38-2-8.  Defendant Barclay is copied on

the APRA denial letter to the Plaintiff on December 16, 2022 and knew that Ms. Martinelli

advised the Plaintiff to file appeals of agency APRA denials to the Attorney General under

RIGL sec. 38-2-8.  Defendant Pinsonneault personally sent the December 13, 2022 APRA

denial letter to the Plaintiff, also advising Plaintiff of appeal of agency APRA denial pursuant

to RIGL sec. 38-2-8.  As Officers of the Court, Defendants Barclay and Pinsonneault knew

the Rules of Professional Conduct prohibits the representation by the Attorney General of the

Defendants when they advised the Plaintiff to appeal APRA denials to the Attorney General

under RIGL 38-2-8, and prohibits the representation by the Attorney General when

Plaintiff's APRA Complaint that is identical to the one pending in Superior Court, is filed

with the Attorney General under RIGL 38-2-8.   Defendant Coleman lied to the court in a

ruse to get the court to dismiss the APRA action by pretending he is not the attorney of

record for the defendants and lying that the Attorney General is, so that he could attack the

court's jurisdiction over the defendants for insufficiency of process by also misrepresenting

in open court Plaintiff's APRA action as a Government Tort Liability Action, thereby

claiming that the Attorney General should be served and falsely declaring the Attorney

General is the counsel of record for the defendants.   For all Defendant agency staff lawyers

to fail to refute Coleman's false representation to the Court in open court in that matter that

he is not the Defendants' lawyer and that the Attorney General is the Defendants' attorney of

record constitute subornation of perjury and perjury, violative of RICO and the Rhode Island

Government Tort Liability Act, R.I.G.L. § 9-31-1, *et seq*, and calculated defraud the court to

dismiss Plaintiff's APRA complaint, dismissal of which they schemed would cover up the

incriminating documentary evidence of systemic agency violation of 42 U.S.C. 654 and 42

U.S.C. 666  contained in Plaintiff's child support records.  Upon information and belief, the

defendant lawyers conspired before the January 12, 2023 hearing to lie to the court that

Coleman is not the defendants' lawyer and that the Attorney General is the defendants'

lawyer while misrepresenting in open court the pro se Plaintiff's APRA complaint is a tort

liability action, in a ruse/scheme to deceive the court to dismiss the case for insufficiency of

process, as the Government Tort Liability Act's provides actions brought under it shall be

served on the Attorney General.  Defendants' ruse worked; taking the cue from Defendant

Coleman and the silent affirmation of the named Defendant Officers of the Court gathered

present at the WebEx hearing, Judge Cruise complained that the Plaintiff's APRA Complaint

is too long (it is 20 pages in length) and that he doesn't get it.  The silent Defendant Officers of the Court were present for this very purpose, to participate in the subornation of Coleman's perjury in open court, as none of them is a named defendant in that matter and none had entered appearance in the matter either.  At this juncture, Defendant Coleman pressed Judge Cruise that he should dismiss Plaintiff's case, as Plaintiff "sued Judge Suttell!" upon which Judge Cruise nodded in acquiescence.

129.    Even more troubling, Judge Cruise called on Defendant Beauregard, who never entered appearance in that matter and who is not a named defendant in that case, to argue the case for the defendants, even after Defendant Coleman represented in open court that the Attorney General is the attorney of record for the defendants.  Defendant Beauregard had a duty to honesty to the tribunal but breached the duty.  Defendant Beauregard echoed Defendant Coleman's lie.  When Plaintiff objected, Defendant Coleman represented in open court that Beauregard is an "observer."  Judge Cruise tagged on, "I allowed it."

130.    The January 12, 2023 WebEx hearing culminated in Judge Cruise denying Plaintiff's Motion to Advance brought under RIGL sec. 38-2-1, et al.

> **G.  The "Open Government" Division of the Attorney General Office's Breach of Duty of Disclosure of the Futility of Plaintiff's pro se APRA action in Rhode Island Superior Court in the Electronic Court System that Denies Pro Se Litigants equal access of court information of their own public case; and Attorney General's breach of duty to investigate and act on allegations of the Defendants' criminal activities contained in Plaintiff's APRA Complaint**

131.    R.I.G.L. sec. 38-2-8(b) vests the Rhode Island Attorney General and the Open Government Office of the Attorney General, a political subdivision of the State of Rhode Island, with the duty of investigating submitted complaints and if found meritorious, instituting a legal action on behalf of the complainant in the Superior Court.

132.    The Office of the Attorney General posts on its official website under The Open

Government section the following information:



133.    The plain text of R.I.G.L. sec. 38-2-8 vests the Rhode Island Attorney General with both

prosecutorial duties to act on factual allegations contained in APRA complaints, as well as

duties of an administrative tribunal defined, under Rule 1.0m of Article V. Rules of

Professional Conduct, that states in relevant parts, "(m) "Tribunal" denotes a court, an

arbitrator in a binding arbitration proceeding or a legislative body, administrative agency or

other body acting in an adjudicative capacity. A legislative body, administrative agency or

other body acts in an adjudicative capacity when a neutral official, after the presentation of

evidence or legal argument by a party or parties, will render a binding legal judgment directly

affecting a party's interests in a particular matter."  The Attorney General, under RIGL sec.

