UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

MARY SEGUIN,
*pro se*

*Plaintiff,*

VS.

Civil Action No. 1:23-cv-126-WES-PAS
U.S. Court of Appeals for the First Circuit Appeal No. 23-1967
Related Appeal No. 23-1851
Related Appeal No. 24-1451

RHODE ISLAND DEPARTMENT OF HUMAN SERVICES, et al.
*Defendants-Appellees*

*Defendants*

# PLAINTIFF'S REPLY TO STATE APPELLEES' INCOHERENT RESPONSE (ECF 66) TO PLAINTIFF'S RULE 62.1 MOTION (ECF 64)

## ORAL ARGUMENT REQUESTED

_____

## STATE-SPONSORED ORGANIZED FRAUD, THEFT OF PUBLIC MONEY AND GOVERNMENT PROGRAMS INVOLVING BILLIONS OF DOLLARS

**Unlawful Interstate Collection of Unlawful 12% Compound Interest Within the Title IV-D Legal Framework Involving Organized Felonious Obstruction of Justice Acts by Defendants, Obstruction of Justice and Misprision of Felony by Defendant Counsels, and**

I.   Plaintiff has Additional Independent Claims Under the Administrative Procedures Act (APA) (That Can Also be Filed Independently under APA)

Before the Court is Plaintiff's Rule 62.1 Indicative Motion filed on September 6, 2024 (ECF 64). State Appellee Rhode Island Attorney General and its counsel, Special Attorney General Pizana's incoherent response (ECF 66) to Plaintiff's Rule 62.1 Indicative Motion dated September 6, 2024 (ECF 64) not only fails to demonstrate any coherent grasp of the workings of Title IV-D, but further shows Rhode Island thinks Rhode Island is above the law, thereby explaining why even at this hour, Rhode Island shows unrepentance when confronted with proof of Rhode Island's criminal obstruction nature of "enforcement" of *federal* Title IV-D in Rhode Island, no less by the State's own attorneys general – central to this matter is that all State Appellees are political subdivisions of the State of Rhode Island, in which all administrative procedures administering *federal* Title IV-D (42 U.S.C. §§ 651-669) must be in effect, *see, e.g.*, 42 U.S.C. § 654(1). The 2024 newly discovered evidence shows not just a policy, but concrete documentary proof of Rhode Island's *federal* Title IV-D *administrative procedures* that alter and falsify the interest portion of *federal* records in *federal* Title IV-D federal Central Registry. *See* attached Exhibit I. See, also, e.g., *federal* 45 CFR 303.20, 45 CFR 303.70. Appellee Rhode Island Office of Attorney General has come before federal official proceedings with *unclean hands* time and again in this matter (first in the *functus officio* capacity participating in *functus officio void ab initio* proceedings during the pendency of two appeals filing several filings claiming

legitimate state interests in the "enforcement" of, as it turns out, Rhode Island criminal obstruction altered and falsified federal records of the interest portion of the federal Central Registry of Title IV-D), and in 23-cv-34, making statements that Rhode Island's federal Title IV-D procedures are Title IV-D compliant – if so, under 5 U.S.C. § 706, Article III has independent judicial review of the lawfulness of Title IV-D provisions under the Congressional state-federal work-together "social security" scheme that Rhode Island falsely claims, in official federal proceedings, provides for "lawful" federal record alteration and falsification of the interest portion of the federal Central Registry in a fundamentally debt-collection scheme under *federal* Title IV-D. Federal-state and/or work-together schemes are commonplace in the modern legal framework: the Court needs to look no further than Federal Rules of App. Procedure 3(e), that provides the *functus officio* district court to receive filing fees *on behalf of* the Court of Appeals, including after the docketing of appeals. Go figure – Plaintiff has petitioned for Article III review of the constitutionality of FRAP 3(e) that comes in conflict with Rule 60(a) that clearly delineates the district court's *functus officio* status, thus FRAP 3(e) errors become barriers to court access and violate the right of appeal, for example. Applied here, the language of Title IV-A and Title IV-D makes clear that Title IV-D administrative procedures are federal: procedures are entirely regulated under federal law and federal regulations, and funded by federal public funds, contingent

on compliance with all federal laws and regulations. Under Title IV-D (42 U.S.C. § 651-669), federal Title IV-D administrative procedures are entirely policed by the United States: e.g., by federal auditors, through Rhode Island's certifications of compliance, and by the Secretary of the U.S. Department of Health and Human Services who is further authorized to issues extensive regulations. *See*, 42 U.S.C. § 651-669. Similarly, the FRAP 3(e) administrative procedure is entirely policed by the Court of Appeals, not the *functus officio* district court.