38-2-8(b), is further vested with the duty under 4.1 of the Rules of Professional Conduct:

"Rule 4.1. Truthfulness in statements to others. In the course of representing a client a lawyer

shall not knowingly: (a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid

assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6. (As adopted by the court on February 16, 2007, eff. April 15, 2007.)

134.    Posted on the official website of the State of Rhode Island, Office of the Attorney General states, pursuant to R.I.G.L. § 38-2-2(4) and **Pontarelli v. Rhode Island Dept. of Education, 176 A.3d 472 (R.I. 2018)**, public records are, "Material regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency."  R.I.G.L. § 38-2-3(a) and **Borkowski v. City of Warwick, PR 22-11** state**,** "all records maintained or kept on file by any public body *** shall be public records and every person or entity shall have the right to inspect and/or copy those records"

135.    The Attorney General and the Office of the Attorney knew and/or should have known that the Defendants RI DHS and RI OCSS routinely establish and enforce 12% compound interest on support, which is disallowed under 42 U.S.C. 654 and 42 U.S.C. 666.

136.    The Attorney General and the Office of the Attorney knew and/or should have known that 12% compound interest in support in interstate cases under 42 U.S.C. 654 and 42 U.S.C. 666 is unenforceable.

137.    The Attorney General and the Office of the Attorney knew and/or should have known that RI DHS and RI OCSS's denial of APRA records of Plaintiff's own child support case records and denial of records throughout the pendency of the 42 U.S.C. 654 and 42 U.S.C. 666 appeal is calculated to hide the illegal scheme to extort 12% compound interest under color of law disallowed by 42 U.S.C. 654 and 42 U.S.C. 666.

138.    On December 29, 2022, pursuant to the appeal procedure advisement contained in the December 13, 2022 APRA denial letter from Defendant Lisa Pinsoneault and the in the

December 16, 2022 APRA denial letter from Ms. Lisa Martinelli that is copied to Defendant

Deborah Barclay and Defendant RI OCSS by and through Paul Gould, the Plaintiff, Mary

Seguin ('Seguin/Plaintiff') filed the APRA action in Superior Court under R.I.G.L. § 38-2-1

*et seq.,* appealing the December 13, 2022 denial email by Defendant RI OCSS of Plaintiff's

request for records <u>and</u> RI EOHHS's letter dated December 16, 2022, both of which advised

the Plaintiff to appeal agency denial under R.I.G.L. § 38-2-8.   (§ 38-2-8 and) R.I.G.L. § 38-

2-9(a) vest the Superior Court with sole jurisdiction over civil actions brought under R.I.G.L.

§ 38-2-8., ***Mary Seguin v. Rhode Island Department of Human Service et al., PC-2022-***

***07215.***   The Plaintiff filed the same complaint to the Rhode Island Attorney General.

139.    Defendant Adam Roach of the Defendant Attorney General's Office's Open Government

sent the Plaintiff an email dated January 19, 2023 stating the Office of the Attorney General

identified Plaintiff's complaint sent to the Office of the Attorney General to be identical to

the Complaint alleged in the Superior Court APRA action under R.I.G.L. § 38-2-1 *et seq*.,

***Mary Seguin v. Rhode Island Department of Human Service et al., PC-2022-07215,*** and

therefore yielded jurisdiction to the Superior Court.  Defendant Adam Roach knew Plaintiff

in Texas was proceeding pro se in the Superior Court APRA action, and knew or should have

known that Plaintiff proceeding pro se was denied remote access to her case records by

Defendants' rule and practice.  Defendant Adam Roach writing to Plaintiff in Texas from the

"Open Government" Office of the Office of the Attorney General owes Plaintiff a duty to

give Plaintiff meaningful notice that the Plaintiff, proceeding pro se remotely from Texas is

futile, as she is barred from accessing her case record for meaningful redress, and barred

from accessing transcripts of the proceeding for meaningful appeal of the record.  However,

Defendant Adam Roach failed to give Plaintiff notice of the State's abridgement of pro se

litigants' fundamental First Amendment rights, violation of equal protection and due process, which constitute a criminal conspiracy to deprive rights under federal law. Moreover, Plaintiff's APRA complaint contains factual allegations of Defendant RI OCSS's serious criminal conspiracy to violate 42 U.S.C. 654 and 42 U.S.C. 666 across state lines in Texas, which warrants the Office of the Attorney General, the top lawyer elected to enforce federal and state laws in the State of Rhode Island, to enforce the State's compliance with Title IV-D Program. Plaintiff's APRA complaint is not the run-of-the-mill local APRA request for minutes of town meetings in the local municipality, but repeated record request under the First Amendment and statutory rights for records containing multiple state violations under color of state law of one of the largest state-federal cooperative programs, Title IV-D. Defendant Adam Roach's APRA reply letter shows Attorney General Defendants Peter Neronha and Adam Roach, who owe special duty to the Plaintiff, knew or should have known the criminal conspiracy to deny Plaintiff access of her child support case file is calculated to cover up Defendant RI OCSS's criminal attempts to seize Plaintiff's Texas property illegally under 42 U.S.C. 654 and 42 U.S.C. 666. The Attorney General Defendants' actions and inactions are tantamount to assisting Defendant RI OCSS's criminal scheme to obstruct justice, obstruct 42 U.S.C. 654 and 42 U.S.C. 666 due process proceedings, and cover up of conspiracy to defraud via wire and mail.