If the above brief summary of the nature of Title IV-D is allegedly "incoherent" to the State Appellees, it simply reinforces the utmost necessity of independent Article III review of Title IV-D administrative procedures that Rhode Island actually claims permits Rhode Island under Title IV-D federal law to act in a federal capacity *altering* and *falsifying* the interest portion of *federal* Title IV-D Central Registry records to "zero out" Rhode Island's unlawful 12% compound interest that runs afoul of the 3-6% permitted under 42 U.S.C. § 654(21)(A). Let's be clear: The 2024 discovered evidence attached to Exhibit I demonstrates Rhode Island alters the ==*federal*== Central Registry records in interstate cases under *federal* Title IV-D administrative procedures in a *federal* capacity, prescribed in the procedure iteration submitted to this Court in Exhibit I, that states clearly at the bottom left corner the effective date of January 25, 2011, and that is on-going.

Accordingly, upon the 2024 discovery of Rhode Island's corrupt criminal Title IV-D administrative procedures, Plaintiff has additional independent APA claims against the defendants in this matter, that is independent of the appeal.

**II. Plaintiff has Claims Under the Administrative Procedures Act Against Additional Defendants, including, inter alia, Governor Chafee who approved the federal Title IV-D record alteration procedures from January 25, 2011 to 2015, and Governor Gina Raimondo, who approved the federal record alteration Title IV-D administrative procedures from 2016 to 2021, and the current incumbent, from 2021 to 2024 and on-going.**

Plaintiff detailed in Plaintiff's Rule 62.1 Indicative Motion dated September 6, 2024 (ECF 64) that Rhode Island's Title IV-D administrative procedures require additional executive political subdivision approvals, all the way up to the Governor of Rhode Island or Office of the Governor. *See, e.g.*, Rhode Island General Laws § 42-7.2, § 42-7.2-2, § 42-7.2-4, § 42-7.2-5, § 42-7.2-6, § 42-7.2-6.1(2). Rhode Island's January 25, 2011 initiated federal Title IV-D administrative procedures altering federal Title IV-D records of the federal Title IV-D Central Registry were procedurally approved by Lincoln Chafee from 2011 to 2015, Gina Raimondo from 2016-2021 and the current incumbent 2021 to the present and is on-going. Therefore, Plaintiff has independent APA claims against additional defendants, and the above enumerated is not exhaustive. Rhode Island's claims in this federal official proceeding and 23-cv-34 inherently claim that Rhode Island is Title IV-D compliant, and makes clear that Plaintiff has APA claims against federal public

officers and federal agencies, including agencies that unlawfully approved and continue to unlawfully approve Rhode Island's criminal Title IV-D administrative procedures altering federal records as federal compliant, and then reward Rhode Island's criminal federal record alteration scheme with federal public funds under the Title IV-D scheme. Article III independent judicial review of agents approving Title IV-D administrative procedures. If this is still incoherent to the Rhode Island Special Attorney General Pizana, Plaintiff makes it plain to Rhode Island that Rhode Island's Title IV-D administrative procedures warrants putting Title IV-D provisions and agency regulations on trial under the Administrative Procedures Act ("APA"), for independent Article III review of conformity with federal laws and with the Constitution. Plaintiff is injured by the federal record alteration criminality under Title IV-D and has independent claims APA claims independent of the pending appeal.