140. Coleman never withdrew his limited special appearance after the January 12, 2023 WebEx hearing.

141. Coleman never entered his appearance as the attorney of record for the Defendants.

142. Subsequent to making the material perjury to the Court at the January 12, 2023 hearing that he is NOT the attorney of the Defendants and that the Attorney General is the attorney of

record for the Defendants for the purpose of attacking the Court's jurisdiction over the

Defendants for insufficiency of process under the Rhode Island Government Tort Liability

Act, R.I.G.L. § 9-31-1, *et seq*., Coleman never filed any pleading or notice or filings

otherwise certifying that he is the attorney of record for the Defendants, contrary to his

material representation in Court that he is not the attorney of record.

143.    The Attorney General never entered appearance in that matter.

144.    The Attorney General and the Office of the Attorney General breached their duty owed to

the Plaintiff to act on Plaintiff's report and factual allegations of conspiracy to defraud, cover

up, commit perjury and subornation of perjury.

145.        Instead, Coleman filed a barrage of pleadings: Defendants' Motions to Dismiss,

Memorandum in Support of Motion to Dismiss, Objections and Defendants' Memorandum

of Law in Support of Their Objection to Plaintiff's Motion to Strike Defendants' Rule

12(b)(1) Motion to Dismiss, all signed "DEFENDANTS, By Their Attorney."   The Plaintiff

filed several motions under Rule 11 to strike these pleadings, and finally filed a Rule 11

Motion for Sanctions on February 6, 2023, prior to the scheduled February 7, 2023 WebEx

hearing in that matter.

146.    But the prejudicial damage to the Plaintiff intended by the Defendant agencies and

Coleman through the afore-described scheme of lies of counsel representation calculated to

attack the Court's jurisdiction over the Defendants to the Court had been done.  Judge Cruise,

who knew and should have known that collateral issues such as Rule 11 Motion for

Sanctions, are required to be resolved by the Court, irrespective of the Court dismissing the

case pursuant to Coleman's "Defendants' Rule 12(b)(1) Motion to Dismiss," initially had his

clerk email the Plaintiff that Plaintiff's Rule 11 Motion for Sanctions was moot after he

dismissed the case. The Plaintiff relies on established United States Supreme Court case law, **Cooter & Gell v. Hartmarx Corp.110 S. Ct. 2447 (1990),** ruled that a Rule 11 sanction is an issue collateral to the main action and may be addressed after the suit has been dismissed. What is critical here is, the representation by Coleman that the Attorney General is the attorney of record for the Defendants and he is not, was used for the very purpose of attacking jurisdiction of the Court in that matter. Therefore, Coleman's representation to Superior Court of who is the counsel of record for the Defendants is material to that case. The Superior Court never got to the merits of the APRA Complaint.

147. **Cooter & Gell v. Hartmarx Corp.110 S. Ct. 2447 (1990),** ruled that the judge considering the sanction motion must examine all the circumstances of the case and conclude whether an attorney's pre-filing inquiry was reasonable, comparing this level of inquiry to that of a determination in negligence.

148. Was Coleman negligent in representing to the Court that he is not the attorney of the Defendants and then filing pleadings signing that he is? Coleman's representation to the Court went several steps beyond merely stating he is not the Defendants' lawyer – He represented to the Court that the Attorney General is the attorney of record for the Defendants for the purpose of dismissing that action for insufficiency of process under the Rhode Island Government Tort Liability Act, arguing that the Summons and Complaint must be served upon the Attorney General, not upon the Defendants directly, as the Plaintiff did. Several staff lawyers of the Defendant agency RI OCSS and RI DHS appeared at the Court hearing remained silent. They are clearly part of the ruse. Judge Cruise on his own called on Beauregard, a staff attorney of the Defendant agency, who is not a named defendant and never entered appearance in that matter in any capacity, and who was never called by either

party to testify, to argue the case; he too remained silent on the issue of the attorney of record of the Defendants and failed to refute Coleman's representations to the Court. Their scheme to get Plaintiff's APRA case dismissed is calculated to continue to cover up evidence in Plaintiff's child support case records documenting the illegal 12% compound interest that is unenforceable in Texas under 42 U.S.C. 654 and 42 U.S.C. 666.

149.    After Judge Cruise dismissed Plaintiff's APRA action for lack of subject matter jurisdiction, Plaintiff sought to exercise her right to appeal, and filed a notice of appeal on April 3, 2023. Plaintiff filed the requisite request for transcripts. The Superior Court employee emailed the pro se Texas Plaintiff that Plaintiff is able to view the transcripts through the portal, misleading Plaintiff to believe she could view it through Odyssey remotely. Thereupon, Plaintiff paid the transcript fee in May 2023. However, sixty days after Plaintiff's filing the Notice of Appeal, the Superior Court failed to transfer Plaintiff's case to the Supreme Court for appeal. After several phone calls to the Superior Court and Supreme Court clerk's offices, Plaintiff was finally told that Plaintiff proceeding pro se, does not have access to view the transcripts she paid for appeal through the Odyssey portal via the Internet, and that only lawyers do.