### III.  Disqualification of *Functus Officio* William E. Smith

The Rhode Island Attorney General demonstrates an utterly incoherent knowledge of the fundamentals of law: jurisdiction and the legal term *functus officio*. For the edification of the incoherent Rhode Island public officer defendants and their equally incoherent counsel, William E. Smith's status is *functus officio*. The district court's status is *functus officio*, which status thus necessitates this Rule 62.1 Motion for Indicative Ruling proceeding in the district

court. If this is still incoherent to the Rhode Island Attorney General, the Rhode Island Attorney General's series of "objections" filed in this matter from November 20, 2023 to December 2023 is evidence of knowing participation in *functus officio void ab initio* district court proceedings under color of federal law, and accordingly corruptly altered the record on appeal in Appeal No. 23-1967 and 23-1978. If this is still incoherent to the Rhode Island Attorney General, Plaintiff makes it plain that the district court's *functus officio* proceeding under color of federal law from November 20, 2023 to March 2024 exposes the federal judiciary as well as Special Counsel Pizana to criminal obstruction liability, and the agency or office is moreover subject to injunction under federal law. Under federal law, functus officio acts are unofficial and William E. Smith who led the charge to conduct functus officio proceedings through his criminal alteration of federal court records to falsely make it look like there were pending post-judgment motion at the time of the filing of appeal (ECF 32) is disqualified and under federal law, is required to recuse. Pizana's false characterization of Plaintiff as incoherent is nothing but a ruse, and the ruse is up – the only one who is incoherent before the Court is Special Counsel Pizana: as a direct cause of *functus officio* alterations of the record by William Smith that is aided and abetted by Pizana, the Court of Appeals has had to perform a forensic investigation of the record and has issued several orders from May 2024 to September 2024 supplementing the record on

appeal with Plaintiff-supplied documents and materials.  The Court of Appeals gets it, and denied Pizana's several motions to quash.   If this is still incoherent to Pizana, Plaintiff makes clear that Plaintiff has independent claims against the *functus officio* acts by Pizana and William E. Smith who are independently exposed to a multitude of liabilities, that is independent of the appeal.  If Pizana and Smith still profess they do not get it, and proceed on in knowing violation of the law, Plaintiff relies on Article III review of the record.  Rhode Island unrepentantly shows on the record that it has no care for the legitimacy of its government in this official federal proceeding, an issue that Plaintiff hereby preserves and reserves for future Article III review and briefing.

### IV. Fed. R. Civ. P. 15(a)(2) Leave To Amend Is Also Appropriate.

If it is still incoherent to Pizana, Pizana is well advised to take careful note: While "Rule 62.1 codifies the procedure most courts used to address Rule 60(b) motions to vacate final judgments which had already been appealed . . . , nothing in Rule 62.1's language limits its application to Rule 60(b) motions or to motions made after final judgment." *Ret. Bd. of Policemen's Annuity v. Bank of New York Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013). The Advisory Committee's note confirms that it "adopt[ed] for ==any motion that the district court cannot grant because of a pending appeal the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal==." Fed.

R. Civ. P. 62.1 Advisory Committee's Note; see also *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden,* No. 11-0253, 2013 WL 1867067, at *3 (D. Idaho May 1, 2013) (issuing an indicative ruling under Rule 62.1 regarding a motion to add a party under Rule 21); *Reflex Media, Inc. v. Chan*, No. 16- 0795, 2017 WL 8223985, at *1 (C.D. Cal. Oct. 17, 2017) ("==*Rule 62.1 provisions were originally drafted as an addition to Rule 60, addressing only relief under Rule 60 pending appeal, but the proposal was broadened to include all circumstances in which a pending appeal ousts district court authority to grant relief.*=="). Thus, **an indicative ruling is appropriate where, under any Rule of Federal Procedure, it would "allow for the timely resolution of motions which may further the appeal or obviate its necessity"** and not simply "place a district court in a position where it must predict the outcome of an appeal of its own decision." *United States v. Brennan,* 385 F. Supp. 3d 205, 208 (W.D.N.Y. 2019) (quotation omitted); see e.g. *Rabang v. Kelly*, No. 17-088, 2018 WL 1737944, at *3 (W.D. Wash. Apr. 11, 2018) (denying a Rule 62.1 motion that was "simply asking this Court to decide the question on appeal").