150.    Plaintiff concurrently filed in January 2023 the federal action, ***Seguin v. Rhode Island Office of Child Support Services et al,*** **Civil Action No. 1:23-cv-0034-WES-PAS**. Defendants in that matter were served on January 30, 2023. Discovery documents and Answers to Interrogatories by the Defendant RI OCSS show that Defendant RI OCSS initiated the meritless fraud on the court proceeding in family court the following day on January 31, 2023, for the purpose, *inter alia*, of dismissing Plaintiff's federal action under Younger abstention. As Defendant RI OCSS sought to cover up Plaintiff's child support

case file, and knowing that Rhode Island Family Court issued the Administrative Order in 2021 mandating all child support matters to be heard remotely via WebEx, knew that the proceeding is procedurally due process defective in electronic judicial processes in which the deliberate partial integration of RI OCSS's legacy electronic filing system into Odyssey in 2014 renders predetermined against pro se litigants, who are not noticed, cannot view the filings of Defendants nor the case information records of pro se litigants' own cases remotely via the internet, and that even the Rhode Island Court's Virtual Clerk cannot see their filings – therefore they knew Plaintiff proceeding pro se from Texas, is *de facto* blinded and denied equal, full and meaningful participation in the judicial process by the Rhode Island state judiciary defendants by deliberate design.  Therefore, at the February 10, 2023 Family Court hearing, Defendant Paul Gould sought to quickly procure an order on that day, claiming that they took the interest off the system in 2018 when they were sending to Texas and asked the family court judge to just put it back on the system.  The family court, complicitly used to the routine illegal establishment of 12% compound interest under color of state law, put the illegal 12% compound interest back on the system that is disallowed under 42 U.S.C. 654 and 42 U.S.C. 666, with the caveat that it is without prejudice, that it's a mere number for the purpose of having a starting point, and ordered discovery, which is not what Defendant RI OCSS had bargained on.

151.    The meritless family court proceeding, initiated by RI Defendant OCSS for the illegal purpose of, *inter alia*, dismissal of Plaintiff's federal action, was part of Defendants' scheme to quickly put the illegal unenforceable 12% compound interest back on the system, but obviously backfired as it is with prejudice, and since Plaintiff continued to proceed pro se, defendants counted on flexing a team of legal muscles against the pro se litigant and use the

due process defective electronic court system implemented by Defendants against the pro se Plaintiff in Texas. Plaintiff's compelling of discovery in the family court proceeding resulted in the family case being continued, frustrating Defendant RI OCSS's cover up scheme. Defendant Paul Gould shouted at the Plaintiff in a telephonic conference, "You went to law school, didn't you? Just admit it! You went to law school!" on May 9, 2023 when the Plaintiff sought to compel answers to interrogatories she propounded on the Defendants RI OCSS.

152.    At the June 8, 2023 family court proceeding, Defendant Paul Gould admitted on the record that the reason neither Plaintiff nor the Rhode Island Court Virtual Clerk is able to view Defendant RI OCSS's filings and court orders is due to the partial integration of the RI OCSS's legacy electronic system into Odyssey resulting in the inability by Plaintiff and the Virtual Clerk to view from the Odyssey portal RI OCSS's filings, and confirming on the record that only the Judge and the RI OCSS are able to view their filings in the electronic case management system. All court personnel, including the judges, continue proceedings in this due process defective electronic court, that is scandalously continuing to operate in violation of centuries of common law and case laws prohibiting it to operate in our justice system, thereby tortiously violating Plaintiff's Constitutional rights in meritless fraud on the court proceedings fraudulently initiated by the Defendant RI OCSS to put back on the system with prejudice the unenforceable 12% compound interest that was additionally waived, in breach of contract, and disallowed under 42 U.S.C. 654 and 42 U.S.C. 666, rendering the State of Rhode Island ineligible to participate in Title IV-D caused by the Defendants' knowing violations of 42 U.S.C. 654 and 42 U.S.C. 666 Title IV-D and their scheme to cover up their unlawful activities.

153.    On June 10, 2023, Plaintiff submitted an APRA request to Defendant Justin Correa for records relating to why Rule 5(c) of **RHODE ISLAND JUDICIARY RULES OF PRACTICE GOVERNING PUBLIC ACCESS TO ELECTRONIC CASE INFORMATION** denies the pro se Plaintiff remote access via the Internet to her public court case records.   Belatedly, in violation of APRA, Defendant Justin Correa replied on July 10, 2023 that the Judiciary is not in possession of any records, and that if it did, the records are attorney-client privileged.  That is a *prima facie* lie, as the Judiciary has posted, *inter alia*, on its own website more than ten years of Annual Reports from 2010 to 2022 that constitute public records, which were transmitted to the General Assembly, that relate to public access to electronic court records.  Upon information and belief, Defendant Justin Correa, Defendants RHODE ISLAND STATE COURT SYSTEM, PAUL A. SUTTELL, the EXECUTIVE HEAD OF RHODE ISLAND STATE COURT SYSTEM, RHODE ISLAND ADMINISTRATIVE OFFICE OF STATE COURTS, RHODE ISLAND ADMINISTRATIVE OFFICE OF THE SUPERIOR COURT, RHODE ISLAND JUDICIAL COUNCIL, RHODE ISLAND SUPERIOR COURT, RHODE ISLAND SUPERIOR COURT JUDICIAL COUNCIL, THE JUDICIAL TECHNOLOGY CENTER, JULIE HAMIL, MARISA BROWN, and Defendant Tyler Tech conferred to hide evidence of their scheme to illegally rig the courts by knowingly install and implement procedurally defective electronic courts, in violation of centuries long body of common law and case law guaranteeing due process and rights of access, and in so doing, allows them to continuing operating the procedurally defective electronic courts in the State of Rhode Island.