6.  Plaintiff is requesting that this Court allow Plaintiff to assert new APA claims and add new defendants independent of the appeal, under Rule 15(a)(2). For example, *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4 (1st Cir. 2015), ("Fed. R. Civ. P. 15(d) affords litigants, such as the Plaintiff, a pathway for

pleading any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. ==The rule shares the core objective of the Civil Rules: to make pleadings a means to achieve an orderly and fair administration of justice==.")  Moreover, **a motion to amend the complaint "can be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60."** *Lindauer v. Rogers*, **91 F.3d 1355, 1357 (9th Cir. 1996)**; see also *Laber v. Harvey*, **438 F.3d 404, 427 (4th Cir. 2006) (same). Under Rule 60(b)(6), a judgment may be vacated for any "reason justifying relief from operation of the judgment." Fed. R. Civ. P. 60(b)(6). The U.S. Supreme Court has held that a "motion to vacate the judgment in order to allow amendment of the complaint" constitutes such a justifying reason, so long as the movant meets the requirements of Rule 15(a).** *Foman v. Davis,* **371 U.S. 178, 182 (1962). As the** *Foman* **rule was more recently articulated by the Fourth Circuit: "To determine whether vacatur is warranted . . . the court need not concern itself with either [Rule 59 or 60]'s legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a). <u>In other words, a court should evaluate a post judgment motion to amend the complaint under the same legal standard as a similar motion filed before</u>**

**judgment was entered—for prejudice, bad faith, or futility."** *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quotation omitted).

Had the Defendants not withheld in both 2022 and 2023 the new 2024 evidence, when the public officers Defendants originally produced documents pursuant to APRA in 2022, and in the district court as required by federal law based on their administration of Title IV-D, pursuant to Rule 11(b)(3), 18 U.S.C. § 4, 1503 and 1512(c)(2), the Plaintiff would have had the factual and legal basis required by Rule 11(b)(3) to seek leave to amend Plaintiff's Amended Complaint and add the above referenced claims and add new defendants, e.g., William E. Smith, Lincoln Chafee, Office of the Governor, Secretary of Executive Office of Health and Human Services, former Firm Edwards & Angell.  Plaintiff now has the evidence Plaintiff needs to bring those damages claims and add the new defendants. Plaintiff was manifestly prejudiced by not being able to seek leave to plead those five new claims to the Court under Rule 15(a). None of the new claims would be futile. All claims are plausible, if not dispositive in favor of Plaintiff. Defendants, on the other hand, have demonstrated bad faith by not originally producing the federal record alteration and falsification evidence either as part of the administrative record in July 2023, or in response to Plaintiff's APRA-FOIA request for administrative procedures documents or in response to Plaintiff's

APRA-FOIA request for administrative procedures documents on December 1, 2022.

Title IV-D is subject to the Administrative Procedures Act (APA). *Id*. at 43; see also, e.g., *ATX, Inc. v. U.S. Dep't of Transp*., 41 F.3d 1522, 1527 (D.C. Cir. 1994) ("The test is whether 'extraneous factors intruded into the calculus of consideration' of the individual decisionmaker.") (quoting *Peter Kiewit Sons' Co. v. United States Army Corps of Eng'rs,* 714 F.2d 163, 170 (D.C. Cir. 1983)); *Saget v. Trump,* 375 F. Supp. 3d 280, 360 (E.D.N.Y. 2019) (finding an agency "decision was arbitrary and capricious due to improper political influence"); *Connecticut v. U.S. Dep't of the Interior,* 363 F. Supp. 3d 45, 65 (D.D.C. 2019) (APA claim where "significant political pressure was brought to bear on the issue and the Secretary may have improperly succumbed to such pressure"); *Tummino v. Torti,* 603 F. Supp. 2d 519, 544 (E.D.N.Y. 2009) ("An agency's consideration of some relevant factors does not immunize the decision; it would still be invalid if based in whole or in part on the pressures emanating from political actors.") (quotation omitted). The new evidence would have easily produced a different result. In addition, as noted above, had Plaintiff been in possession of the record falsification record, in particular, Plaintiff would have sought to amend Plaintiff's Complaint pursuant to Rule 15(a) to allege additional claims and add additional defendants, as alleged above already. See e.g. *Jianhong Zhai v. Ning Liu,* No. 16-7242, 2017 WL