154.    Perjury consists of making a false statement under oath, either in writing or verbally, that one knows is false, and that is material to the proceedings in which the statement is made.

Perjury requires proof of more than just a false statement in a court proceeding or otherwise under oath.

155.    Federal law defines two types of perjury, each of which has multiple elements. The first type of perjury involves statements made under oath, and requires proof that:

156.    A person took an oath to truthfully testify, declare, depose, or certify, verbally or in writing;

157.    The person made a statement that was not true;

158.    The person knew the statement to be untrue;

159.    The person made the false statement willfully; and

160.    The subject matter of the statement was material to the proceeding in which it was made.

161.    The second type of perjury involves unsworn statements, and requires proof that:

162.    A person made an **unsworn declaration** as permitted by federal law;

163.    The statement was made "under penalty of perjury";

164.    The person willfully made a statement that he or she did not believe to be true; and

165.    The subject matter of the statement was material.

166.    Judge Cruise reminded the Court that Officers of the Court are under Oath with respect to representations, testimony, statements to the Court.

167.    The specific act that constitutes perjury is not the false statement itself, but rather the oath or affirmation that the statement is true.

168.    Perjury statutes require proof that a person acted with knowledge of the falsity of the statement. The federal statute requires that a person acted "willfully," while Rhode Island's statute says the person must have acted "knowingly."

169.    The requirement that a false statement is material to the proceeding may be the most important element of perjury. The U.S. Supreme Court defined material, in ***Kungys v. United States***, as a statement that "has a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed."(internal quotation marks omitted).

170.    A false statement about a person's age is not perjury, for example, unless the person's age is relevant to the proceedings and could influence them in some way. This could be the case if a person lied about his or her age in an application for public benefits based on age, in which case the person might have also committed welfare fraud.

171.    A related offense is the crime of subornation of perjury, which involves coaching or persuading a person to commit perjury. Attorneys and other people who might advise a witness may be targets of subornation of perjury accusations.

172.    RI Gen L § 11-33-1 (2016) § 11-33-1 Perjury states:

(a) Every person under oath or affirmation who knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing it contains any false material declaration, shall be deemed guilty of perjury.

173.    (b) An indictment or information for violation of this section alleging that on oath or affirmation the defendant has knowingly made two (2) or more declarations which are inconsistent to the degree that one of them is necessarily false need not specify which declaration is false if:

174.    (1) Each declaration was material to the point in question; and

175.    (2) Each declaration was made within the period of the statute of limitations established

in § 12-12-17.

176.    (c) In any prosecution under this section, the falsity of a declaration set forth in the

indictment or information shall be established sufficient for conviction by proof that the

defendant on oath or affirmation made irreconcilably contradictory declarations material to

the point in question. It shall be a defense to an indictment or information made pursuant to

this subsection that the defendant, at the time he or she made each declaration, believed the

declaration was true.

177.    (d) Where in the same continuous court or grand jury proceeding in which a declaration

is made, the person making the declaration admits the declaration to be false, that admission

shall bar prosecution under this section if, at the time the admission is made, the declaration

has not substantially affected the proceeding, or it has not become manifest that the falsity

has been or will be exposed.

178.    (e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall

not be necessary that proof be made by any particular number of witnesses or by

documentary or other type of evidence.

Prosecution of Perjury

179.    Upon information and belief, the Office of the Attorney General and the Attorney

General coordinated subornation of perjury activities with RI DHS and RI OCSS - by falsely

claiming it deferred to the Superior Court jurisdiction under § 38-2-1 et seq that the Office

noticed the Plaintiff in the January 19, 2023 letter from the Open Government Division, and

falsely claiming that it defends Open Government of, advised the RI DHS and OCSS

defendants to lie in the Superior Court that the Attorney General is actually the attorney of record for the Defendants in the Superior Court APRA matter, that is material.

180.    The Attorney General's January 19, 2023 letter statement of awareness of the APRA action and the subsequent inaction show his breach of duty owed to the Plaintiff to act on the factual allegations of criminal activities contained in the APRA Complaint.

181.    RI OCSS and RI DHS officials acted as Meyersiek's agent who colluded to conceal public record documents containing their unlawful actions at all costs: Coleman, Barclay, Tighe, Caballeros, Fobert, Adams, Flynn, Dibiase, Bonin, Langlois, Gould, Beauregard and Pinsonneault.

182.    Barbara Grady at all times acted as Meyersiek's agent.

183.    RI OCSS acted as Seguin's agent in brokering the contract and has a duty to represent the true facts to Seguin.

184.    RI OCSS agreed with Plaintiff to cease and desist collection activities by agreement in consideration of Seguin's lump sum payment of $104,185.98 that the agency offered to Seguin on December 7, 2021, which Seguin accepted, and performed on the agreement on December 7, 2021 by paying the agreed upon lump sum of $104,185.98.