7156251, at *2 (C.D. Cal. Aug. 17, 2017) (instructing plaintiffs to "file a motion to set aside the default judgment pursuant to Rule 60(b) in conjunction with a motion to supplement the complaint pursuant to Rule 15(d)" in order to include new evidence in a pleading).

Based on the above, the Court must disqualify William E. Smith and re-assign to hear this motion. As stated by James Madison, "No man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." The Federalist No. 10, at 59 (J. Cooke ed. 1961). *Functus Officio* William E. Smith is exposed to obstruction liability and Plaintiff has viable claim against Smith. As 28 U.S.C. §455(a) is self-executing, Smith is moreover required under the law to recuse. *See*, *In re Martinez-Catala,* 129 F.3d 213, 220 (1st Cir. 1991).

The issues raised herein are hereby preserved on the record and is ripe for Article III review by the Supreme Court of the United States.

## VI. CONCLUSION

20. Plaintiff is entitled to Rule 62.1 Indicative Ruling to Grant Plaintiff's Rule 60(b) motions and Rule 15(a)(2) motion (ECF 64) to amend the complaint to add additional APA claims and add additional defendants. Plaintiff has independent claims: it is in the interest of judicial economy to vacate Younger Abstention

dismissal under Rule 60(b) and amend under Rule 15(a)(2), rather than Plaintiff filing independent APA claims in separate actions. This Court must be allowed to discover who (state and federal) and what actually caused to and to what extent, and how falsified Title IV-D records have been transmitted to the federal Central Registry, based on which how much federal public funds has been knowingly falsely claimed to the United States under the Title IV-D legal framework to operate the RICO scheme and to support obligors, and to the Plaintiff. Plaintiff and this Court must allow amendments to the complaint. Oral Argument is Requested.

Respectfully submitted,

Mary Seguin
Pro Se
/s/     *Mary Seguin*
Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

Dated: September 19, 2024

## CERTIFICATE OF SERVICE

This is to certify that the foregoing motion has been filed on September 19, 2024 electronically transmitted to the Clerk of the Court who serves via the Court's ECF filing system, on all registered counsel of record.

Mary Seguin
Pro Se

/s/ *Mary Seguin*

Email: maryseguin22022@gmail.com
Phone: (281)744-2016
P.O. Box 22022
Houston, TX  77019

# EXHIBIT I.

### SPECIFICATION FOR OCSS CHANGE ORDER
*Auto Adjustment of Interstate Interest*

This specification will outline the process by which interstate cases are selected, automatic adjustments are created, and support orders are modified all for the purpose of removing interest from interstate cases.

### FUNCTIONAL REQUIREMENTS

It is desirable for the Rhode Island Office of Child Support Services (OCSS) to prohibit the charging of interest on interstate cases. This is manually done by placing an N in the interest field on page 2 of the support order. Entry of the N not only prohibits the charging of future interest but automatically creates adjustments to zero out any existing interest.

There currently exists on the InRhodes system interstate cases for which the interest field is not an N and for which there is interest due. It is these cases that the system will process.

If on an interstate case, the interest field on the support order is blank, the system will automatically place an N in the interest field and create non-cash adjustments to zero out any existing interest. No support order modification or interest adjustments will be done on interstate cases without a support order or for which the interest field is already an N or is a Y, B or P.

Two reports will be created. The first will detail the interstate cases for which a support order modification was done and for which one or more interest adjustments were created. The second report will detail interstate cases for which the interest field is Y, B or P. A Y in the interest field is an order to accrue interest while B and P are orders to stay future interest but to keep any interest that has accrued to date.

January 25, 2011
N:\CSB\Specifications\OOS Interest\Adjust OOS Interest.doc

- 1 -