185.    Meyersiek's agents, RI OCSS and RI DHS officials, Coleman, Barclay, Tighe, Flynn, Langlois, Gould, Beauregard and Pinsonneault, are attorneys obligated by higher standards of duty of care, and as such committed professional negligence and subornation of perjury.

186.    RI OCSS officials are government officials that owe Seguin, the noncustodial parent, specialty duty.  RI OCSS owes Seguin, the noncustodial parent, special duty.

187.    As the RI OCSS brokers of Seguin's contract with Meyersiek, RI OCSS officials assumed dual agent duty to Seguin, as well as special duty as government officials.

188.    RI OCSS officials owe Seguin a fiduciary duty and breached it.

189.    RI OCSS breached the contract with Seguin. RI OCSS levied Seguin's property without

probable cause, without proper authority under common law and under the laws of the

United States and under color of state law of the State of Rhode Island.

190.    To conceal the legally insufficient books of accounts of alleged interest debt, RI OCSS

refused and denied Seguin's right to review itemized accounting with credit, payments and

interest of particular dates that show the illegal interstate scheme to collect unenforceable

interest in Texas and the illegal seizure of Plaintiff's Texas assets under color of state law of

Rhode Island.


## VI.    COUNTS

### COUNT I: MISREPRESENTATION

191.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

192.    Seguin suffered economic harm, distress and mental anguish due to the misrepresentation

of the defendants.

193.    Due to defendants' and individual defendants' misrepresentations and omissions, Seguin

is entitled to legal and equitable relief, including damages and punitive damages, interest,

costs, attorney's fees and/or other relief deemed appropriate.

### COUNT II: NEGLIGENT MISREPRESENTATION

194.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

195.    Seguin suffered economic harm, distress and mental anguish due to the negligent misrepresentation of the defendants.

196.    Due to the defendants' and defendants' individual negligent misrepresentations and omissions, Seguin is entitled to legal and equitable relief, including damages and punitive damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT III: INTENTIONAL/FRAUDULENT MISREPRESENTATION

197.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

198.    Seguin suffered economic harm, distress and mental anguish due to the intentional/fraudulent misrepresentation of the defendants.

199.    Due to defendants' and individual defendants' intentional/fraudulent misrepresentations and omissions, Seguin is entitled to legal and equitable relief, including damages and punitive damages, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT IV: COMMON LAW BAD FAITH

200.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

201.    Seguin suffered economic harm, distress and mental anguish due to the common law bad faith of the defendants.

202.    Due to the defendants' and individual defendants' bad faith, Seguin is entitled to legal and equitable relief, including damages and punitive damages to deter bad faith actions by Meyersiek and his RI OCSS and RI DHS agents and all the defendants in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT V: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALINGS

203.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

204.    Seguin suffered economic harm, distress and mental anguish due to the breach by the defendants

205.    Due todefendants's and the individual RI OCSS defendants' breach of the covenant of good faith and fair dealings, Seguin is entitled to legal and equitable relief, including damages, interest, costs, attorney's fees and/or other relief deemed appropriated.

## COUNT VI: TORTIOUS BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS

206.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

207.    Seguin suffered economic harm, distress and mental anguish due to the tortious breach of the defendants.

208.    Due to Meyersiek's and the Defendants' collective tortious breach of the covenant of good faith and fair dealings, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter tortious actions by Meyersiek, RI OCSS, RI DHS and the defendants individually in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT VII: BREACH OF FRAUDULENT CONCEALMENT/ COMMON LAW FRAUD

209.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

210.    Seguin suffered economic harm, distress and mental anguish due to the breach of fraudulent concealment/common law fraud of the defendants

211.    Due to defendants' breach of fraudulent concealment/common law fraud, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter fraudulent actions by defendants in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT VIII: CONCEALED FRAUD

212.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

213.    Seguin suffered economic harm, distress and mental anguish due to the concealed fraud of the defendants.

214.    Due to Defendants' concealed fraud, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter concealed fraud actions by defendants in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT IX: TORT OF DECEIT

215.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

216.    Seguin suffered economic harm, distress and mental anguish due to the deceit of the defendants

217.    Due to Defendants' deceit, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter deceit by Defendants' in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT X: RECKLESS INDIFFERENCE TO THE RIGHTS OF SEGUIN

218.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

219.    Seguin suffered economic harm, distress and mental anguish due to the reckless indifference of the defendants.

220.    Due to Defendants' reckless indifference to the rights of Seguin, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter the reckless indifference to the rights of Seguin (others) by Defendants' in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT XI: DELIBERATE INDIFFERENCE TO THE RIGHTS OF SEGUIN

221.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

222.    Seguin suffered economic harm, distress and mental anguish due to the deliberate indifference to the rights of Seguin by the defendants

223.    Due to Defendants' deliberate indifference to the rights of Seguin, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter the deliberate indifference to the rights of Seguin (others) by Defendants' in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT XII: ABUSE OF PROCESS

224.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

225.    Seguin suffered economic harm, distress and mental anguish due to the abuse of process of the defendants.

226.    Due to Defendants' abuse of process, Seguin is entitled to legal and equitable relief,

including damages, and punitive damages to deter abuse of process by Defendants' in the

future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT XIII: BREACH OF DUTY

227.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

228.    Seguin suffered economic harm, distress and mental anguish due to the breach of duty by

the defendants.

229.    Due to Defendants' and the individual Defendants' breach of duty, who, as a government

agency and officers of the court officials of the agency, owe Seguin, the noncustodial parent

under 42 U.S.C. 654 and 42 U.S.C. 666, a duty, Seguin is entitled to legal and equitable

relief, including damages, and punitive damages to deter breach of duty by Defendant agents

in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT XIV: COVER-UP

230.    Seguin, hereby incorporates by reference all the allegations contained in the preceding

paragraphs of this complaint as though fully stated herein.

231.    Defendants' Defendants know that Seguin is entitled to access to public records

contained in her files that contains incriminating evidence of accounting fraud, breach of

contract and illegal seizure of Seguin's Texas property and other unlawful tortious actions

and have covered up evidence of Meyersiek's and RI OCSS's breach of contract documented

in Seguin's RI OCSS case file by denying Seguin access to her case file.  Even after Seguin

petitioned for her case file pursuant to the RI APRA under R.I. Gen. Laws sec. 38-2-1, et seq.

to the Secretary of RI EOHHS, RI OCSS denied Seguin's APRA request and only partially

released records, withholding telephonic records, notes, accounting statements and other records evidentiary of defendants' waiving of and forgiving interest and all documents relating to RI OCSS maintained by RI OCSS of RI OCSS clandestinely seizing Seguin's properties in the State of Texas through legally insufficient liens and levy of the substantial amount $75,638.00, in breach of contract for interest that Meyersiek already waived and RI OCSS already forgave. After levying Seguin's bank account on April 28, 2022, RI OCSS defendants never credited Seguin's RI OCSS child support account for RI OCSS's seizure of Seguin's bank assets. RI DHS and RI OCSS, condoned by Meyersiek, schemed to commit perjury in Seguin's APRA action in Superior Court for the purpose of cover up through denying Seguin access to public records in her files that contain incriminating evidence against the defendants.

232.    All Defendants engaged in coordinated attempts to cover up the aforesaid.

233.    All Defendants covered up the operation of procedurally defective electronic courts in Rhode Island, and covered up court records of electronic courts from access by pro se litigants and the public.

234.    Seguin suffered economic harm, distress and mental anguish due to the fraud cover-up by the defendants.

235.    Due to defendants' fraud cover-up, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter fraud cover-up by defendants, some of whom who are professionals and Officers of the Court (lawyers, administrators, executive head of the court system, clerks, etc.), in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

## COUNT XV: RI GOVERNMENT TORT LIABILITY

236.    Seguin hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

237.    Due to the tortious acts committed by Defendants, who, as government agencies and persons implementing electronic courts, absolutely owe Seguin, the noncustodial parent, a court user, and a Texas pro se remote litigant, the duty of disclosure, a duty to honest services and dealings, Seguin is entitled to legal and equitable relief, including damages, and punitive damages to deter tortious acts by defendants who are additionally professionals and/or Officers of the Court, in the future, interest, costs, attorney's fees and/or other relief deemed appropriate.

### COUNT XVI: 42 U.S.C. § 1983 CLAIM AGAINST DEFENDANTS FOR RECKLESS INDIFFERENCE TO PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

238.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

239.    Defendants violated Plaintiff's common law, First Amendment, Fifth Amendment and Fourteenth Amendment rights.  Defendants' official and unofficial policies, practices and rules, and customs encouraged, caused, allowed, and/or enabled Defendants to violate Plaintiff's constitutional and state rights without fear of discipline for those violations.  See *Monell v. Department of Social Services*, 436 U.S. 638 (1978).

240.    Defendants have not disciplined the individual Defendants for their violations of Plaintiff's constitutional rights and therefore have implicitly approved, ratified, or adopted individual defendants' unconstitutional actions, yet Defendants are responsible for Defendants' supervision, training, and discipline through its policy making powers and personnel decisions.

241.    There is an obvious need for Defendants to train all their employees on First, Fifth and Fourteenth Amendment rights.  Defendants, therefore, have demonstrated a policy of deliberate indifference to such civil rights violations.  See *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

242.    Defendants' reckless actions under color of state law before, during, and after Seguin's loss have caused Plaintiff to suffer and continue to suffer the damages Plaintiff has described.

243.    These deprivations under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

### COUNT XVII: 42 U.S.C. § 1983 CLAIM OF SIXTH AMENDMENT RIGHT TO A FAIR TRIBUNAL

244.    Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

245.    Defendants under color of law deprived Plaintiff of Plaintiff's fair tribunal rights which are secured through 42 U.S.C. 654 and 42 U.S.C. 666 through the Fourteenth Amendment, by perjury and subornation of perjury in Plaintiff's RI EOHHS Appeal, APRA action to access Public Records in her files under RI APRA and Family Court.

246.    Defendants further covered up their deprivation by denying Seguin's right to access her own case records, a right secured by the First Amendment and Fourteenth Amendment to the United States Constitution.

247.    In depriving the Plaintiff of these rights, Defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless disregard of Plaintiff's rights.

248.    The deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

## COUNT XVIII: STATE TORT OF LIABILITY AGAINST DEFENDANTS UNDER 42 U.S.C § 1983

249.   Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

250.   Defendants actions underlying their scheme of perjury and subornation of perjury to the Plaintiff are illegal under the United States Constitution's Sixth Amendment as applied to the States via the Fourteenth Amendment.

251.   This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

## COUNT XIX: CIVIL RICO

252.   Seguin, hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

253.   Seguin suffered economic harm, distress and mental anguish due to the breach of duty by the defendants.

254.   Due to Defendants'  and the individual Defendants' conspiracy to retaliate against the Plaintiff, establish illegal 12% compound interest, cover up the illegal interest, cover up illegal seizure of her Texas properties based on legally insufficient 12% compound interest disallowed by 42 U.S.C. 654 and 666, commit perjury and subornation of perjury, and coordinated cover up; illegal removal of pro se Plaintiff's equal and due process access to the judicial process in electronic courts, cover up of deprivation of court access rights, subjecting Plaintiff to procedurally defective electronic courts calculated to defraud the Plaintiff; via wire fraud, including at WebEx Hearings conducted by the Courts of Rhode Island, Seguin is entitled to legal and equitable relief, including treble damages, and punitive damages to deter

breach of duty by Defendants in the future, interest, costs, attorney's fees and/or other relief

deemed appropriate.

255.    Plaintiff reserves the right to amend the Complaint, add defendants and add claims as

substantial discovery is performed and completed.

**<u>RELIEF REQUESTED</u>**

**WHEREFORE**, Plaintiff, respectfully requests of this Honorable Court the following

relief:

    a.  Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint as though fully stated herein.

    b.  Trial by jury on all issues so triable;

    c.  Pre-judgment and post-judgment interest;

    d.  Treble damages, including pecuniary damages, in excess of $1,000,000.00.

    e.  Damages of $100,000.00 per hour from the date of Covid-19 Pandemic in 2020 to the present that necessitated in 2020 the transfer of court operations to end-to-end Internet-based electronic court judicial process, whereby court participants and court users used Odyssey and WebEx hearings to conduct court hearings and court business to participate in the judicial process, which was adopted by rule or by administrative order, or by availability, for the knowing implementation of state-wide electronic courts that violate centuries of common law equal right of access to court records to pro se litigants and the public in paper courts, that caused the Plaintiff to be denied equal and meaningful access to the courts, denied equal and meaningful access to participate in the judicial process and to access

case record information in her own case, and that obstructed Plaintiff's equal right to justice.

f.  Damages of $100,000.00 per hour for the knowing partial integration of legacy electronic case management systems into Odyssey, from the date of roll-out to the present, that caused the Plaintiff to be denied access to court records in her own case file remotely.

g.  Damages of $100,000.00 per day for the knowing and deliberate establishment of 12% compound interest on support under 42 U.S.C. 654 and 42 U.S.C. 666 in Plaintiff's interstate case that is unenforceable in Texas.

h.  Damages of $100,000.00 per day for the knowing and deliberate collection and seizure of Plaintiff's Texas assets for legally insufficient 12% compound interest on support under 42 U.S.C. 654 and 42 U.S.C. 666 in Plaintiff's interstate case that is unenforceable in Texas.

i.  Damages of $100,000.00 per day for the knowing and deliberate seizure of Plaintiff's Texas assets through liens and levy in violation of due process and in violation of 42 U.S.C. 654 and 42 U.S.C. 666 in Plaintiff's interstate case based on 12% compounded interest that is unenforceable in Texas, during the pendency of the RI EOHHS Appeal, Docket # 2022-2116.

j.  Damages of $100,000.00 for the knowing and deliberate denial of Plaintiff's access to her own child support case file information during the pendency of the RI EOHHS Appeal, Docket # 2022-2116, in deliberate violation of 42 U.S.C. 654 and 42 U.S.C. 666 in Plaintiff's interstate case, of records that show collection

and seizure of Plaintiff's Texas assets based on 12% compound interest on

support that is unenforceable in Texas.

k.  Damages, costs, and attorney fees where applicable;

l.  Punitive damages, costs, and attorney fees where applicable;

m.  Plaintiff costs of suit, including without limitation, its attorney's fees, expert fees, and actual incurred costs;

n.  Award to Plaintiff of reasonable attorney's fees and costs incurred in connection with this action from the Defendants pursuant to 42 U.S.C. § 1983;

o.  Enjoin the Defendants's enforcement and practices of rules, practices, and/or policies that abridge, interfere with, obstruct, impede, deter, chill, or otherwise unlawful acts in electronic courts of all rights of equal and due process access by pro se litigants such as the Plaintiff, and the public, in paper courts.

p.  Such other further relief as the Court deems just and proper or that is necessary to make the Plaintiff whole.

## JURY DEMAND

Plaintiff respectfully requests a jury trial of all issues alleged herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 1, 2023, I filed the within Complaint with the Clerk of the Court via the ECF filing system.

Respectfully submitted,

Mary Seguin

Pro Se

/s/    *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016

P.O. Box 22022
Houston, TX  77019

Dated: September 1, 2023